FILED

AUG 15 2011

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| Charles R. Byard, David M. Brosius, Kimberly A. Ray, Stephanie Snow-McKisic, Lisa M. Tharp, and Lynet White, <br><br> Plaintiffs, <br><br> v. <br><br> Verizon West Virginia, Inc., Frontier West Virginia, Inc., Verizon Services Corp., Verizon Communications, Inc., Jodi Dennis, Mary Frederick, Cody Stewart, Corby Miller, Barbara Terwilliger, Bob Anderson, Tammy Mason, Dawn Watson, and Michael Hathaway, <br><br> Defendants. | Civil No. 1:11cv132 <br><br> Judge: IMK |

**DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT**

Defendants Verizon Services Corp., Verizon Communications Inc., Mary Frederick, Cody Stewart, Barbara Terwilliger, Tammy Mason, and Dawn Watson (the "Removing Defendants"), in accordance with 28 U.S.C. §§ 1331, 1441, and 1446, hereby file their Notice of Removal with this Court to remove this action from the Circuit Court for Harrison County, West Virginia, to the United States District Court for the Northern District of West Virginia, Clarksburg Division. The Removing Defendants respectfully assert the following facts to support removal, and in so doing, expressly reserve all other questions, other than that of removal, including questions relating to jurisdiction and the ability of Plaintiffs to state a valid claim, for the purpose of further pleadings.[1]

---

[1] The Removing Defendants intend to file motions to dismiss in response to Plaintiffs' Complaint within the seven (7) day period permitted by Federal Rule of Civil Procedure 81. Issues such as jurisdiction, service, and Plaintiffs' failure to state a valid and cognizable claim will be addressed in those motions.

CLI-1918730v3

## I. Introduction

1. Plaintiffs Charles R. Byard, David M. Brosius, Kimberly A. Ray, Stephanie Snow-McKisic, Lisa M. Tharp, and Lynet White (the "Plaintiffs") filed their original Complaint against Verizon West Virginia Inc., Frontier West Virginia Inc., Verizon Services Corp., Verizon Communications Inc., Jodi Dennis, Mary Frederick, Cody Stewart, Corby Miller, Barbara Terwilliger, Bob Anderson, Tammy Mason, Dawn Watson, and Michael Hathaway (collectively, "Defendants") on July 22, 2011, in the case styled *Byard, et al. v. Verizon West Virginia, et al.*, Civil Action No. 11-C-315-1, in the Circuit Court of Harrison County, West Virginia, before Judge Marks. In the Complaint, Plaintiffs allege that the Defendants did not properly compensate them for all of their work hours, asserting a claim under the West Virginia Wage Payment and Collection Act (the "WV WPCA"). Plaintiffs have demanded a trial by jury in their Complaint.

2. On July 25, 2011, Defendant Corby Miller accepted service through his separate counsel. Also, Defendant Jodi Dennis was personally served with a summons and a copy of Plaitniffs' Complaint on July 25, 2011.

3. On July 27, 2011, Cody Stewart, Barbara Terwilliger, and Dawn Watson were served with a Summons and a copy of Plaintiffs' Complaint.

4. On August 3, 2011, Mary Frederick and Tammy Mason were served with a Summons and a copy of Plaintiffs' Complaint.

5. On August 1, 2011, Plaintiffs served a Summons and a copy of the Complaint on the West Virginia Secretary of State, directed to Verizon West Virginia Inc., now known as Frontier West Virginia Inc.[2]

---

[2] The entity listed as the first named Defendant in this action, Verizon West Virginia Inc., is no longer a corporation owned or that is an affiliate or subsidiary of Verizon Communications, Inc. (or any of its subsidiaries). Rather, the stock of that company was sold to Frontier Communications on July 1, 2010. Subsequent to that date,

6. On August 1, 2011, Plaintiffs served a Summons and a copy of the Complaint on the West Virginia Secretary of State, directed to Verizon Services Corp.

