## Outside Plant Copper Cable Splicing

This will confirm our understanding that effective on August 3, 2003, that the Verizon telephone companies in Maryland, Virginia, Washington, D.C. and West Virginia agree that all splicing of outside copper cable which is owned, maintained, and operated by them and located between two central offices or between the customer serving TAP/Terminal/ONU and the central office is guaranteed to be assigned to Company employees represented by the Union through August 2, 2008.

This guarantee will be implemented 90 days following ratification. The use of contractors performing this work will be phased out during that 90-day period, subject to any existing contractual arrangements with vendors which cannot be terminated within that period.  Any such requirement will be terminated at the first possible date thereafter permitted under the agreement with the vendor.

Regarding future assignment of this work after this letter agreement expires and regarding work operations not covered by this letter, the provisions of this letter agreement do not modify, increase, or diminish, and shall not be construed to modify, increase, or diminish the rights of either CWA or the Companies under other provisions of their collective bargaining agreements.


Verizon Washington, DC Inc.                    Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.



By _____            By _____
   Company Bargaining Chair                        Union Bargaining Chair

154

## Overtime Administration

This confirms our understanding of August 3, 2003 that the Company's right to assign overtime to meet the needs of the business includes but is not limited to meeting operational needs to meet customer service requirements in a timely manner, or for safety reasons.

Management will first attempt to use volunteers to meet overtime needs. When there are not enough volunteers, and overtime is assigned, management will review an employee's request to be excused if timely presented, and will accept excuses that are reasonable after considering the circumstances of the employee and the needs of the business. The above principles apply throughout the entire bargaining unit.

In seeking volunteers, the following guidelines will apply:

1) Before requiring employees to work overtime, the Company will first seek available, qualified volunteers (who are on the job) from within the group normally used for administering overtime under existing practices.

2) Before requiring any residential or business installation or repair technician within National Operations to perform work on an overtime basis, the Companies will seek available, qualified volunteers (who are on the job) in the Proactive Preventive Maintenance (PPM) organization, Wholesale, and then in the Construction organization. This commitment applies only to technicians who normally perform work in the geography where the work in question will be performed.

3) Notification: Where the Company needs to have work performed on an overtime basis on a given day, and it may be necessary to require employees to perform work on an overtime basis on the same day, the Companies will notify affected employees (who are on the job) no later than two-and one-half (2.5) hours before the end of the employee's scheduled tour that day ("the 2.5 hour point"). (This will not apply in situations where an employee must work overtime to complete a job or work in progress.) For applicable titles, notification may consist of paging the employee before the 2.5 hour point, with the employee responsible to return the page in order to receive notification, or requiring employees to call in to pre-designated telephone number(s) before the 2.5 hour point.

Commencing September 1, 2000, the limitation on forced overtime ("cap") for the remainder of 2000 shall be 10 hours per employee per payroll week. Commencing January 1, 2001, this cap on forced overtime shall be 8 hours per employee per payroll week. Voluntary overtime worked will be counted toward the overtime cap, except for the period from January 1, 2001 to September 1, 2001. Upon request, the Union will assist in securing volunteers. These overtime limitations will not apply in the case of emergency, long term service difficulties or if an employee consents to additional overtime. Except in emergencies, no employee will be involuntarily scheduled or assigned to work six days in a week in consecutive weeks. For purposes of this paragraph

only, an emergency is defined as an event of national importance, fire, explosion, or other catastrophe, or severe weather conditions, e.g., hurricane, tornado, blizzard, severe ice damage or major flood.  In addition, the Union will assume responsibility to make every effort to obtain sufficient volunteers in any condition of sustained bad weather.  For Commercial employees, the cap on overtime for purposes of this paragraph is 7.5 hours.

During the final year of the 2000 collective bargaining agreement, employees requesting weekly vacation during the summer vacation period (May, June, July, August, September) will provide a minimum of one week advance notice for any such request.

A committee consisting of the Company and Union authorized bargaining representatives and an additional representative designated by each party will be established to review Union concerns regarding overtime administration.  The Committee will meet quarterly, if requested by the Union.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.                    Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____          By _____
   Company Bargaining Chair                   Union Bargaining Chair

156

**<u>Limitations on Mandatory Overtime</u>**
**<u>(Applicable to Commercial Employees Only)</u>**

This will confirm our understanding of August 3, 2003 that the overtime limits ("caps") of 10 or 15 hours specified in the existing overtime administration provision in the  DC, MD, VA, WV, VSC, VADI collective bargaining agreement shall both be reduced to seven and one-half (7.5) hours.   In addition, the following provision will apply:

The Company will give reasonable consideration to an employee's timely request to be excused.

1.    An employee will not be required to work more than a total of seven and one-half (7.5)
   hours overtime in any payroll week except in case of emergency (as referenced in the overtime administration letter of understanding), long term service difficulties or employee consent to such overtime.  For purposes of computing the 7.5 hour limits, both voluntary and mandatory overtime will count towards those limits. Upon request, the Union will assist in securing volunteers to work overtime.

2.    The Company will give reasonable consideration to an employee's timely request to be excused.

3.    The parties recognize that long term service difficulties for an extended period may develop from time to time during which suspension of the above overtime limitations would be appropriate.  In the event such service difficulties develop, the Company and the Union will meet to discuss the problem and determine how to best deal with the situation.

<u>Notice for Mandatory Overtime</u>

No mandatory overtime will be assigned to Service Representatives/Consultants with less than 24 hours notice before the start of the tour in which the overtime is to be worked to the affected employee, except for the following situations:

1. To complete calls and/or clear calls in queue at the end of a tour, or
2. Extenuating service conditions, in which case the Company will contact the Union in advance to explain the situation.
3. Emergency conditions as defined in the existing contract provisions on overtime "caps".

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.                Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.

By _____          By _____
   Company Bargaining Chair                      Union Bargaining Chair

## Procedure to Resolve Claims Regarding Hiring Wage Rates

This will confirm our understanding of August 3, 2003, that the parties agree to establish a new procedure to resolve claims regarding employees' hiring wage rates. This procedure shall be independent of the grievance-arbitration procedure and shall provide the exclusive remedy for any claim regarding an employee's hiring wage rate.

If an employee or the Union has an issue regarding an employee's hiring wage rate, the International Representative of the Union shall submit a written statement (by e-mail) to the Labor Relations Manager for the appropriate geographic area explaining this claim. The Company shall review this written statement and provide a written answer (by e-mail) within thirty (30) days. If the Union is not satisfied by this answer, it can submit the dispute to a neutral third party for resolution within thirty (30) days of the Company's answer. The third party neutral shall be appointed in accordance with the procedures established by the Federal Mediation and Conciliation Service.

The only issue that the Union may raise or that a neutral third party can determine regarding an employee's hiring wage rate is whether the Company properly considered all information provided during the employment interview in accordance with the Company's wage credit guidelines. Any remedy issued by the third party neutral shall have prospective effect only and shall not result in any wage reductions.

All claims under this procedure must be filed within sixty (60) days of the new employee's hiring date. Any claim filed more than sixty (60) days after an employee's hiring date shall be time-barred in all respects.

Article 16A, Section 3 is not applicable to any remedies issued under this procedure. No claims arising under this procedure can be submitted to the grievance-arbitration procedure.

Within thirty (30) days of the effective date of this agreement, the parties will meet and mutually agree upon a neutral third party. The Company will notify the Union of any adjustments in its wage credit guidelines at least thirty (30) days prior to implementation.

Either party may terminate this procedure for resolving claims regarding hiring wage rates with sixty (60) days notice to the other party, when in its judgment, the procedure is not workable.

Verizon Washington, DC Inc.           Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____        By _____
   Company Bargaining Chair                Union Bargaining Chair

## VA, DC, MD, WV Sales Prorate Commitment

August, 2003

This letter is to advise the Union of the Company's intention to pro-rate the sales revenues for associates in the Consumer and General Business LOB through August 2, 2008, for the following reasons:

1. Temporary Management Replacement per Article 22, Section 3;
2. Associates who are training other associates in accordance with Article 22, Section 4;
3. Associates who are assigned as New employee development coaching;
4. Associates  who are assigned to follow-up on customer commitments for the office (i.e  down-desk);
5. Absence from work due to a court appearance on behalf of the Company;
6. Absence for Union Business in accordance with Article 9;
7. FMLA-certified absence;
8. Vacations in accordance with Article 31;
9. Disability Absence approved by CORE;
10. Absence when subpoenaed to appear in court;
11. Absence due to Jury Duty;
12. Absence due to Death in Family in accordance with Article 33, Section 1 (b);
13. Absence due to Military Duty;
14. Absence due to Election Service;
15. Loaned to other departments;
16. Absence while involved with formal, job related training;
17. Absence while on a job visit;
18. Any necessary Joint Conference Time;
19. Student takeovers;
20. TBO activities;
21. Winners' Circle;
22. President's Club.

Nothing in this letter is intended to limit the Company's right to establish and implement all appraisal objectives and requirements, including sales revenue requirements.

Sincerely,

Director - Labor Relations

AGREED:

_____
CWA Representative

161

### Sales And Referral Incentive Programs

This will confirm our understanding of August 20, 2000, regarding sales and referral incentive programs reached in 2000 Bargaining.

The Company may develop and implement sales and referral incentive programs which will provide employees in any title who participate the opportunity to earn merchandise, cash, meals, recognition, and other awards of value based on individual and/or collective performance in achieving standards developed and administered solely by the Company.

Except for attending informational meetings, the decision of whether or not to participate in sales and referral incentive programs shall be wholly voluntary.  Sales employees are expected to continue their sales activities and other job responsibilities whether or not they participate in these incentive programs.

A Company representative will notify the Union of any sales and referral incentive programs prior to implementation.  The development, design, size, frequency, and/or administration of sales and referral incentive programs, including the amount of merchandise, cash or other awards earned by participating employees, are wholly within the discretion of the Company and are not subject to the grievance or arbitration provisions of the collective bargaining agreement, except that alleged violations of the provisions of this letter may be grieved and arbitrated.


This Letter of Understanding shall expire at 11:59 PM on August 2, 2008.

Verizon Washington, DC Inc.          Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____          By _____
   Company Bargaining Chair                Union Bargaining Chair

## Service Monitoring

This will confirm our understanding of August 3, 2003, that service management observation programs are oriented toward service provided by the Operator Service Center, and will be taken only for the purpose of evaluating new or changes practices and procedures, customer acceptance, problems in providing service, etc. Service management observation programs are not designed to measure individual operator performance and will not be used for routine observation of individuals. No employee will be discharged or terminated as a result of these observations except for gross customer abuse, fraud or violation of secrecy of communications.

Our approach to monitoring and productivity measurements are based on a premise that fosters a work environment that builds on mutual trust and respect and that enhances job satisfaction. Our program for observations are tailored to the needs of each operator and Center, and the number of diagnostic observations will be consistent with that approach. Make-up observations will be taken only where necessary to insure reasonable statistical reliability of performance measurements. If possible, feedback will take place on the same day as the observations are taken.

Good service to the customers and enhancing revenues are of equal importance to productivity. The AWT measurement practices will continue to be evaluated and revised as required to maximize the objectives of good service and revenue enhancement. It is the Company's intent to develop operator's overall performance in such a manner as to provide operator services to the customer in an efficient, courteous and responsive way.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.                    Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____          By _____
    Company Bargaining Chair              Union Bargaining Chair

163

## Service Quality Observing

The following is our understanding of August 3, 2003, regarding Service Quality Observing:

It is the policy of the Company to conduct Service Quality Observations in full compliance with Federal and State laws. Service Quality Observing includes Service Observing and Supervisory Observing.

Service Observing measures the overall speed, accuracy and efficiency of our telecommunications network and work forces. It is not used for evaluating individual employee performance.

Supervisory Observing involves observions of employee contacts with customers or service-related contacts with other employees. It is used in determining individual employee performance and as an aid to training and development.

Supervisory observations are limited to the handling of customer contacts and contacts between employees involved in the provision of customer service. Employees who may be observed will be made aware of such fact on a quarterly basis and of the general frequency of such observations. Employees' conversations will not be electronically recorded.