7. On August 1, 2011, Plaintiffs attempted to serve a Summons and a copy of the Complaint on the West Virginia Secretary of State, directed to Verizon Communications Inc.[3]

8. No other pleadings or other filings have been made in the state court.

9. Attached hereto as Exhibit 1 are all of the pleadings and other process served or filed on or by the Moving Defendants in this action. Attached hereto as Exhibit 2 is a copy of the case file obtained from the Clerk of the Harrison County Circuit Court, including the docket sheet.

10. This Notice of Removal is being filed within thirty (30) days of the Removing Defendants being first served with a Summons and a copy of the Complaint in this action. Further, this Notice of Removal is being filed within thirty (30) days of the first service of a Summons and copy of the Complaint on any defendant in this case (i.e. on July 25, 2011), consistent with controlling Fourth Circuit precedent.

11. All Defendants that have been served with a Summons and a copy of the Complaint in this Action have consented to or join in this Removal. Attached hereto as Exhibit 3 are copies of written consents to removal executed by all parties that have been served in this action other than the Removing Defendants.

12. This Notice of Removal is timely filed, and all requirements of 28 U.S.C. §§ 1331, 1441, and 1446 have been met, and therefore, this cause should be removed.

---

(continued...)

the entity was renamed Frontier West Virginia Inc., and appears to continue in existence today as a separate entity. Thus, Verizon West Virginia Inc. is not a separate entity that can be sued in this litigation.

[3] By joining in this Notice of Removal, Verizon Communications Inc. is not waiving any arguments it may have as to whether personal jurisdiction and/or service can (or has been) properly obtained over Verizon Communications Inc. *Leach v. BB & T Corp.*, 232 F.R.D. 545 (N.D. W. Va. 2005) (ineffective service defense not waived by removal); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1395 (3rd ed. 2004); *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 63 S.Ct. 1146 (1943) (personal jurisdiction not waived by removal) (superseded on other grounds by 28 U.S.C. § 1441(e)).

CLI-1918730v3

## II. Grounds for Removal

13. This Court has federal question jurisdiction over this case under 28 U.S.C. § 1331 because section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, completely preempts Plaintiffs' state law claims. Plaintiffs' claims for unpaid "straight time" wages under the West Virginia Wage Payment and Collection Act are completely preempted by section 301 of the LMRA because their adjudication necessarily requires extensive and substantive interpretation of the collective bargaining agreement (the "CBA") between Verizon Services Corp., Verizon West Virginia Inc. (and Frontier West Virginia Inc. – as a successor), among others, and the Communications Workers of America, AFL-CIO (the "Union"), in addition to various Memoranda of Understanding issued under the CBA and a collectively bargained attendance policy applicable to the region. True and accurate copies of the CBA in effect from August 3, 2003 to August 2, 2008, (the "2003 CBA") and from August 3, 2008 to August 6, 2011 (the "2008 CBA" and together with the 2003 CBA, the "CBAs") are attached hereto as Exhibits A and B to Exhibit 4 (Declaration of Angelia Sposa)

14. Plaintiffs, and the class they seek to represent, all are or were employees employed in positions in West Virginia that are a part of the bargaining unit, and thus, covered by the CBAs. (Exhibit 4 - Declaration of Angelia Sposa, ¶¶5-6). Defendants Verizon Services Corp. and Defendant Frontier West Virginia Inc. (formerly known as Verizon West Virginia Inc.) were or are parties to the CBAs as the "employers" of individuals holding the title of "Consultant" in the consumer sales and service call centers located in Clarksburg and Charleston, WV. (*Id.*; see also Ex. 4-A and 4-B (CBAs, Art. 1)). Since Plaintiffs and the putative class members are (or were) members of the bargaining unit, their employment was exclusively subject to the terms and conditions of the CBAs.