Records of supervisory observations will be limited to Company-related matters. They will not be disclosed except to authorized personnel for Company-related reasons. Results of observations will be periodically reviewed with employees and adverse notations, which are intended to be used against an employee for the purpose of justifying discipline, will be reviewed promptly with such employee.

164

Telephones which are not subject to Supervisory Observing will be provided by the Company for employees' personal calls.  In addition, Supervisors will not listen in on personal conversations of employees on any telephone.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.                    Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.

By _____          By _____
     Company Bargaining Chair                    Union Bargaining Chair

## Service Representatives/Consultants -- Downgrades, Transfers, Promotions

This will confirm our understanding of August 3, 2003 that for the life of the 2003 collective bargaining agreement, Consultants/Service Representatives who are not meeting their sales objectives will be allowed to apply for non-sales related positions (positions without sales objectives or requiring sales skills) provided that they meet all other appraisal standards and other applicable qualifications except for sales objectives.

Verizon Washington, DC Inc.                    Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____          By _____
   Company Bargaining Chair                     Union Bargaining Chair

**Short Notice Excused Work Days**

This will confirm our understanding of August 3, 2003, regarding the scheduling of time off on short notice Excused Work Days.

Effective on January 1, 2001, notwithstanding the provisions of Article 31, Section 10 of the General Agreement, requests to supervision for up to three (3) paid Excused Work Days and one (1) unpaid Excused Work Day will be granted on short notice to employees eligible for paid and unpaid Excused Work Days under the following conditions:

1.  The employee must request time off on short notice prior to the start of a scheduled tour or half-tour, but no more than 24 hours prior to the start of the scheduled tour or half-tour.

2.  The Company will grant all EWDs on the basis of the earliest request(s) to supervision provided that the Company may deny any and all requests in work groups of five (5) or more which would result in less than eighty percent (80%) of the scheduled force being available for duty. In a work group of four (4), the Company may deny any and all requests which would result in only one or two scheduled employees being available for duty. In a work group of 3, the Company may deny any and all requests which would result in only one employee being available for duty. This paragraph does not apply to a work group of one or two employees.

3.  The work group shall be the same as the group designated for purposes of vacation selection.

4.  Short notice excused work days may be taken in one-half (1/2) day increments; however, no more than one full day may be requested at any one time.

5.  In each work group, the Company may designate up to (4) work days in any month as unavailable for Short Notice Excused Work Days. Such designations will be made in accord with work schedule posting requirements.

6.  The Company will have the right to deny any and all requests during any severe service disruption that may be caused, for example, by a natural disaster or other calamity (e.g., fires, explosions, civil disturbances, wars, acts of terrorism, major utility and transportation disruptions).

Disputes regarding the application of the terms and conditions of Short Notice Excused Work Days may be submitted to the grievance procedure; however; neither these provisions nor their interpretation and application shall be subject to arbitration.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.                    Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____            By _____
    Company Bargaining Chair                      Union Bargaining Chair

## Stress Relief Committee

This confirms our understanding of August 3, 2003 that in recognition of the need to address issues of employee stress, the parties agree to create a joint Mid-Atlantic Region-wide Company-Union Stress Relief Committee, comprised of five representatives of the Company, and five representatives of the Union, and will be co-chaired by  the President of the Retail Markets Group and  the District 13 representative with primary responsibility for Commercial issues.

The parties will discuss issues relating to employee stress in the Consumer, General Business Sales, and Receivables Management organizations.  Among the matters that the committee will discuss are the following:

- Pro-rated sales objectives;

- Computer timing/adherence;

- Training;

-  Wait Time;

- Cap of Force Movement

The committee will meet at mutually agreeable times, commencing no later than 60 days after ratification of the collective bargaining agreement. The Committee will issue an executive report containing its recommendations no later than January 31, 2001.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.                 Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____          By _____
    Company Bargaining Chair                          Union Bargaining Chair

## Technological Change

This will affirm our understanding of August 3, 2003, that the Company and the Union recognize that technological changes in equipment, organization, or methods of operation have a tendency to affect job security and the nature of the work to be performed. The Company and the Union, therefore, will attempt to diminish or abolish the detrimental effects of any such technological change by continuing a joint committee know as the Technology Change Committee to oversee problems and recommend solutions of problems in this area as set forth below:

It is agreed that for the duration of the 2003 General Agreement a Technology Change Committee be constituted at the Company headquarters level.  Such committee will consist of not more than three (3) representatives of the Company and not more than three (3) representatives of the Union.  Such Committee may be convened at the option of either party at mutually agreeable times.

The purpose of the Committee is to provide for discussion of major technological changes (including changes in equipment, organization, or methods of operation) which may affect employees represented by the Union.  The company will notify the Union at least six (6) months in advance of planned major technological changes.  Meetings may be convened at the option of either party at mutually agreeable places and times, at least two (2) times each year.  At such meetings, the Company will advise the Union of its plans with respect to the introduction of such changes and will familiarize the Union with the progress being made.

The impact and effect of such changes on the employees shall be appropriate matters for discussion.  The Company will discuss with the Union:

(a)     What steps might be taken to offer employment to employees affected;

    (1)     In the same locality or other localities in jobs which may be available in occupations covered by the collective bargaining agreements between the parties;

    (2)     In other occupations in the Company not covered by the collective bargaining agreement;

    (3)     In an affiliate or subsidiary company within the former Bell Atlantic Network Services Group.

(b)     The applicability of various Company programs and contract provisions relating to force adjustment plans and procedures, including, Income Security Plan, Reassignment Pay Protection Program, termination allowances, retirement, training or retraining, transfer procedures and the like.

(c)     The feasibility of the Company providing training for other assignments for the employees affected.  (Example: sponsorship of typing training on Company time).

The Committee shall not formulate policy or arrive at binding decisions or agreements, but rather shall be charged with the responsibility to develop facts and recommendations so that the Company can make well-informed decisions regarding the matters covered by this provision.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.                Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____          By _____
    Company Bargaining Chair                 Union Bargaining Chair

171

## **Termination Of Outside Contractors**

This will confirm our understanding of August 3, 2003, that before initiating a layoff of regular employees in the titles of Systems Technician, Cable Splicing Technician, Services Technician and Outside Plant Technician in Network Operations, pursuant to Article 35 Section 5(c), the Company shall, where practicable, first terminate all arrangements with non-affiliated independent contractors for contracting out the work performed by these titles in Network Operations; only those contracting out arrangements within thirty-five (35) miles of the normal reporting location of the affected surplus employees holding one of these titles shall be terminated.

This provision shall not be construed to require the Company to terminate any such contract contrary to its termination provision or otherwise to require the Company to breach its contract. Where such contracts require notice before termination, the Company shall not be prevented from proceeding with the other steps in Article 35 during the notification period. The Company may also retain contract labor while proceeding with the steps set forth in Article 35 (1) unless the Company's employees can safely, properly and economically perform those types of operations, or (2) where the Company's employees are not properly qualified for such work either under the law or under regulations or governmental authorities prescribing the qualifications thereunder.

This Letter of Understanding will expire on August 2, 2008.

Verizon Washington, DC Inc.                    Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.

By _____            By _____
    Company Bargaining Chair                 Union Bargaining Chair

## Top Secret Security Clearance

This will confirm our understanding of August 3, 2003, that the Company and the Union recognize the need to explore new, innovative methods for meeting customer requirements.  To help assure quality service and consistent service coverage for key federal government contracts, the parties agree to the following:

Certain contracts may require the Company to utilize Technicians and other employees who hold Top Secret, Full Lifestyle Polygraph Security Clearances.  For purposes of this agreement, Technicians and other employees who hold such clearances shall be called "qualified employees."

When working under contracts that require qualified  employees, the Company may choose, at its sole discretion, to designate the government facilities as normal reporting locations.  The Company will pay Temporary Assignment pay for each day a qualified employee is assigned to and actually  performs work that requires Top Secret Full Lifestyle Polygraph Security Clearance at a designated federal facility.   Qualified employees shall receive Temporary Assignment Pay of fifteen dollars ($15.00) a day if they work a full tour and Temporary Assignment Pay of ten dollars ($10.00) a day if they work a half tour.  Employees who work less than a half tour will not receive any Temporary Assignment Pay.  The temporary assignment payment will not be considered as time worked for any purpose under the General Agreement and will be disregarded when computing any wage progression treatments.

The parties agree that the Company shall have the right to determine whether a contract requires qualified employees.   The qualified employees will only receive temporary assignment pay pursuant to this Letter of Understanding when the Company determines that a contract requires Top Secret, Full Lifestyle Security Clearance.

The Company will compile a pool of qualified employees.  If the Company determines that a contract requires qualified employees on a long-term basis, it will select volunteers from this pool.  If there are more volunteers than assignments, the Company will select volunteers in seniority order.  Those who volunteer and who are assigned to report to a Federal facility under long term assignments must agree not to seek other jobs

through RAMP for the duration of the  assignment.  The Company retains the right to assign employees to work on any contract and will exercise this right if there are fewer volunteers than assignments.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.                    Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____        By _____
     Company Bargaining Chair                          Union Bargaining Chair

174

## Treatment of Grievances Settled by the Parties or Arbitration Awards Which Involve Backpay and/or Reinstatement

This confirms our understanding of August 3, 2003, that if, as a result of the settlement of a grievance by the parties or an arbitration award, the grievant is to receive back pay and/or reinstatement following a discharge, layoff, demotion, or suspension, unless and to the extent the settlement or arbitration award specifies otherwise, the employee will be entitled to the following compensation and benefits, and no other compensation (other than any back pay awarded or agreed upon) or benefits:

1.  In the case of a discharged employee reinstated to employment with full back pay, or regardless of the amount of back pay if the settlement or award specifies that the employee is to be "made whole" for the entire period off the payroll, the employee shall receive, less any applicable deductions:  (a) full service credit under the pension plan for the period off the payroll; (b) reimbursement for the COBRA premiums the employee paid for medical, dental and/or vision coverage if the employee continued those coverage(s) under COBRA, or if the employee did not continue those coverage(s) under COBRA, reimbursement for premiums paid by the employee for medical, dental and/or vision coverage not to exceed the amount the employee would have paid as premiums for such coverage(s) had the employee elected COBRA coverage and reimbursement for out-of-pocket medical, vision and dental expenses if, under the provisions of the applicable plans, the employee would not have incurred these expenses if they had remained on the payroll.  The appropriate Plan Administrator would determine which expenses would be reimbursable.  Copies of bills and receipts for services provided must be submitted in order for the employee to be eligible for a reimbursement; (c) any Corporate Profit Sharing Award(s) the employee would have received but for the termination; (d) any Ratification Bonus the employee would have received but for the termination; (e) reimbursement for telephone-related services that would have been covered by Concession Telephone Service had the employee remained on the payroll; (f) recognition of the time off the payroll as "hours worked" for purposes of FMLA eligibility; and (g) if a reinstated employee was a participant in the Verizon Savings and Security Plan for Mid-Atlantic Associates, the Companies will deduct from any backpay awarded or agreed upon, the contributions the employee would have made based on the last election on file as of the date of the employee's termination, and the employee will receive the Companies' match in his or her Savings and Security Plan account to which the employee would have been entitled proportionate to the employee's contribution.

2.  A laid off employee who is reinstated as a result of a grievance settlement or arbitration award shall receive the compensation and benefits set forth in paragraph 1 irrespective of the amount of back pay the employee is to receive.