CLI-1918730v3

15. Specifically, Plaintiffs' claims cannot be litigated, determined, or stated without reference to, and extensive interpretation of, numerous provisions of the CBAs and the Memoranda of Understanding issued thereunder, as well as the collectively bargained Regional Attendance Plan. Accordingly, this action should be removed to this Court under the provisions of section 301 of the LMRA, and 28 U.S.C. §§ 1331, 1441, and 1446.

### A. Claims for Violations of Collective Bargaining Agreements are Preempted by Section 301 of the LMRA

16. The Supreme Court and the Fourth Circuit have consistently held that state law claims are preempted by section 301 of the LMRA when they are "inextricably intertwined" with a collective bargaining agreement. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988); *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 852 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220-21 (1985); *Barton v. The Creasey Co. of Clarksburg*, No. 89-2170, 900 F.2d 249, 1990 WL 3677, at *2 (4th Cir. Mar. 13, 1990) (table case); *Anselmo v. The West Paces Hotel Group, LLC*, 9:09-2466-MBS, 2011 U.S. Dist. LEXIS 29520, at *21 (D.S.C. Mar. 18, 2011) (the Fourth Circuit "has issued at least three opinions finding that the West Virginia Wage Payment and Collection Act is preempted by [section] 301 of the LRMA…)." A claim is inextricably intertwined with a collective bargaining agreement if a court cannot resolve the claim without interpreting the collective bargaining agreement. *See Lingle*, 486 U.S. at 405-06; *Lueck*, 471 U.S. at 220-21; *Barton*, 1990 WL 3677, at *2. The Supreme Court explained the reasoning behind this rule when it stated: "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law…is preempted and federal labor law principles – necessarily uniform throughout the nation – must be employed to resolve the dispute." *Lingle*, 486 U.S. at 405-06.

17. Congress and the Courts have been explicit that issues including wages and work hours are central to the collective bargaining relationship, and thus, central to collective bargaining agreements. Thus, Congress has declared that employers and unions are required "to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment..." 29 U.S.C. § 158(d). The Supreme Court has explained that issues including wages and hours are so central that they constitute "mandatory" subjects of bargaining. *See, e.g. NLRB v. Borg Warner Corp.*, 356 U.S. 342, 349 (1958); *Stewart Granite Enters.*, 255 N.L.R.B. 591 (1981). Wages and hours are so central to the relationship that employees and employers are unable to enter into agreements, other than collective bargaining agreements, on the topics. *NLRB v. Katz*, 3690 U.S. 736 (1992).

18. As the Fourth Circuit has repeatedly held, claims under West Virginia's Wage Payment and Collection Act, a state statute, like any other state law claims, are preempted by section 301 of the LMRA if they are inextricably intertwined with a labor contract. *Anselmo*, 2011 U.S. Dist. LEXIS 29520, at *14-15. According to the Fourth Circuit, "[t]he statute does not...grant entitlements to pay or wages," so "any substantive right they may have to recovery of vacation and severance pay would require interpretation of the [CBA]" as the source of the claimed right, thereby preempting the state law claim. *Barton*, 1990 WL 3677, at *2. Courts, including this Court, regularly apply this precedent to find preemption of claims under the WV WPCA when the CBA itself must be interpreted as the source of the claimed rights. *Elswick v. Daniels Electric, Inc.*, No. 2:10-01336, 2011 U.S. Dist. LEXIS 41885, at *10 (S.D. W.Va. Apr. 15, 2011) (claims preempted because "whether [the employee] was entitled to the relief he seeks can be determined only by interpreting the CBA"); *Arnold v. Cabot Corp.*, No. 1:99CV75, 2000 U.S. Dist. LEXIS 7709, at *18 (N.D. W.Va. May 8, 2000) (the WPCA does not establish an

CLI-1918730v3

entitlement to wages, "but simply requires that employees be paid promptly upon termination of employment....In order to establish if [he] is entitled to be paid, the Court must look to the CBA.") As this Court has explained, when a Court has to do more than simply refer to a wage table, and instead must interpret and apply various provisions of a CBA, as well as the customs and practices under the CBAs, claims under the WV WCPA are preempted. *Id.* Because Plaintiffs' claims rely upon the CBA as the source of their rights to payment, and because numerous sections of the CBAs must be interpreted and applied to determine what, if anything, Plaintiffs may be entitled to recover, and if so, under what conditions, their claims are inextricably intertwined with the CBAs and are therefore preempted.