3.  In the case of a discharged employee reinstated to employment with no back pay or partial back pay, pursuant to a settlement or award which does not specify that the

employee is to be "made whole" for the entire period off the payroll, the employee shall receive, less any applicable deductions, the following, each of which will be prorated as specified:  (a) prorated service credit under the pension plan for the period off the payroll based upon the ratio between the amount of back pay and the amount which the employee would have received in pay if continuously employed, with immediate bridging of service; (b) reimbursement for the COBRA premiums the employee paid  for medical, dental and/or vision coverage if the employee continued those coverage(s) under COBRA, or if the employee did not continue those coverage(s) under COBRA, reimbursement for premiums paid by the employee for medical, dental and/or vision coverage not to exceed the amount the employee would have paid as premiums for such coverage(s) had the employee elected COBRA coverage and reimbursement for out-of-pocket medical, vision and dental expenses if, under the provisions of the applicable plans, the employee would not have incurred these expenses if they had remained on the payroll, based upon the employee's coverage at the time of the discharge, prorated for the period off the payroll based upon the ratio between the amount of back pay and the amount which the employee would have received in pay if continuously employed.  (The appropriate Plan Administrator will determine which expenses will be reimbursable.  Copies of bills and receipts for services provided must be submitted in order for the employee to be eligible for a reimbursement); (c) any Corporate Profit Sharing Award(s) the employee would have received but for the termination, prorated according to Section 3 of the Corporate Profit Sharing Plan, so that the employee receives one-twelfth of the applicable Corporate Profit Sharing Award(s) for each full month's worth of backpay awarded; (d) any Ratification Bonus the employee would have received but for the termination, prorated for the period off the payroll based upon the ratio between the amount of back pay and the amount which the employee would have received in pay if continuously employed; (e) reimbursement for telephone-related services that would have been covered by Concession Telephone Service had the employee remained on the payroll, prorated for the period off the payroll based upon the ratio between the amount of back pay and the amount which the employee would have received in pay if continuously employed; (f) recognition of the time off the payroll as "hours worked" for purposes of FMLA eligibility, prorated for the period off the payroll based upon the ratio between the amount of back pay and the amount which the employee would have received in pay if continuously employed; and (g) if a reinstated employee was a participant in the Verizon Savings and Security Plan for Mid-Atlantic Associates, the Companies will deduct from any backpay awarded or agreed upon, the contributions the employee would have made based on the last election on file as of the date of the employee's termination prorated for the period off the payroll based upon the ratio between the amount of backpay and the amount which the employee would have received in pay if continuously employed, and the employee will receive the Company match in his or her Savings and Security Plan account to which the employee would have been entitled proportionate to the employee's contribution.

4.   Any backpay awarded or agreed upon will be reduced by the amount of money the employee received under any governmental unemployment compensation program,

and the amount of money the employee received from other employment during the period the employee was discharged or suspended.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.   Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____  By _____
 Company Bargaining Chair     Union Bargaining Chair

## <u>Union Business In FMLA And Overtime Build</u>

This will confirm our understanding of August 3, 2003, that the Company agrees to include 047 time which is "unpaid excused time spent for union business" during the employee's normal daily tour within the normal work week in the build for overtime and in the build for the FMLA annual requirement.  047 time will not be considered as "time worked" for any other purpose.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.               Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____               By _____
    Company Bargaining Chair                   Union Bargaining Chair

178

## Vacation Buy-Back

The Company may offer to buy back a full week or weeks of an employee's scheduled vacation in order to meet unanticipated business demands.

The decision by the Company to make a week or weeks available for buy-back in a particular group will be determined solely by the force and service conditions within that group.

All regular employees who are eligible for at least 3 weeks of vacation in the current calendar year will be eligible to sell vacation as follows:

| Vacation Eligibility Current Calendar Year | Maximum No. of Weeks Eligible for Sale |
|---|---|
| 3 | 1 |
| 4 | 2 |
| 5 | 2 |

Once the Company determines that "vacation buy-back" is appropriate, the opportunity to "buy-back vacation" is made available to employees scheduled to take that week in the designated group based on seniority. Acceptance by the employee of an offer to "buy-back" full week or weeks of scheduled vacation is voluntary, however, once vacation is bought by the Company it is not available for reselection. Rather, the employee's work scheduled will reflect a normal work week and the employee will be paid for the "vacation buy-back" on the same basis as provided for vacation payments in Article 31, Section 2 of the General Agreement. Vacation weeks bought by the Company shall not be considered time worked for any purpose under this provision. Payments made for vacation shall not be used in the computations of overtime, differential, or any other premium payments, nor in the determination of any benefits calculated on the basis of wages or other earnings. This provision applies only to full weeks of vacation including weeks with holidays.

179

      Questions regarding the offer or acceptance of "vacation buy-back" may be submitted to the grievance procedure; however, neither the provisions of this letter nor its interpretation or application shall be subject to arbitration.

Verizon Washington, DC Inc.         Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____       By _____
   Company Bargaining Chair         Union Bargaining Chair

## Vacation Scheduling Percentages

This will confirm our understanding of August 3, 2003 that at least 18% of the employees in each vacation administrative work group shall be permitted to schedule off in a given week.

Where the application of the percentage specified above results in other than a whole number, the number yielded will be rounded up to the next whole number.

Regarding vacation availability during traditional fall hunting season and the December holiday season, management will make a reasonable effort to consider the need for higher vacation availability.

Those work groups whose vacation availability is currently greater than the percentages specified above, will not be required to reduce their vacation scheduling availability.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.         Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____        By _____
   Company Bargaining Chair             Union Bargaining Chair

## Video Display Terminals

This will confirm our understanding of August 3, 2003, in which the Company and the Union agreed that the introduction and expansion of the use of video display terminals (VDTs) has brought about changes in the workplace.  It is a joint goal to maximize the advantages of VDTs and minimize any potential disadvantages their use may present to employees.

To that end, the Company and the Union agree that the existing Safety Committees shall meet as needed to discuss the ergonomics associated with VDTs and any other VDT related issue both deem appropriate.

This Letter of Understanding shall expire at 11:59 p.m. on August 2, 2008.

Verizon Washington, DC Inc.                          Communications Workers of America
Verizon Maryland Inc.
Verizon Virginia Inc.
Verizon West Virginia Inc.
Verizon Services Corp.
Verizon Advanced Data Inc.
Verizon Avenue Corp.
Verizon South Inc. (Virginia)
Verizon Corporate Services Corp.


By _____          By _____
   Company Bargaining Chair                           Union Bargaining Chair

**MILITARY ABSENCE
AGREEMENT**


between


COMMUNICATIONS WORKERS OF AMERICA


and


THE CHESAPEAKE AND POTOMAC
TELEHONE COMPANY


THE CHESAPEAKE AND POTOMAC
TELEHONE COMPANY OF MARYLAND


THE CHESAPEAKE AND POTOMAC
TELEHONE COMPANY OF VIRGINIA


THE CHESAPEAKE AND POTOMAC
TELEHONE COMPANY OF WEST VIRGINIA


August 7, 1983


1

TABLE OF CONTENTS

Article                                                                  Page

    1.   Military Leaves of Absence.................................................................. 2

    2.   Personal Leaves of Absence and Excused Time ................................ 5

    3.   Grievances ......................................................................................... 8

    4.   Definitions ......................................................................................... 8

    5.   Federal or State Laws........................................................................ 9

    6.   Cancellation and Duration ................................................................. 9

## MILITARY ABSENCE AGREEMENT

THIS AGREEMENT made this 7th day of August 1983 by and between The Chesapeake and Potomac Telephone Company, The Chesapeake and Potomac Telephone Company of Maryland, The Chesapeake and Potomac Telephone Company of Virginia, The Chesapeake and Potomac Telephone Company of West Virginia (hereinafter referred to collectively as the "Companies," or individually as the "Company," which shall mean the employing Company) and Communications Workers of America, hereinafter referred to as the "Union."*

WHEREAS, the parties have engaged in collective bargaining, with respect to employees in the bargaining unit, which has resulted in this Agreement resolving all issues between them:

NOW, THEREFORE, in consideration of the covenants and the terms and conditions herein contained, the parties mutually agree as follows:

*All references to The Chesapeake and Potomac Telephone Companies shall mean the employing Companies, of  Verizon Washington, DC Inc., Verizon Maryland Inc., Verizon Virginia Inc, Verizon West Virginia Inc., Verizon Advanced Data Inc., collectively ("Verizon South"), and Verizon Services Corp., for its employees who work in the geographical territory of Verizon South.

### Article 1. - Military Leaves of Absence

**SECTION 1.**  Upon application by the individual employees involved, military leaves of absence will be granted to employees leaving positions other than "temporary positions," as specified in the Viet Nam Era Veterans' Readjustment Assistance Act of 1974, as amended, to enter the "armed forces" who:

(a)     are inducted pursuant to legislation providing for the involuntary induction of persons into the "armed forces"; or

(b)     enlist for a period of "active duty" not exceeding four years (except that such period may be extended so that the total of all service does not exceed five years, provided that all service in excess of four years is at the request and for the convenience of the Federal Government); or

(c)     are members of the "reserve components of the armed forces" and are ordered or called into "active duty";

provided that such employees are not ineligible for reemployment rights under the Viet Nam Era Veterans' Readjustment Assistance Act of 1974, as amended by reason of past "military duty."

**SECTION 2.**  Any leave of absence granted pursuant to this Article shall be effective until the employee is reemployed in accordance with the provisions of this Article or until the employee's right to reemployment under the law expires, whichever occurs first.

**SECTION 3.**  The following provisions shall apply to employees granted military leaves of absence under this Article:

(a)     *Vacation Treatment*.  Employees who have not received vacations to which they are entitled at the time their leaves of absence begin shall receive a lump sum payment in lieu of the vacation of any unused portion thereof.

(b)     *Pay Treatment During Absence*.  Employees who are granted military leaves of absence pursuant to this Article shall, when their Company pay is greater than their Government pay, receive from the Company the difference between their Company pay and Government pay for the following periods, as applicable:

> (1)     An employee with one year or less of net credited service when his military leave of absence becomes effective - the first two weeks of "military duty" or any shorter period he may serve.

> (2)     An employee with more than one year of net credited service when his military leave of absence becomes effective - the first three months of "military duty" or any shorter period he may serve.

(3)     For this purpose Company pay shall include basic pay at the rate in effect when the military leave of absence first becomes effective plus the weekly average of evening and night differential payments received for the normal work week during the first four of the five calendar weeks worked immediately preceding the week in which the military leave of absence becomes effective. Government pay shall be determined as of the time the employee begins his "military duty" and shall include basic pay, pay for special or hazardous duty and, for those with dependents, the difference between quarters allowances established for members of the uniformed services with dependents and those established for members of the uniformed services of equal rank without dependents and, in addition, any other family allowances which may hereafter be prescribed by law.

(4)     Any periods of absence on military leave will be cumulative and will be considered as one period in computing the payments to be made in accordance with this Paragraph (b) and Paragraph (c) below. However, an employee's eligibility for payments under this Article will be reinstated for additional tours for involuntary periods of "active duty" in cases of national emergency; provided that in no event shall an employee be eligible to receive payments for more than one tour of active duty unless the employee has been on the active payroll, following a previous tour of active duty, for at least a two year period.

(c)     *Payments on Behalf of Dependents During Absence*.  In addition to the pay treatment prescribed in (b) above, employees, regardless of length of service, who are granted military leaves of absence pursuant to this Article and who have spouses, or dependent children under 18 years of age, at the commencement of their leaves, will, when their Company pay is greater than their Government pay, receive from the Company the difference between their Company pay and Government pay for an additional three months.  For this purpose, Company pay and Government pay shall be computed as prescribed in Paragraph (b) above.

Such employees who have dependents other than spouses, or children under 18 years of age, at the commencement of their leaves shall, upon the submission of evidence of dependency satisfactory to the Company, receive special payments from the Company not to exceed those specified in the next preceding paragraph.

(d)     *Employee Discount Telephone Service During Absence*.  Subject to Company's applicable exchange tariffs, employees who are receiving employee discount telephone service at the time their military leaves of absence become effective, shall, if they so request, continue to receive such discount telephone service for the use of their immediate families during the period of their leaves.

Employees who are not receiving employee discount telephone service at the time their military leaves of absence become effective shall, to the extent that the same if provided for under the Company's exchange tariffs, be eligible to receive such

3

discount telephone service for the use of their immediate families during the period of such leaves.

Such employee discount telephone service shall be limited to the territory served by The Chesapeake and Potomac Telephone Companies.

The provisions of this Paragraph (d) are subject to such change or changes as may be necessary on account of any rules or regulations which may be hereafter prescribed by any regulatory or governmental body.

(e)     *Reemployment.*  Employees who are granted military leaves of absence under this Article and who, upon their return from "military duty", have reemployment rights under the law and apply for reemployment with the Company within the time prescribed by law will be reemployed in accordance with the provisions of the law then in effect.

(f)     *Benefits During Absence.*  Employees who are granted military leaves of absence under this Article and who, upon their return from "military duty", are reemployed by the Company in accordance with Paragraph (e) above, shall receive full service credit for the period of such military leaves of absence for the purpose of determining net credited service.