### B. *Plaintiffs' Claims under the WPCA Are Inextricably Intertwined with More than Fifteen Separate Provisions of the CBAs*

19. Because the West Virginia WPCA does not provide any substantive right to payment, and instead merely governs the timing of any payment due under another law <u>or contract</u>, it is clear that, in order to state any claim, Plaintiffs must look to some underlying payment obligation to state a claim. *See Barton*, 1990 WL 3677, at *2.

20. Here, Plaintiffs have expressly disclaimed any intention to rely on federal law, such as the Fair Labor Standards Act, as the basis for their claim that they were not timely paid all of their wages. "The Plaintiffs seek no relief under any federal laws or regulations, assert no federal claims, and withdraw any asserted state law claims that are preempted by federal law." (Ex. 1 - Complaint, ¶2). "Plaintiffs only seek to recover 'straight' time and do not seek an overtime premium to which they may be entitled to under Federal law." (Ex. 1 - Complaint, ¶69). Thus, Plaintiffs cannot point to a federal statute as the basis for their claims. If Plaintiffs were relying on the Fair Labor Standards Act for their claim, such a claim would obviously be subject to removal.

21. Despite Plaintiffs' attempt to "artfully plead" around the inescapable conclusion that their claims are preempted, Plaintiffs' cannot escape the preemptive force of the LMRA. Having disclaimed the Fair Labor Standards Act as a basis for their suit, and having failed to assert any claim under West Virginia's Minimum Wage and Overtime Laws (likely because Defendants are not subject to those laws), Plaintiffs are left with only one source for their alleged right to payment – the collective bargaining agreement. Claims based on a collective bargaining agreement, however, are preempted. As the Fourth Circuit has explained in a strikingly similar case:

> The West Virginia statute provides various procedures and remedies, such as liquidated damages, attorney's fees, and a generous statute of limitations, to facilitate an employee's collection of wrongfully withheld pay and wages. The statute does not, however, grant any entitlements to pay or wages, and the appellants have not contended that it does. Thus, despite their assertions that their claims arise wholly under the West Virginia statute, the appellants' complaint in state court shows that any substantive right they might have to recovery of vacation and severance pay would require interpretation of the collective bargaining agreement. Under the doctrine of *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), those claims are therefore preempted: '[A]pplication of state law is preempted by § 301 ... if such application requires the interpretation of a collective-bargaining agreement.'

*Barton v. The Creasey Co. of Clarksburg*, No. 89-2170, 900 F.2d 249, 1990 WL 3677, at *2 (4th Cir. Mar. 13, 1990) (table case)(quoting *Lingle*, 486 U.S. at 413). In fact, as the West Virginia Supreme Court has repeatedly held, actions for violations of the WPCA utilize the contract statute of limitations because such actions are based on alleged breaches of employment contracts. *See, e.g. Jones v. Tri-County Growers, Inc.*, 366 S.E.2d 726, 729-30 (W. Va. 1988) ("[T]his court has consistently held that suits brought under the West Virginia Wage Payment and Collection Act are governed by the five year statute of limitations for contract actions.") Here, there is only one employment contract – the CBA governing the terms and conditions of

CLI-1918730v3

employment for bargaining unit members. Thus, any claim under the WPCA is, by its very terms, subject to complete preemption under section 301. *See* 29 U.S.C. 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees…may be brought in any district court of the United States…"); *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of section 301") (superseded on other grounds by 28 U.S.C. § 1441(e)).