Employees who are granted military leaves of absence under this Article shall be eligible for death benefits during the period of such leaves to the same extent and upon the same terms and conditions as if such employees had continued in the regular employment of the Company.  However, such benefits, where payable, shall be based upon the term of net credited service credited to an employee at the time the absence began plus service during such absence until time of death and shall be computed at the rate of Company pay which the employee was receiving at the time the military leave of absence became effective.

Employees returning from military leaves of absence granted pursuant to this Article, who are reemployed in accordance with Paragraph (e) above, but who are unable to return to work because of sickness disability, shall be eligible for sickness payments as of the date on which they would have returned to work except for the disability, to the same extent and upon the same terms and conditions as such payments are provided for regular employees of the Company.  Such payments, where made, shall be based upon the term of net credited service credited to the employee at the time his military leave of absence began plus the period of such leave of absence and shall be computed at the rate of Company pay applicable to the employee upon his reemployment.

(g)     *Treatment upon Return from Military Service.* Employees who are granted military leaves of absence under this Article and who, upon their return from "military duty", are reemployed in accordance with Paragraph (e) above, shall be accorded the following treatment:

4

(1)     Reemployment shall be at the rate of pay the employee would have received if he had been continuously on duty with the Company during the period of absence in the job classification he was in at the time he left; provided, however, that in the case of any such employee who has become incapacitated while on leave of absence on "military duty" to the extent that he is physically unable to do the same work or work similar to that which he was doing before entering military service and who is reemployed in different work, his rate of pay upon reemployment shall be subject to adjustment in accordance with the circumstances of his particular case.

(2)     In the year in which the employee returns he shall be entitled, during that calendar year, to the vacation he would be entitled to under the Agreement between the parties, as if he had been continuously on duty with the Company during the period of absence, providing there remains in that calendar year a sufficient number of days to make this possible.  Otherwise the employee will receive that portion of his vacation which can be taken within the calendar year in which he returns.

(3)     In addition to the pay treatment described above, employees granted military leaves of absence under this Article who, upon their return from "military duty", are reemployed in accordance with Paragraph (e) above, shall be accorded any other reemployment rights, privileges and benefits to which they may be entitled under then existing law by reason of their "military duty".

**SECTION 4.**  Employees who enter the armed forces for "active duty" without having obtained military leaves of absence under this Article will, upon their return from "active duty", be granted those reemployment rights, privileges and benefits, if any, to which they may be entitled under then existing law by reason of their military duty.

### Article 2. - Personal Leaves of Absence and Excused Time

**SECTION 1.**  Upon application by the individual employees involved, personal leaves of absence for military reasons, or excused time, will be granted to employees leaving positions other than "temporary positions", as specified in the Viet Nam Era Veteran's Readjustment Assistance Act of 1974, as amended, for the following types of absence:

(a)     "Active duty for training" as covered in Section 2 of this Article; or

(b)     "Training duty" as covered in Section 3 of this Article; or

(c)     "Emergency active duty" as covered in Section 4 of this Article; and shall be effective until the employee is reemployed in accordance with the provisions of this

5

Article or until the employee's right to reemployment under the law expires, whichever occurs first.

**SECTION 2.** *"Active Duty for Training."* Personal leaves of absence for military reasons will be granted to employees who enter upon an initial period of "active duty for training" of not less than three consecutive months.

(a)   *Vacation Treatment.* Employees who have not received vacations to which they are entitled at the time of the commencement of their personal leaves of absence for military reasons, shall receive a lump sum payment in lieu of the vacation or any unused portion thereof.

(b)   *Pay Treatment During Absence.* Employees who are granted personal leaves of absence for military reasons pursuant to this Section shall, when their Company pay is greater than their Government pay, receive from the Company the difference between their Company pay and their Government pay as follows: where the period of "active duty for training" is fifteen days or more, the difference between Company pay for eleven normal scheduled working days and one-half Government pay for one month. For this purpose, Company and Government pay shall be computed in accordance with Article 1, Section 3, Paragraph (b)(3) above. In no event shall payment for difference in pay be made for more than eleven normal scheduled working days in any one fiscal year whether for "active duty for training" under this Section or for "training duty" under Section 3 below, or both.

**SECTION 3.** *"Training Duty."* Excused time, or personal leaves of absence, as appropriate, will be granted to employees who are members of the "reserve components of the armed forces", including the National Guard, and who enter upon "training duty".

(a)   *Vacation Treatment.* Such excused time, or personal leaves of absence shall not be deducted from the regular vacation periods to which the employees may be entitled; however, if an employee elects to take his "training duty" under this Article during his vacation period he shall receive only his vacation pay for this period.

(b)   *Pay Treatment During Absence.* Employees who are excused, or granted personal leaves of absence, under this Section shall, when their Company pay is greater than their Government pay, receive from the Company the difference between their Company pay and their Government pay as follows:

(1)   When the period of "training duty" is fourteen consecutive days, the difference between Company pay for ten normal scheduled working days in the period of training duty" and Government pay for the entire fourteen days.

(2)   When the period of "training duty" is fifteen consecutive days or more, the difference between Company pay for eleven normal scheduled working days and one-half Government pay for one month.

6

> (3)     When the period of "training duty" is less than fourteen consecutive days, the difference between Company pay for the normal scheduled working days during the period of training duty and Government pay for the entire period of such duty provided that in any one fiscal year the Company pay for the normal scheduled working days shall not exceed the normal scheduled working days in two normal work weeks.

For this purpose, Company and Government pay shall be computed in accordance with Article 1, Section 3, Paragraph (b)(3) above.  In no event shall such payment of difference in pay be made for more than eleven normal scheduled working days in any one fiscal year whether for "training duty" under this Section or for "active duty for training" under Section 2 above, or both.

**SECTION 4.**  *"Emergency Active duty."*  Excused time, or personal leaves of absence, as appropriate, will be granted to employees who are members of the National Guard when ordered to "emergency active duty" in cases of emergencies other than for "active duty" as provided for in Article 1, Section 1 of this Agreement.

(a)     *Vacation Treatment*.  Such excused time, or personal leaves of absence, shall not be deducted from the regular vacation periods to which the employees may be entitled; however, if an employee's "emergency active duty" under this Section occurs during his vacation period, he shall receive only his vacation pay for this period.

(b)     *Pay Treatment During Absence*.  Employees who are excused, or granted personal leaves of absence, under this Section shall, when their Company pay is greater than their Government pay, receive the difference between their Company pay and their Government pay for a period not to exceed the normal scheduled working days in two normal work weeks in any one fiscal year, such difference to be computed as follows:

> (1)     When the period of "emergency active duty" consists of fourteen or more consecutive days, the difference between Company pay for ten normal scheduled working days and Government pay for fourteen days.

> (2)     When the period of "emergency active duty" is less than fourteen consecutive days, the difference between Company pay for the normal scheduled working days during the period of "emergency active duty" and Government pay for the entire period of such duty.

For this purpose, Company and Government pay shall be computed in accordance with Article 1, Section 3, Paragraph (b)(3) above.  Time spent on such "emergency active duty" shall not affect the employee's eligibility to be granted a personal leave of absence for "active duty for training" in accordance with Section 2 of this Article, or his eligibility to be excused for "training duty" in accordance with Section 3 of this Article.

**SECTION 5.**  *Reemployment*.  Employees who are granted personal leaves of absence for military reasons or are excused under this Article and who, upon their return from "military duty" have reemployment rights under existing law and apply for reemployment with the Company within the time prescribed by law, will be reemployed and accorded any reemployment rights, privileges and benefits to which they may be entitled under then existing law.

**SECTION 6.**  *Treatment upon Return from Military Duty*.  Employees reemployed in accordance with Section 5 of this Article shall be accorded the same treatment as employees reemployed upon their return from "military duty" under Section 3, Paragraph (g) of Article 1 of this Agreement.

### Article 3. - Grievances

Grievances involving the interpretation or application of the provision of this Military Absence Agreement may be processed through the established grievance procedure in the General Agreement between the parties, but in no event shall any such grievance be subject to arbitration.

### Article 4. - Definitions

For purposes of interpretation and application of this Agreement, the following definitions shall apply:

(1)     *"Active duty,"* sometimes referred to as "active duty for training and service", shall mean full-time duty in the active military service of the United States, other than "active duty for training", "training duty", or "emergency active duty".

(2)     *"Active duty for training"* shall mean full-time duty in the active military service of the United States for training purposes as specified in the Viet Nam Era Veterans' Readjustment Assistance Act of 1974, as amended.

(3)     *"Training duty,"* sometimes referred to as "inactive duty training", shall mean training, appropriate duties or instruction performed by the reserve components of the armed forces, other than that described in (2) above, as specified in the Viet Nam Era Veterans' Readjustment Assistance Act of 1974, as amended.

(4)     *"Emergency active duty"* shall mean active duty performed by the federally recognized National Guard in cases of emergency, and shall not include such "active duty" as covered in (1) above.

(5)     *"Military duty"* shall mean military duty or service of any nature under orders or authorization issued by competent authority.

(6)     *"Armed forces"* shall mean the armed forces of the United States as specified in the Viet Nam Era Veterans' Readjustment Assistance Act of 1974, as amended.

(7)  *"Reserve components of the armed forces"* shall mean the reserve components of the armed forces of the United States as specified in the Viet Nam Era Veterans' Readjustment Assistance Act of 1974, as amended.

(8)  *"Temporary positions"* shall mean positions of a specific, brief and non-recurrent period as referred to in the Viet Nam Era Veterans' Readjustment Assistance Act of 1974, as amended.

### Article 5. - Federal or State Laws

Should any Federal or State law or the final determination of any court of competent jurisdiction or any proclamation or order having the force of law at any time affect any provision of this Agreement, such provision shall be construed as having been changed to the extent necessary to conform to such law or decision.  In the event that such law, determination or proclamation shall be repealed or held unconstitutional, the provision of this Contract affected hereby shall be read according to its original tenor.

### Article 6. - Cancellation and Duration

**SECTION 1.**  This Agreement shall cancel and supersede all existing agreements with respect to treatment of employees entering, during, and upon their return from all types of "military duty" and sets forth all of the understandings, commitments and agreements existing between the parties relating thereto.

**SECTION 2.**  This Agreement shall continue in effect for an initial period through August 9, 1986 or until the final termination of the General Agreement covering wages and working conditions between the parties entered into pursuant to the Memorandum of Agreement dated August 27, 1983, whichever is later, and thereafter shall continue in effect until modified, amended or terminated by sixty days written notice given by either party to the other.  Following the service of such notice, the parties agree to engage in collective bargaining with respect to such modification, amendment or termination.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in their names by their duly authorized representatives the day and year first above written.

The Chesapeake and Potomac           Communications Workers
  Telephone Companies                      of America

                                          By  Edwin Lewinski

                                          Approved:

By  A. E. Sears                           By  G. E. Watts
  Assistant Vice President            President C.W.A.