22. Despite Plaintiffs' allegations that they are only seeking "straight time" wages, the CBAs notably do not contain a right to "straight" time, and do not even use the term within their hundreds of pages. This is simply not a case where mere reference to a CBA (or a wage table in a CBA) is required; rather, extensive interpretation of various provisions of the CBAs will be required to determine what any employee was entitled to receive on any given day under the express terms of the CBAs.

23. The degree of interpretation necessary to determine the amount of pay that an individual employee may or may not be entitled to receive is staggering. For example, just to determine a "base weekly wage" – as a starting point to determining amounts that may be due under the CBAs – the Court will have to interpret and apply provisions addressing an employee's job title, the job "Category" to which the position is assigned; the "Job Title Group" to which the position is assigned; and which "wage schedule" applies to the position, category, and group. (Ex. 4-A and 4-B (CBAs, Ex. A; Art. 16, p. 27, Art. 40, p. 87-89)). Each term is specifically defined and requires interpretation. Next, the particular work location provisions must be interpreted and applied. (*Id.*) All of this interpretation of the CBAs only provides a "base

CLI-1918730v3

weekly wage rate" that is used to compensate the "normal work week" for employees -- another defined term that needs to be interpreted. (Ex. 4-A and 4-B (CBAs, Art. 16, p. 27)).

24. To determine what the "basic weekly wage rate" compensates, one must turn to Articles 24, 25, and 40. Article 25 provides detailed provisions governing employee schedules and changes in work time. Article 40 provides definitions and limitations on the normal work week. Thus, Article 40 first provides detailed definitions of what is a "normal daily tour" for various classifications of employees. (Ex. 4-A and 4-B (CBAs, Art. 40, p. 88-90)). This definition, after being interpreted and applied, is then carried into the definition of "normal work week" -- which requires another set of analysis. (*Id.*) Then, these two definitions, after interpretation, are carried into the definitions of "basic weekly wages" and "basic hourly rate." (*Id.*) All of this analysis is required just to interpret what the base wages of an employee <u>would</u> be, assuming only "base" hours were worked.

25. The CBAs, however, provide a broad range of pay rates, applicable by the express terms of the contract, to various work hours, work locations, and specific situations above base hours. Each of these provisions will, in turn, have to be interpreted and applied to the individual facts and circumstances applicable to each individual employee on each day, to determine, what, if anything, an employee may have been entitled to receive under the CBAs (and thus, what amounts the WPCA will require to be paid within specific times.) For example, the CBAs provide for premiums, calculated based on the "basic hourly rate" for "all time worked in excess of a normal daily tour for a full time employee," "all time worked in excess of 49 hours in a calendar week," "for all time worked in excess of the normal work week for full time employees," and for work occurring on Sundays and Holidays (both of which are also defined

terms). (Ex. 4-A and 4-B (CBAs, Art. 24)). Each of these provisions will have to be interpreted and applied.

26. Even more importantly, the Court will have to interpret the CBAs to determine what the parties intended by their regular use of the term "time worked" as a condition to payment in numerous sections of the CBAs. The regular use of this term, without an express definition, will require the Court to engage in detailed and extensive interpretation of what the term means in each context, the intent of the parties, and the custom and practices of the parties under the CBAs. Furthermore, the CBAs also contain Letters of Understanding, which, as parts of the CBAs, govern maximum amounts of time that can be mandated to employees, and govern work hours and activities. (Ex. 4-A and 4-B (CBAs, p. 136 and 134). These Letters of Understanding would also have to be interpreted and applied to determine amounts that may be due for work performed at various times and under various conditions. And, finally, the CBAs have provisions that count certain hours, such as holiday time, as "time worked," which other hours are not. (*See, e.g.*, Ex. 4-A and 4-B (CBAs, Art. 24, 27, and 28)). These provisions would also have to be interpreted and applied to determine their impact on the analysis.