# INDEX

| ARTICLE | | PAGE |
|---|---|---|
| 9 | ABSENCE FOR UNION BUSINESS | 13 |
| 4 | AGENCY SHOP | 6 |
| 16 | BASIC WAGE SCHEDULES | 27 |
| 41 | CANCELLATION AND DURATION | 92 |
| 2 | COLLECTIVE BARGAINING | 4 |
| 39 | CONTRACT LABOR | 86 |
| 17 | CORPORATE PROFIT SHARING PLAN | 32 |
| 40 | DEFINITIONS | 87 |
| 19 | DIFFERENTIALS | 37 |
| 27 | EMERGENCY CALL-OUTS | 53 |
| 36B | EMPLOYMENT SECURITY TRAINING | 80 |
| 33 | EXCUSED TIME | 68 |
| 38 | EXCUSED WORK DAYS | 85 |
| 15 | FEDERAL OR STATE LAWS | 26 |
| 35 | FORCE ADJUSTMENT, LAYOFF, PART-TIMING AND REHIRING AFTER LAYOFF | 73 |
| 12 | GRIEVANCES AND GRIEVANCE MEETING PROCEDURE | 18 |
| 30 | HOLIDAYS | 59 |
| 26 | INCLEMENT WEATHER | 52 |
| 36A | INCOME SECURITY PLAN | 78 |
| 6 | INFORMATION FURNISHED UNION | 9 |
| 16B | NEW JOB TITLES AND JOB CLASSIFICATIONS | 29 |
| 11 | NON-DISCRIMINATION | 17 |
| 10A | OCCUPATIONAL SAFETY AND HEALTH | 16 |
| 24 | OVERTIME AND SUNDAY PRACTICES | 48 |
| 32 | PAYMENTS DURING FIRST SEVEN DAYS OF SICKNESS ABSENCE | 67 |
| 3 | PAYROLL DEDUCTION OF UNION DUES, ETC | 5 |
| 14 | PENSION AND SICKNESS AND ACCIDENT DISABILITY BENEFIT PLANS | 25 |
| 13 | PROCEDURES FOR REGULAR AND EXPEDITED ARBITRATION | 21 |
| 7 | PROMOTION OR TRANSFER OF UNION OFFICERS | 11 |
| 21 | PROMOTIONAL WAGE ADJUSTMENTS | 39 |
| 36C | REASSIGNMENT PAY PROTECTION PROGRAM | 82 |
| 1 | RECOGNITION | 2 |
| 29 | REIMBURSEMENT OF INCIDENTAL EXPENSES | 58 |
| 10 | RESPONSIBLE UNION-COMPANY RELATIONSHIP | 15 |

| ARTICLE | | PAGE |
|---|---|---|
| 34 | SENIORITY | 70 |
| 18 | SPECIAL CITY ALLOWANCE | 36 |
| 16C | TEAM-BASED INCENTIVE PAY PLAN | 31 |
| 22 | TEMPORARY ASSIGNMENTS | 41 |
| 37 | TERMINATION ALLOWANCES | 83 |
| 23 | TRANSFER AND REASSIGNMENT | 42 |
| 28 | TRAVEL ALLOWANCES, TRAVEL TIME AND EXPENSE PAYMENTS | 55 |
| 6A | UNION ACCESS TO EMPLOYEE PERSONNEL FILES | 10 |
| 8 | UNION ACTIVITY ON COMPANY PREMISES | 12 |
| 5 | UNION BULLETIN BOARDS | 7 |
| 20 | UNION REPRESENTATION | 38 |
| 31 | VACATIONS | 62 |
| 16A | WAGE START RATES | 28 |
| 25 | WORK SCHEDULES AND CHANGES IN SCHEDULED WORK TIME | 50 |
| EXHIBIT I | AUTHORIZATION FOR PAYROLL DEDUCTION OF AMOUNTS EQUAL TO UNION DUES | 93 |
| EXHIBIT II | NEGOTIATED AGREEMENTS ON JOB DUTIES | 95 |
| EXHIBIT III | PENSION BAND TABLE | 103 |
| EXHIBIT IV | TRANSFER PLAN AND INTERCOMPANY JOB BANK | 104 |
| EXHIBIT V | BROADBAND NETWORK EMPLOYMENT SECURITY PROVISIONS | 108 |
| EXHIBIT VI | ENHANCED INCOME SECURITY PLAN | 112 |
| LETTERS OF UNDERSTANDING INDEX | | 113 |
| MILITARY ABSENCE AGREEMENT | | 183 |
| EXHIBIT A | | i-xiii |
| WAGE SCHEDULES 2003 | | 1-17 |
| WAGE SCHEDULES 2004 | | 19-35 |
| WAGE SCHEDULES 2005 | | 37-53 |

**EXHIBIT A**

To

GENERAL AGREEMENT

between

COMMUNICATIONS WORKERS OF AMERICA,
AFL-CIO

and

VERIZON WASHINGTON, DC INC.

VERIZON MARYLAND INC.

VERIZON VIRGINIA INC.

VERIZON WEST VIRGINIA INC.

VERIZON SERVICES CORP.

VERIZON ADVANCED DATA INC.

VERIZON AVENUE CORP.

VERIZON SOUTH INC. (VIRGINIA)

VERIZON CORPORATE SERVICES CORP.

**August 3, 2003**

**EXHIBIT A**

TABLE OF CONTENTS

                                                                          PAGE

Wage Schedule Notes:    ……………………………………………ii
        Cost Of Living    ……………………………………………ii
        Pension Band Increases    ………………………………………iii

Locality Wage Groups……………………………………………v-viii

Job Titles and Related Categories, Job Title
    Groups and Wage Schedules ………………………………………ix-xiii

Wage Schedules Effective:

    2003    ……………………………………………………1-17
    2004    ……………………………………………………19-35
    2005    ……………………………………………………37-53

# WAGE SCHEDULE NOTES

## COST-OF-LIVING

1.      Effective August 6, 2006 and August 5, 2007, adjustments will be made in basic weekly rates in each wage schedule in accordance with the following:

      a.      the amount of the August 6, 2006 adjustment shall be:  (i) one-half of the increase above four percent (4.0%) in the "CPI-W" (1982-84=100) for May 2006 over May 2004, applied to (ii) the scheduled rates in effect in each wage schedule on August 5, 2006, (iii) rounded to the nearest 50 cents.

      b.      the amount of the August 5, 2007 adjustment shall be:  (i) one-half of the increase above two percent (2.0%) in the "CPI-W" (1982-84=100) for May 2007 over May 2006, applied to (ii) the scheduled rates in effect in each wage schedule on August 4, 2007, (iii) rounded to the nearest 50 cents.

2.      In no event shall a decrease in the CPI-W result in a reduction of any basic weekly wage rate.

3.      In the event the Bureau of Labor Statistics does not issue the appropriate Consumer Price Indexes on or before the dates referred to in Paragraph 1, the cost-of-living adjustment required by such appropriate indexes shall be effective at the beginning of the first payroll week after receipt of the indexes.

4.      No adjustment, retroactive or otherwise, shall be made as the result of any revision which may later be made in the first published figures for the CPI-W for May 2004, May 2006 and May 2007 .

5.      The cost-of-living adjustment is dependent upon the availability of the CPI-W in its present form and calculated on the same basis as the CPI-W for May 2003.  In the event the Bureau of Labor Statistics changes the form or the basis of calculating the CPI-W, the Companies and the Union agree to request the Bureau to make available, for the life of this agreement, a CPI-W in its present form and calculate it on the same basis as the CPI-W for May 2003, which was 179.4 (1982-84 = 100).

**<u>Pension Band Increases</u>**

1.      There will be a pension band increase of 5% for each associate whose separation from service occurs during the window period between October 1, 2003 and December 31, 2003.  The pension band increase of 5% will be eliminated at 11:59 p.m. on December 31, 2003.

2.      The Verizon Pension Plan for Mid-Atlantic Associates (the "Pension Plan") will be amended to provide for increases in pension bands by the "Percentage Increase" amounts shown in the following table, as applied to participating employees whose "Pension Effective Date" (which is the first day following the last day on the payroll) is on or after the corresponding "Effective Date" shown below.

| Effective Date | Percentage Increase |
|----------------|---------------------|
| 11/1/04 | 2% |
| 10/1/05 | 3% |
| 10/1/06 | 3% |
| 10/1/07 | 3% |

3.    Pension Band Adjustment for Operators.  Effective retroactive to July 1, 2003, through August 2, 2008, the Pension Band for the Operator Job Title in New Jersey, Delaware and Potomac Locality Wage Group A (Washington, D.C., Washington Suburban Area-Maryland and Northern Virginia area) will be increased from Band 107 to Band 108.  On and after August 2, 2008, the Pension Band for the Operator Job title in these locations will revert to Band 107.

## LOCALITY WAGE GROUPS
## WASHINGTON AREA

| | |
|---|---|
| Locality Wage Group A | Washington Corp., Washington Suburban Area-Maryland, Northern Virginia Area |

## MARYLAND AREA

Locality Wage Group B

| | | |
|---|---|---|
| Aberdeen | Crofton | Jarrettsville |
| Accident | Cumberland | Keedysville |
| Annapolis | Damascus | Kennedyville |
| Arbutus | Darlington | La Plata |
| Armiger | Deale | Laurel |
| Baden | Delmar | Leonardtown |
| Bainbridge | Denton | Lexington Park |
| Baltimore | Dundalk | Lonaconing |
| Bel Air | Easton | Mayo |
| Berlin | Edgewood | Mechanicsville |
| Bishop | Elkridge | Milestown |
| Braddock Heights | Elkton | Mt. Airy |
| Brandywine | Ellicott City | Millersville |
| Brooklyn | Essex | Mutual |
| Brunswick | Federalsburg | Myersville |
| Buckeystown | Finksburg | Nanjemoy |
| Cambridge | Flintstone | New Market |
| Cardiff | Fork | New Windsor |
| Catonsville | Frederick | North Beach |
| Cecilton | Frostburg | North East |
| Centreville | Galesville | Northpoint |
| Chase | Glen Burnie | Oakland |
| Chestertown | Glenwood | Ocean City |
| Church Hill | Hagerstown | Odenton |
| Churchville | Hampstead | Owings Mills |
| Clarksville | Hancock | Parkton |
| Clear Spring | Havre de Grace | Parkville |
| Cockeysville | Hollywood | Parole |
| Columbia | Hughesville | Perryville |
| Cresaptown | Hurlock | Pikesville |
| Crisfield | Indian Head | Pocomoke |

## MARYLAND AREA (Cont'd)

| | | | |
|---|---|---|---|
| Locality | Prince Frederick | Solomons | Trappe |
| Wage | Princess Anne | Sparks-Glencoe | Union Bridge |
| Group | Queenstown | St. Margarets | Valley Lee |
| B | Randallstown | St. Michaels | Waldorf |
| | Reisterstown | Stevensville | Walkerville |
| | Ridge | Still Pond | Westminster |
| | Rock Hall | Sykesville | Willards |
| | Salisbury | Taneytown | Williamsport |
| | Severna Park | Thurmont | Woodlawn |
| | Smithsburg | Tompkinsville | |
| | Snow Hill | Towson | |

## LOCALITY WAGE GROUPS
## VIRGINIA AREA

Locality
Wage
Group
B

| | | |
|---|---|---|
| Amherst | Goochland | Pulaski |
| Ashland | Gordonsville | Purcellville |
| Bedord | Grayson | Radford |
| Berryville | Grundy | Richlands |
| Big Stone Gap | Hampton | Richmond |
| Blacksburg | Harrisonburg | Roanoke |
| Bluemont | Hilsboro | Rustburg |
| Bowling Green | Hopewell | Salem |
| Buchanan | Jonesville | Sandston |
| Cape Charles | Lebanon | Seaford |
| Chanceller | Leesburg | Shawsville |
| Chase City | Louisa | Smithfield |
| Chatham | Lovingston | Spotsylvania |
| Chesapeake | Lynchburg | St. Paul |
| Chester | Madison | Stafford |
| Chincoteague | Madison Heights | Staunton |
| Christiansburg | Manakin | Stephens City |
| Clintwood | Manassas | Stewartsville |
| Clover | Marshall | Stuart's Draft |
| Coeburn | Maxwell | Suffolk |
| Colonial Heights | Mechanicsville | Tangier Island |
| Covington | Middleburg | Tazwell |
| Culpeper | Midlothian | Temperanceville |
| Dale City | Mineral | Toano |
| Danville | Nassawadox | Unionville |
| Dhalgren | Newport News | Varina Grove |
| Dinwiddie | Norfolk | Verona |
| Dryden | Norton | Virginia Beach |
| Dublin | Onancock | Wallops Island |
| Eastville | Onley | Warrenton |
| Emporia | Orange | Warsaw |
| Exmore | Parksley | West Point |
| Forest | Pearisburg | Williamsburg |
| Fort Lee | Pennington Gap | Winchester |
| Franklin | Petersburg | Wise |
| Fredericksburg | Poquoson | Woodbridge |
| Gloucester | Portsmouth | Yorktown |