27. Next, the CBAs also provide a number of entitlements to increased or different pay for certain tasks, and on occasions in which the employee is absent. These provisions include contractual rights to shift differentials (Ex. 4-A and 4-B (CBAs, Art. 19)), special wage adjustments (*Id.* (CBAs, Art. 21 and 23)), emergency call outs (*Id.* (CBAs, Art. 27)), certain union meetings (*Id.* (CBAs, Art. 2 and 10A)); transfers (*Id.* (CBAs, Art. 24)), travel time (*Id.* (CBAs, Art. 28), excused time (*Id.* (CBAs, Art. 33); and vacations (*Id.* (CBAs, Art. 31). Each would have to be interpreted and applied to each individual's circumstances to determine what amounts may or may not have been due on a particular day or week.

28. Finally, local practices, local grievance settlements, and other local customs that apply under the CBA would have to be interpreted and applied to determine any amounts due to any employee on any day or any week. In fact, the Communications Workers of America (the "Union") filed a grievance last year challenging the same practices that make up the basis for this lawsuit. (*See* Ex. 4, Declaration of Angelia Sposa, ¶8). The fact that the Union filed a grievance on the central issue in this case, alleging an improper interpretation and application of the 2008 CBA, is telling proof that such a claim is inextricably intertwined with the CBAs.

29. Levels of interpretation such as these clearly demand federal preemption. As this Court itself explained, when determining a claim requires the Court to "go beyond merely referring to wage scales in a CBA" the claim is preempted as a matter of law. *Arnold v. Cabot Corp.*, No. 1:99CV75, 2000 U.S. Dist. LEXIS 7709, at *18 (N.D. W.Va. May 8, 2000). Similarly, as the Fourth Circuit has explained, in a case involving markedly <u>less</u> interpretation than is at issue here (only two contract provisions), "any substantive right [Plaintiffs] may have to recovery of vacation and severance pay would require interpretation of the [CBA]" as the source of the claimed right. *Barton*, 1990 WL 3677, at *2; *see also, McCormick v. AT&T Technologies, Inc.*, 934 F.2d 531, 543 (4th Cir. 1991) (where the claim depends on showing a breach of the CBA, the claim is preempted); *Fox v. Giant Food, Inc.*, 298 F.3d 284, 288 (4th Cir. 2002) (accord). And, when faced with claims under the WCPA requiring the interpretation of provisions governing contractual overtime and premium pays, the Southern District of West Virginia concluded that claims were preempted because "whether [the employee] was entitled to the relief he seeks can be determined only by interpreting the CBA." *Elswick v. Daniels Electric, Inc.*, No. 2:10-01336, 2011 U.S. Dist. LEXIS 41885, at *10 (S.D. W.Va. Apr. 15,

2011). It is unequivocal that the claims raised by Plaintiffs, requiring the interpretation of more than than 15 provisions of the CBAs on any given day, trigger the preemption doctrine.

30. Count II of Plaintiffs' Complaint is inextricably intertwined with the CBAs for many of the same reasons. First, the claim, alleging a failure to accurately record work hours under state law, is derivative of Plaintiffs' claims for alleged "straight time." Thus, Plaintiffs allege that the claims are based on Defendants' alleged "fail[ure] to pay its Call Center employees" and that Defendants have also "failed to keep accurate records of all hours worked by Call Center Employees." (Complaint, ¶79). As noted above, to determine whether Defendants properly compensated Plaintiffs requires the interpretation of more than fifteen separate provisions of the CBAs every day. Moreover, the allegation that the Defendants have failed to accurately record all hours worked requires an interpretation of what is considered "time worked" under the CBAs. Thus, this claim, like the underlying claim, is inextricably intertwined with the CBAs and is completely preempted by federal law.

31. Count II also expressly and directly challenges the use of Verizon's collectively bargained attendance policy in its challenge to Verizon's entirely legal rounding policy. (See Ex. 1, Complaint, ¶¶ 56-59). The Regional Attendance Plan, however, is a collectively bargained document – just like the CBA. (Ex. 4, Declaration of Angelia Sposa, at ¶9). Thus, Count II expressly challenges the terms and conditions of employment contained in a collective bargaining agreement, and is preempted for the exact same reasons as Count I.