## LOCALITY WAGE GROUPS
### WEST VIRGINIA AREA

Locality
Wage
Group
B

| | | |
|---|---|---|
| Alum Creek | Huntington | Richwood |
| Ansted | Hurricane | Ripley |
| Barboursville | Iaeger | Rock Cave |
| Beckley | Kanawha | Rowlesburg |
| Belington | Kenova | Salem |
| Belle | Kermit | Scott Depot |
| Berkeley Springs | Keyser | Seth |
| Bradshaw | Kingwood | Shady Spring |
| Bridgeport | Lewisburg | Shinnston |
| Brushton | Logan | Sissonville |
| Buckhannon | Lorentz | Sophia |
| Chapmanville | Lubeck | South |
| Charleston | Madison | Spencer |
| Chester | Man | St. Albans |
| Clarksburg | Martinsburg | Summersville |
| Clendenin | Matewan | Suncrest |
| Delbarton | Middlebourne | Sutton |
| Dunbar | Milton | Terra Alta |
| East Bank | Montgomery | Tyler Heights |
| Elizabeth | Morgantown | Vienna |
| Elkins | Moundsville | Walton |
| Elkview | Mt. Hope | Warwood |
| Fairmont | Mullens | Weirton |
| Fayetteville | New Martinsville | Weirton Heights |
| Flat Top | Nitro | Wellsburg |
| Follansbee | Oak Hill | West Milford |
| Fort Gay | Oceana | West Union |
| Franklin | Omar | Weston |
| Gassaway | Parkersburg | Wheeling |
| Gauley Bridge | Peterstown | White Sulphur |
| Gilbert | Philippi | Springs |
| Glen Daniel | Piedmont | Whitesville |
| Glenville | Pineville | Williamson |
| Grafton | Pocatalico | Winfield |
| Griffithsville | Pt. Pleasant | Woodsdale |
| Hinton | Rainelle | |
| Holden | Ravenswood | |

EXHIBIT A

## JOB TITLES AND RELATED CATEGORIES,
## JOB TITLE GROUPS AND WAGE SCHEDULES

| Notes | Job Title | Category | Job Title Group | Wage Schedule |
|-------|-----------|----------|-----------------|---------------|
| | Assignment Administrator | III | 11 | 7 |
| | Assistant Technician | I | 15 | 24 |
| | Automobile Technician | II | 10 | 5 |
| | Automotive Equipment Technician | II | 9 | 3 |
| | Building Attendant | II | 15 | 9 |
| | Buildings Equipment Mechanic | II | 9 | 3 |
| (2) | Buildings Mechanic | II | 10 | 6 |
| (4) | Buildings Mechanic | II | 10 | 6-A |
| | Cable Splicing Technician | I | 6 | 1 |
| | Central Office Technician | I | 7 | 1 |
| | Coin Telephone Collector | II | 10 | 5 |
| | Communications Representative | A | 5 | 14 |
| | Communications Representative #2 | A | 5 | 12 |
| | Computer Attendant-- Semi-skilled 2 | III | 12 | 17 |
| | Computer Attendant-- Semi-skilled 2 | B | 12 | 21 |
| | Consultant | A | 11 | 11 |
| | Customer Account Representative | A | 11 | 11A |
| | Customer Billing Analyst | III | 11 | 7 |
| | Customer Business Representative | A | 11 | 11A |
| | Customer Service Administrator | I | 11 | 29 |
| | Customer Service Agent | I | 7 | 30 |
| | Customer Service Clerk- -Skilled 1 | B | 11 | 22 |
| (5) | Dial Administration Clerk-- Skilled 1 | III | 11 | 18 |

| Notes | Job Title | Category | Job Title Group | Wage Schedule |
|-------|-----------|----------|-----------------|---------------|
| (5) | Dial Administration Clerk--Skilled 1 | B | 11 | 22 |
| | Directory Compilation Clerk – Semi-skilled | III | 12 | 17 |
| | Directory Compilation Clerk - Semi-skilled | B | 12 | 21 |
| | Dispatching Clerk—Semi-skilled 2 | III | 12 | 17 |
| | Dispatching Clerk—Semi-skilled 2 | B | 12 | 21 |
| | Driver--Light Truck | II | 13 | 25 |
| | Driver--Medium Truck | II | 12 | 26 |
| | Driver--Heavy Truck | II | 12 | 27 |
| | Engineering Assistant | A | 7 | 13 |
| (5) | Engineering Drawing Clerk--Skilled 1 | III | 11 | 18 |
| (5) | Engineering Drawing Clerk--Skilled 1 | B | 11 | 22 |
| | Entry Typist--Entry 1 | III | 13 | 15 |
| | Entry Typist--Entry 1 | B | 13 | 19 |
| | Facilities Administrator | III | 11 | 7 |
| | Fraud Investigator | III | 11 | 7 |
| (1) | File Clerk--Entry 3 | III | 13 | 16 |
| (1) | File Clerk--Entry 3 | B | 13 | 20 |
| | Frame Attendant | I | 10 | 4 |
| | Garage Attendant | II | 15 | 9 |
| | General Clerk—Semi-skilled 2 | III | 12 | 17 |
| | General Clerk—Semi-skilled 2 | B | 12 | 21 |
| (3) | Guard | II | 15 | 23 |
| | Key Data Entry Clerk—Entry 3 | III | 13 | 16 |
| | Key Data Entry Clerk—Entry 3 | B | 13 | 20 |
| (1) | Mail Clerk--Entry 3 | III | 13 | 16 |
| (1) | Mail Clerk--Entry 3 | B | 13 | 20 |

x

.

| Notes | Job Title | Category | Job Title Group | Wage Schedule |
|---|---|---|---|---|
| | Maintenance Administrator | III | 11 | 7 |
| | Management Plan Clerk--Semi-skilled 2 | III | 12 | 17 |
| | Management Plan Clerk--Semi-skilled 2 | B | 12 | 21 |
| | Manager's Clerk--Semi-skilled 2 | III | 12 | 17 |
| | Manager's Clerk--Semi-skilled 2 | B | 12 | 21 |
| | Master Automotive Equipment Technician | II | 9 | 1 |
| | Master Buildings Equipment Mechanic | II | 7 | 1 |
| | Material Equipment Technician | II | 9 | 29 |
| | Material Systems Technician | I | 7 | 1 |
| | Message Investigation Clerk--Semi-skilled 2 | III | 12 | 17 |
| | Message Investigation Clerk--Semi-skilled 2 | B | 12 | 21 |
| | Network Services Coordinator | III | 11 | 7 |
| | Office Clerical Assistant—Entry 1 | III | 13 | 15 |
| | Office Clerical Assistant—Entry 1 | B | 13 | 19 |
| | Office Clerk—Entry 3 | III | 13 | 16 |
| | Office Clerk—Entry 3 | B | 13 | 20 |
| | Operator | IV | 14 | 10 |
| | Operator- A (Effective 10-2-98) | IV | 14 | 10-A |
| | Outside Plant Technician | I | 9 | 2 |
| (5) | Plant Assignment Clerk—Skilled 1 | III | 11 | 18 |
| (5) | Plant Assignment Clerk—Skilled 1 | B | 11 | 22 |
| | Plant Records Clerk—Entry 3 | III | 13 | 16 |
| | Plant Records Clerk—Entry 3 | B | 13 | 20 |
| | Public Communications Sales Representative | A | 5 | 28 |
| | RCMAC Clerk | III | 11 | 7 |

xi

| Notes | Job Title | Category | Job Title Group | Wage Schedule |
|---|---|---|---|---|
| | Remittance Clerk—Entry 3 | III | 13 | 16 |
| | Remittance Clerk—Entry 3 | B | 13 | 20 |
| | Repair Clerk—Semi-skilled 2 | III | 12 | 17 |
| | Repair Clerk—Semi-skilled 2 | B | 12 | 21 |
| | Reproduction Clerk—Entry 3 | III | 13 | 16 |
| | Reproduction Clerk—Entry 3 | B | 13 | 20 |
| | Sales Associate (North & South) | III | 13 | 8A |
| | Senior Traffic Office Clerk | IV | 11 | 22 |
| | Service Assistant | IV | 11 | 22 |
| | Service Order Administrator--Skilled 1 | III | 11 | 18 |
| | Service Order Administrator--Skilled 1 | B | 11 | 22 |
| | Service Order Clerk--Semi-skilled 2 | III | 12 | 17 |
| | Service Order Clerk--Semi-skilled 2 | B | 12 | 21 |
| | Service Order Correction Clerk--Skilled 1 | III | 11 | 18 |
| | Service Order Correction Clerk--Skilled 1 | B | 11 | 22 |
| | Service Representative | A | 11 | 11 |
| | Services Technician | I | 9 | 2 |
| | Special Clerk--Skilled 1 | III | 11 | 18 |
| | Special Clerk--Skilled 1 | B | 11 | 22 |
| | Stenographer--Semi-skilled 2 | III | 12 | 17 |
| | Stenographer--Semi-skilled 2 | B | 12 | 21 |
| | Storekeeper | II | 10 | 6 |

| Notes | Job Title | Category | Job Title Group | Wage Schedule |
|---|---|---|---|---|
| | Systems Technician | I | 6 | 1 |
| | Telemarketing Representative-- Entry 3 | III | 13 | 16 |
| | Telemarketing Representative-- Entry 3 | B | 13 | 20 |
| | Teller--Entry 3 | III | 13 | 16 |
| | Teller--Entry 3 | B | 13 | 20 |
| | Typist--Entry 3 | III | 13 | 16 |
| | Typist--Entry 3 | B | 13 | 20 |
| | Warehouse Attendant | II | 15 | 8 |

(1)       No other employee shall be given this job title effective 8-7-77.

(2)       Except Washington Area.

(3)       Washington and Maryland Areas only.

(4)       Washington Area only.

(5)       No other employee shall be given this job title effective 8-6-00.

NOTE:    There are four (4) clerical levels:  Entry 1, Entry 3, Semi-skilled 2, and Skilled 1.  The appropriate wage schedules are numbered 15 through 22.

2003 WAGE SCHEDULES

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 01**                                    **EFFECTIVE AUGUST 03, 2003**

CABLE SPLICING TECHNICIAN, CENTRAL OFFICE TECHNICIAN,
MASTER AUTOMOTIVE EQUIPMENT TECHNICIAN, MASTER BUILDINGS EQUIPMENT MECHANIC,
MATERIAL SYSTEMS TECHNICIAN, SYSTEMS TECHNICIAN

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $444.00 | | $430.00 | |
| 6 Mos. | 6 Mos. | $497.00 | $53.00 | $482.00 | $52.00 |
| 12 Mos. | 6 Mos. | $557.50 | $60.50 | $541.00 | $59.00 |
| 18 Mos. | 6 Mos. | $625.00 | $67.50 | $607.50 | $66.50 |
| 24 Mos. | 6 Mos. | $700.50 | $75.50 | $681.50 | $74.00 |
| 30 Mos. | 6 Mos. | $785.00 | $84.50 | $764.50 | $83.00 |
| 36 Mos. | 6 Mos. | $880.00 | $95.00 | $859.00 | $94.50 |
| 42 Mos. | 6 Mos. | $986.00 | $106.00 | $963.50 | $104.50 |
| 48 Mos. (Maximum) | | $1,105.00 | $119.00 | $1,081.50 | $118.00 |
| **PENSION BAND** | | **121** | | **120** | |

**DISTRICT 2 - POTOMAC**

**WAGE TABLE: 02**                                    **EFFECTIVE AUGUST 03, 2003**

OUTSIDE PLANT TECHNICIAN, SERVICES TECHNICIAN

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $439.00 | | $422.50 | |
| 6 Mos. | 6 Mos. | $490.50 | $51.50 | $473.00 | $50.50 |
| 12 Mos. | 6 Mos. | $547.50 | $57.00 | $529.00 | $56.00 |
| 18 Mos. | 6 Mos. | $611.00 | $63.50 | $592.00 | $63.00 |
| 24 Mos. | 6 Mos. | $683.00 | $72.00 | $662.50 | $70.50 |
| 30 Mos. | 6 Mos. | $762.00 | $79.00 | $741.50 | $79.00 |
| 36 Mos. | 6 Mos. | $851.00 | $89.00 | $829.00 | $87.50 |
| 42 Mos. | 6 Mos. | $951.00 | $100.00 | $927.00 | $98.00 |
| 48 Mos. (Maximum) | | $1,061.00 | $110.00 | $1,038.00 | $111.00 |
| **PENSION BAND** | | **119** | | **118** | |

1

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 03**                                    **EFFECTIVE AUGUST 03, 2003**