32. Alternatively, if this Court were to determine that Count II of the Complaint was not completely preempted by section 301 of the LMRA, this Court should exercise supplemental jurisdiction over Count II of Plaintiffs' Complaint. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all

CLI-1918730v3

other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *Rosmer v. Pfizer, Inc.*, 263 F.3d 110, 114 (4th Cir. 2001). As noted above, it is beyond dispute that this Court has original, federal question jurisdiction, over Count I of Plaintiffs' Complaint because they are completely preempted by the LMRA. Plaintiffs' claims in Count II arise out of the same conduct alleged in the claims that are preempted by the LMRA, and also involve the same alleged employment relationships. Thus, Count II forms a part of the "same case or controversy" and are proper subjects of supplemental jurisdiction. *See Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 169 F.3d 820, 842 (4th Cir. 1999) (claims arising out of a "common nucleus of operative facts" are proper subjects for supplemental jurisdiction). Count II is also obviously secondary to the claims in Count I, and therefore, cannot "substantially predominate" over the claims that are preempted by the LMRA, and thus, are within the District Court's original jurisdiction.

### III. Other Procedural Matters

33. This Notice of Removal is properly filed in this district and division in accordance with 28 U.S.C. § 1446(a), because the Circuit Court for Harrison County, West Virginia is located in this federal judicial district and division. A copy of the written Notice of Filing Notice of Removal served on Plaintiffs' attorney will be filed with the Clerk of the Circuit Court for Harrison County, West Virginia in accordance with 28 U.S.C. § 1446(d).

### IV. Conclusion

34. This case, in the end, involves a dispute over the interpretation and application of numerous provisions of two collective bargaining agreements to determine what, if anything, employees may have been entitled to receive as wages for "time worked" on any day or in any week. These claims are completely preempted by federal law, and thus, raise a federal question

that vests this court with original jurisdiction over this case. In accordance with the above, the Removing Defendants request that this Court enter such further orders and grant such further relief as may be necessary to secure removal herein and to prevent further proceedings in the Circuit Court for Harrison County, West Virginia. Furthermore, the Removing Defendants seek all other relief they are justly entitled to receive.

Dated: August 15, 2011                     Respectfully submitted,

_____ WV State Bar #4111
Roger A. Wolfe
JACKSON KELLY
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV 25322
Telephone: (304) 340-1105
Facsimile: (304) 340-1130
rwolfe@jacksonkelly.com

Stanley Weiner (*pro hac vice* forthcoming)
Michael M. Michetti (*pro hac vice* forthcoming)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 759-0212
sweiner@jonesday.com
mmmichetti@jonesday.com

Counsel for Defendants
VERIZON SERVICES CORP., VERIZON COMMUNICATIONS INC., MARY FREDERICK, CODY STEWART, BARBARA TERWILLIGER, TAMMY MASON, AND DAWN WATSON

CLI-1918730v3

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Defendants' Notice of Removal to Federal Court was served via regular U.S. Mail, postage prepaid, this 15th day of August, 2011, upon the following:

*Larry Rector, Esq.*
*Steptoe & Johnson, PLLC*
*400 White Oaks Boulevard*
*Bridgeport, WV 26330*

*Theodore A. Schroeder (WV ID No. 9803)*
*Erica L. Clarke (WV ID No. 10377)*
*LITTLER MENDELSON, P.C.*
*625 Liberty Avenue, 26th Floor*
*Pittsburgh, PA 15222-3110*

*G. Thomas Smith*
*Smith, McMunn, and Glover PLLC*
*516 West Main Street*
*Clarksburg WV 26301*

_____   WV State Bar # 4111
One of the Attorneys for Verizon Services Corp., Verizon Communications Inc., Mary Frederick, Cody Stewart, Barbara Terwilliger, Tammy Mason, and Dawn Watson

CLI-1918730v3