AUTOMOTIVE EQUIPMENT TECHNICIAN, BUILDINGS EQUIPMENT MECHANIC

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $438.50 | | $422.00 | |
| 6 Mos. | 6 Mos. | $489.50 | $51.00 | $472.50 | $50.50 |
| 12 Mos. | 6 Mos. | $546.00 | $56.50 | $528.00 | $55.50 |
| 18 Mos. | 6 Mos. | $609.50 | $63.50 | $590.50 | $62.50 |
| 24 Mos. | 6 Mos. | $680.00 | $70.50 | $660.50 | $70.00 |
| 30 Mos. | 6 Mos. | $759.00 | $79.00 | $738.50 | $78.00 |
| 36 Mos. | 6 Mos. | $847.00 | $88.00 | $826.50 | $88.00 |
| 42 Mos. | 6 Mos. | $944.50 | $97.50 | $923.50 | $97.00 |
| 48 Mos. (Maximum) | | $1,054.50 | $110.00 | $1,032.50 | $109.00 |
| **PENSION BAND** | | **119** | | **118** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 04**                                    **EFFECTIVE AUGUST 03, 2003**

FRAME ATTENDANT

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $443.50 | | $424.50 | |
| 6 Mos. | 6 Mos. | $500.50 | $57.00 | $479.50 | $55.00 |
| 12 Mos. | 6 Mos. | $564.50 | $64.00 | $541.00 | $61.50 |
| 18 Mos. | 6 Mos. | $637.00 | $72.50 | $610.00 | $69.00 |
| 24 Mos. | 6 Mos. | $719.50 | $82.50 | $689.00 | $79.00 |
| 30 Mos. | 6 Mos. | $811.50 | $92.00 | $777.00 | $88.00 |
| 36 Mos. (Maximum) | | $916.00 | $104.50 | $877.50 | $100.50 |
| **PENSION BAND** | | **113** | | **112** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 05**                                    **EFFECTIVE AUGUST 03, 2003**

AUTOMOBILE TECHNICIAN, COIN TELEPHONE COLLECTOR

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $440.50 | | $424.50 | |
| 6 Mos. | 6 Mos. | $500.00 | $59.50 | $482.50 | $58.00 |
| 12 Mos. | 6 Mos. | $566.00 | $66.00 | $547.50 | $65.00 |
| 18 Mos. | 6 Mos. | $642.00 | $76.00 | $622.00 | $74.50 |
| 24 Mos. | 6 Mos. | $727.00 | $85.00 | $706.50 | $84.50 |
| 30 Mos. | 6 Mos. | $825.00 | $98.00 | $802.50 | $96.00 |
| 36 Mos. (Maximum) | | $934.00 | $109.00 | $912.00 | $109.50 |
| **PENSION BAND** | | **114** | | **113** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 06**                                    **EFFECTIVE AUGUST 03, 2003**

BUILDINGS MECHANIC (EXCEPT WASH AREA), STOREKEEPER

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $441.00 | | $427.00 | |
| 6 Mos. | 6 Mos. | $497.50 | $56.50 | $482.50 | $55.50 |
| 12 Mos. | 6 Mos. | $560.50 | $63.00 | $546.00 | $63.50 |
| 18 Mos. | 6 Mos. | $631.50 | $71.00 | $617.50 | $71.50 |
| 24 Mos. | 6 Mos. | $712.50 | $81.00 | $698.50 | $81.00 |
| 30 Mos. | 6 Mos. | $801.50 | $89.00 | $789.00 | $90.50 |
| 36 Mos. (Maximum) | | $903.50 | $102.00 | $892.50 | $103.50 |
| **PENSION BAND** | | **113** | | **112** | |

4

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 07**                    **EFFECTIVE AUGUST 03, 2003**

ASSIGNMENT ADMINISTRATOR, CUSTOMER BILLING ANALYST,
FACILITIES ADMINISTRATOR, FRAUD INVESTIGATOR,
MAINTENANCE ADMINISTRATOR, NETWORK SERVICES COORDINATOR,
RCMAC CLERK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $376.50 | | $365.00 | |
| 6 Mos. | 6 Mos. | $434.00 | $57.50 | $421.50 | $56.50 |
| 12 Mos. | 6 Mos. | $501.50 | $67.50 | $487.50 | $66.00 |
| 18 Mos. | 6 Mos. | $578.50 | $77.00 | $563.00 | $75.50 |
| 24 Mos. | 6 Mos. | $667.50 | $89.00 | $650.50 | $87.50 |
| 30 Mos. | 6 Mos. | $770.50 | $103.00 | $752.00 | $101.50 |
| 36 Mos. (Maximum) | | $889.50 | $119.00 | $869.00 | $117.00 |
| **PENSION BAND** | | **112** | | **111** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 08**                    **EFFECTIVE AUGUST 03, 2003**

WAREHOUSE ATTENDANT

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $334.00 | | $334.00 | |
| 6 Mos. | 6 Mos. | $396.50 | $62.50 | $395.50 | $61.50 |
| 12 Mos. | 6 Mos. | $470.50 | $74.00 | $468.50 | $73.00 |
| 18 Mos. | 6 Mos. | $559.50 | $89.00 | $555.00 | $86.50 |
| 24 Mos. (Maximum) | | $664.50 | $105.00 | $657.50 | $102.50 |
| **PENSION BAND** | | **105** | | **105** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 09**                                          **EFFECTIVE AUGUST 03, 2003**

### BUILDING ATTENDANT, GARAGE ATTENDANT

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $311.00 | | $310.00 | |
| 6 Mos. | 6 Mos. | $387.00 | $76.00 | $382.50 | $72.50 |
| 12 Mos. | 6 Mos. | $482.00 | $95.00 | $473.50 | $91.00 |
| 18 Mos. (Maximum) | | $600.00 | $118.00 | $585.00 | $111.50 |
| **PENSION BAND** | | **102** | | **102** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 10**                                          **EFFECTIVE AUGUST 03, 2003**

### OPERATOR

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $384.00 | | $357.00 | |
| 6 Mos. | 6 Mos. | $431.50 | $47.50 | $403.50 | $46.50 |
| 12 Mos. | 6 Mos. | $484.00 | $52.50 | $455.50 | $52.00 |
| 18 Mos. | 6 Mos. | $544.00 | $60.00 | $516.00 | $60.50 |
| 24 Mos. | 6 Mos. | $610.50 | $66.50 | $582.00 | $66.00 |
| 30 Mos. | 6 Mos. | $686.00 | $75.50 | $659.00 | $77.00 |
| 36 Mos. (Maximum) | | $770.50 | $84.50 | $744.00 | $85.00 |
| **PENSION BAND** | | **108** | | **107** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 10A**                                    **EFFECTIVE AUGUST 03, 2003**

OPERATOR-A

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $384.00 | | $357.00 | |
| 6 Mos. | 6 Mos. | $411.50 | $27.50 | $384.00 | $27.00 |
| 12 Mos. | 6 Mos. | $441.00 | $29.50 | $413.00 | $29.00 |
| 18 Mos. | 6 Mos. | $473.50 | $32.50 | $445.00 | $32.00 |
| 24 Mos. | 6 Mos. | $507.00 | $33.50 | $479.50 | $34.50 |
| 30 Mos. | 6 Mos. | $544.00 | $37.00 | $516.00 | $36.50 |
| 36 Mos. | 6 Mos. | $583.00 | $39.00 | $554.50 | $38.50 |
| 42 Mos. | 6 Mos. | $625.50 | $42.50 | $596.50 | $42.00 |
| 48 Mos. | 6 Mos. | $670.50 | $45.00 | $642.50 | $46.00 |
| 54 Mos. | 6 Mos. | $718.50 | $48.00 | $691.00 | $48.50 |
| 60 Mos. (Maximum) | | $770.50 | $52.00 | $744.00 | $53.00 |
| **PENSION BAND** | | **108** | | **107** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 11**                                     **EFFECTIVE AUGUST 03, 2003**

CONSULTANT, SERVICE REPRESENTATIVE

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $437.50 | | $411.50 | |
| 6 Mos. | 6 Mos. | $496.50 | $59.00 | $469.50 | $58.00 |
| 12 Mos. | 6 Mos. | $563.50 | $67.00 | $536.50 | $67.00 |
| 18 Mos. | 6 Mos. | $639.00 | $75.50 | $612.50 | $76.00 |
| 24 Mos. | 6 Mos. | $726.00 | $87.00 | $699.00 | $86.50 |
| 30 Mos. | 6 Mos. | $823.50 | $97.50 | $797.50 | $98.50 |
| 36 Mos. (Maximum) | | $934.50 | $111.00 | $910.00 | $112.50 |
| **PENSION BAND** | | **114** | | **113** | |

7

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 11A**                                             **EFFECTIVE AUGUST 03, 2003**

CUSTOMER ACCOUNT REPRESENTATIVE, CUSTOMER BUSINESS REPRESENTATIVE

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $420.50 | | $396.00 | |
| 6 Mos. | 6 Mos. | $477.00 | $56.50 | $451.50 | $55.50 |
| 12 Mos. | 6 Mos. | $542.00 | $65.00 | $516.00 | $64.50 |
| 18 Mos. | 6 Mos. | $615.00 | $73.00 | $589.00 | $73.00 |
| 24 Mos. | 6 Mos. | $698.50 | $83.50 | $672.00 | $83.00 |
| 30 Mos. | 6 Mos. | $791.50 | $93.00 | $767.00 | $95.00 |
| 36 Mos. (Maximum) | | $899.00 | $107.50 | $875.00 | $108.00 |
| **PENSION BAND** | | **112** | | **111** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 12**                                             **EFFECTIVE AUGUST 03, 2003**

COMMUNICATIONS REPRESENTATIVE #2

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $451.00 | | $431.00 | |
| 6 Mos. | 6 Mos. | $504.50 | $53.50 | $483.50 | $52.50 |
| 12 Mos. | 6 Mos. | $564.00 | $59.50 | $543.50 | $60.00 |
| 18 Mos. | 6 Mos. | $631.00 | $67.00 | $610.00 | $66.50 |
| 24 Mos. | 6 Mos. | $705.50 | $74.50 | $685.00 | $75.00 |
| 30 Mos. | 6 Mos. | $789.50 | $84.00 | $769.50 | $84.50 |
| 36 Mos. | 6 Mos. | $883.00 | $93.50 | $863.50 | $94.00 |
| 42 Mos. | 6 Mos. | $987.50 | $104.50 | $970.00 | $106.50 |
| 48 Mos. (Maximum) | | $1,105.00 | $117.50 | $1,090.00 | $120.00 |
| **PENSION BAND** | | **121** | | **120** | |

9

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 13**                                        **EFFECTIVE AUGUST 03, 2003**

ENGINEERING ASSISTANT

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $440.00 | | $426.50 | |
| 6 Mos. | 6 Mos. | $490.50 | $50.50 | $475.50 | $49.00 |
| 12 Mos. | 6 Mos. | $546.00 | $55.50 | $531.00 | $55.50 |
| 18 Mos. | 6 Mos. | $608.50 | $62.50 | $592.00 | $61.00 |
| 24 Mos. | 6 Mos. | $678.00 | $69.50 | $660.50 | $68.50 |
| 30 Mos. | 6 Mos. | $755.00 | $77.00 | $736.50 | $76.00 |
| 36 Mos. | 6 Mos. | $840.50 | $85.50 | $822.00 | $85.50 |
| 42 Mos. | 6 Mos. | $936.00 | $95.50 | $917.00 | $95.00 |
| 48 Mos. | 6 Mos. | $1,042.50 | $106.50 | $1,024.00 | $107.00 |
| 54 Mos. (Maximum) | | $1,161.00 | $118.50 | $1,141.50 | $117.50 |
| **PENSION BAND** | | **123** | | **122** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 14**                                        **EFFECTIVE AUGUST 03, 2003**

COMMUNICATIONS REPRESENTATIVE

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $457.50 | | $428.50 | |
| 6 Mos. | 6 Mos. | $507.50 | $50.00 | $479.00 | $50.50 |
| 12 Mos. | 6 Mos. | $564.50 | $57.00 | $535.00 | $56.00 |
| 18 Mos. | 6 Mos. | $627.50 | $63.00 | $598.00 | $63.00 |
| 24 Mos. | 6 Mos. | $697.00 | $69.50 | $667.50 | $69.50 |
| 30 Mos. | 6 Mos. | $774.50 | $77.50 | $746.00 | $78.50 |
| 36 Mos. | 6 Mos. | $860.50 | $86.00 | $833.00 | $87.00 |
| 42 Mos. | 6 Mos. | $956.00 | $95.50 | $931.50 | $98.50 |
| 48 Mos. | 6 Mos. | $1,062.50 | $106.50 | $1,040.50 | $109.00 |
| 54 Mos. (Maximum) | | $1,180.00 | $117.50 | $1,163.50 | $123.00 |
| **PENSION BAND** | | **124** | | **123** | |

11

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 15**                                                  **EFFECTIVE AUGUST 03, 2003**

### ENTRY 1-III CLERK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $366.00 | | $352.50 | |
| 6 Mos. | 6 Mos. | $408.00 | $42.00 | $392.50 | $40.00 |
| 12 Mos. | 6 Mos. | $454.00 | $46.00 | $437.00 | $44.50 |
| 18 Mos. | 6 Mos. | $506.00 | $52.00 | $487.00 | $50.00 |
| 24 Mos. | 6 Mos. | $563.50 | $57.50 | $543.00 | $56.00 |
| 30 Mos. | 6 Mos. | $628.50 | $65.00 | $605.00 | $62.00 |
| 36 Mos. (Maximum) | | $700.00 | $71.50 | $673.50 | $68.50 |
| **PENSION BAND** | | **105** | | **104** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 16**                                                  **EFFECTIVE AUGUST 03, 2003**

### ENTRY 3-III CLERK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $378.00 | | $353.50 | |
| 6 Mos. | 6 Mos. | $424.50 | $46.50 | $399.00 | $45.50 |
| 12 Mos. | 6 Mos. | $477.00 | $52.50 | $451.00 | $52.00 |
| 18 Mos. | 6 Mos. | $536.50 | $59.50 | $510.00 | $59.00 |
| 24 Mos. | 6 Mos. | $602.50 | $66.00 | $576.50 | $66.50 |
| 30 Mos. | 6 Mos. | $678.00 | $75.50 | $651.50 | $75.00 |
| 36 Mos. (Maximum) | | $761.50 | $83.50 | $736.50 | $85.00 |
| **PENSION BAND** | | **107** | | **106** | |

13

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 17**                                        **EFFECTIVE AUGUST 03, 2003**

SEMI-SKILLED 2-III CLERK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $382.00 | | $357.00 | |
| 6 Mos. | 6 Mos. | $432.50 | $50.50 | $406.00 | $49.00 |
| 12 Mos. | 6 Mos. | $489.50 | $57.00 | $460.50 | $54.50 |
| 18 Mos. | 6 Mos. | $553.00 | $63.50 | $522.50 | $62.00 |
| 24 Mos. | 6 Mos. | $625.50 | $72.50 | $593.50 | $71.00 |
| 30 Mos. | 6 Mos. | $706.50 | $81.00 | $673.00 | $79.50 |
| 36 Mos. (Maximum) | | $799.50 | $93.00 | $764.00 | $91.00 |
| **PENSION BAND** | | **109** | | **107** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 18**                                        **EFFECTIVE AUGUST 03, 2003**

SKILLED 1-III CLERK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $390.50 | | $362.50 | |
| 6 Mos. | 6 Mos. | $442.50 | $52.00 | $413.00 | $50.50 |
| 12 Mos. | 6 Mos. | $502.50 | $60.00 | $472.50 | $59.50 |
| 18 Mos. | 6 Mos. | $569.00 | $66.50 | $539.00 | $66.50 |
| 24 Mos. | 6 Mos. | $646.00 | $77.00 | $616.50 | $77.50 |
| 30 Mos. | 6 Mos. | $732.50 | $86.50 | $703.50 | $87.00 |
| 36 Mos. (Maximum) | | $830.50 | $98.00 | $804.00 | $100.50 |
| **PENSION BAND** | | **110** | | **109** | |

14

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 19**                              **EFFECTIVE AUGUST 03, 2003**

### ENTRY 1-B CLERK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $345.00 | | $334.50 | |
| 6 Mos. | 6 Mos. | $384.00 | $39.00 | $371.50 | $37.00 |
| 12 Mos. | 6 Mos. | $427.50 | $43.50 | $413.50 | $42.00 |
| 18 Mos. | 6 Mos. | $476.00 | $48.50 | $461.00 | $47.50 |
| 24 Mos. | 6 Mos. | $530.50 | $54.50 | $512.50 | $51.50 |
| 30 Mos. | 6 Mos. | $591.00 | $60.50 | $571.00 | $58.50 |
| 36 Mos. (Maximum) | | $658.50 | $67.50 | $634.50 | $63.50 |
| **PENSION BAND** | | **103** | | **102** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 20**                              **EFFECTIVE AUGUST 03, 2003**

### ENTRY 3-B CLERK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $361.50 | | $343.00 | |
| 6 Mos. | 6 Mos. | $407.50 | $46.00 | $387.00 | $44.00 |
| 12 Mos. | 6 Mos. | $458.50 | $51.00 | $437.00 | $50.00 |
| 18 Mos. | 6 Mos. | $516.50 | $58.00 | $492.50 | $55.50 |
| 24 Mos. | 6 Mos. | $580.50 | $64.00 | $556.50 | $64.00 |
| 30 Mos. | 6 Mos. | $654.00 | $73.50 | $627.50 | $71.00 |
| 36 Mos. (Maximum) | | $736.00 | $82.00 | $707.00 | $79.50 |
| **PENSION BAND** | | **106** | | **105** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 21**                                           **EFFECTIVE AUGUST 03, 2003**

SEMI-SKILLED 2-B CLERK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $370.00 | | $350.00 | |
| 6 Mos. | 6 Mos. | $418.50 | $48.50 | $396.50 | $46.50 |
| 12 Mos. | 6 Mos. | $473.00 | $54.50 | $449.50 | $53.00 |
| 18 Mos. | 6 Mos. | $534.50 | $61.50 | $508.50 | $59.00 |
| 24 Mos. | 6 Mos. | $604.50 | $70.00 | $576.00 | $67.50 |
| 30 Mos. | 6 Mos. | $683.00 | $78.50 | $652.00 | $76.00 |
| 36 Mos. (Maximum) | | $772.50 | $89.50 | $739.00 | $87.00 |
| PENSION BAND | | 108 | | 106 | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 22**                                           **EFFECTIVE AUGUST 03, 2003**

SENIOR TRAFFIC OFFICE CLERK, SERVICE ASSISTANT,
SKILLED 1-B CLERK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $408.50 | | $381.50 | |
| 6 Mos. | 6 Mos. | $456.00 | $47.50 | $430.00 | $48.50 |
| 12 Mos. | 6 Mos. | $511.00 | $55.00 | $483.50 | $53.50 |
| 18 Mos. | 6 Mos. | $571.50 | $60.50 | $544.50 | $61.00 |
| 24 Mos. | 6 Mos. | $639.00 | $67.50 | $612.50 | $68.00 |
| 30 Mos. | 6 Mos. | $715.50 | $76.50 | $689.50 | $77.00 |
| 36 Mos. (Maximum) | | $800.00 | $84.50 | $776.00 | $86.50 |
| PENSION BAND | | 109 | | 108 | |

16

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 23**                                                        **EFFECTIVE AUGUST 03, 2003**

GUARD (WASH & MD AREAS ONLY)

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $591.50 | | $314.50 | |
| 6 Mos. | 6 Mos. | $591.50 | $0.00 | $428.50 | $114.00 |
| 12 Mos. (Maximum) | | | | $584.00 | $155.50 |
| **PENSION BAND** | | 102 | | 102 | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 24**                                                        **EFFECTIVE AUGUST 03, 2003**

ASSISTANT TECHNICIAN

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $345.00 | | $332.00 | |
| 6 Mos. | 6 Mos. | $389.00 | $44.00 | $375.50 | $43.50 |
| 12 Mos. | 6 Mos. | $437.50 | $48.50 | $424.00 | $48.50 |
| 18 Mos. | 6 Mos. | $493.00 | $55.50 | $479.50 | $55.50 |
| 24 Mos. | 6 Mos. | $556.00 | $63.00 | $542.00 | $62.50 |
| 30 Mos. (Maximum) | | $627.00 | $71.00 | $612.00 | $70.00 |
| **PENSION BAND** | | 102 | | 101 | |

17

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 25**                                   **EFFECTIVE AUGUST 03, 2003**

DRIVER - LIGHT TRUCK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $375.00 | | $350.00 | |
| 6 Mos. | 6 Mos. | $419.00 | $44.00 | $394.50 | $44.50 |
| 12 Mos. | 6 Mos. | $469.00 | $50.00 | $444.00 | $49.50 |
| 18 Mos. | 6 Mos. | $525.00 | $56.00 | $499.00 | $55.00 |
| 24 Mos. | 6 Mos. | $588.00 | $63.00 | $561.00 | $62.00 |
| 30 Mos. | 6 Mos. | $658.50 | $70.50 | $631.50 | $70.50 |
| 36 Mos. (Maximum) | | $736.00 | $77.50 | $711.00 | $79.50 |
| PENSION BAND | | 106 | | 105 | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 26**                                   **EFFECTIVE AUGUST 03, 2003**

DRIVER - MEDIUM TRUCK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $379.00 | | $354.00 | |
| 6 Mos. | 6 Mos. | $427.00 | $48.00 | $399.50 | $45.50 |
| 12 Mos. | 6 Mos. | $481.00 | $54.00 | $452.00 | $52.50 |
| 18 Mos. | 6 Mos. | $541.00 | $60.00 | $511.00 | $59.00 |
| 24 Mos. | 6 Mos. | $609.50 | $68.50 | $578.00 | $67.00 |
| 30 Mos. | 6 Mos. | $686.00 | $76.50 | $653.00 | $75.00 |
| 36 Mos. (Maximum) | | $773.00 | $87.00 | $739.00 | $86.00 |
| PENSION BAND | | 108 | | 106 | |

18

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 27**                                   **EFFECTIVE AUGUST 03, 2003**

DRIVER - HEAVY TRUCK

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $387.00 | | $359.00 | |
| 6 Mos. | 6 Mos. | $437.00 | $50.00 | $408.50 | $49.50 |
| 12 Mos. | 6 Mos. | $493.50 | $56.50 | $464.50 | $56.00 |
| 18 Mos. | 6 Mos. | $558.00 | $64.50 | $528.00 | $63.50 |
| 24 Mos. | 6 Mos. | $630.00 | $72.00 | $600.50 | $72.50 |
| 30 Mos. | 6 Mos. | $711.50 | $81.50 | $683.50 | $83.00 |
| 36 Mos. (Maximum) | | $804.00 | $92.50 | $777.00 | $93.50 |
| **PENSION BAND** | | **109** | | **108** | |

**DISTRICT 2 - POTOMAC**

**WAGE SCHEDULE: 28**                                   **EFFECTIVE AUGUST 03, 2003**

PUBLIC COMMUNICATIONS SALES REPRESENTATIVE

| WAGE STEP | NEXT INCREASE INTERVAL | ZONE Locality Wage Group A | INCREASE AMOUNT | ZONE Locality Wage Group B | INCREASE AMOUNT |
|---|---|---|---|---|---|
| Start | 6 Mos. | $466.50 | | $453.00 | |
| 6 Mos. | 6 Mos. | $523.00 | $56.50 | $508.00 | $55.00 |
| 12 Mos. | 6 Mos. | $586.50 | $63.50 | $570.50 | $62.50 |
| 18 Mos. | 6 Mos. | $657.00 | $70.50 | $639.00 | $68.50 |
| 24 Mos. | 6 Mos. | $736.00 | $79.00 | $717.50 | $78.50 |
| 30 Mos. | 6 Mos. | $825.50 | $89.50 | $805.00 | $87.50 |
| 36 Mos. | 6 Mos. | $924.50 | $99.00 | $902.50 | $97.50 |
| 42 Mos. | 6 Mos. | $1,036.00 | $111.50 | $1,012.50 | $110.00 |
| 48 Mos. (Maximum) | | $1,161.00 | $125.00 | $1,136.00 | $123.50 |
| **PENSION BAND** | | **123** | | **122** | |

19