IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES R. BYARD, DAVID M. BROSIUS,
KIMBERLY A. RAY, STEPHANIE SNOW-MCKISIC,
LISA M. THARP, and LYNET WHITE,

        Plaintiffs,

v.                 //   CIVIL ACTION NO. 1:11CV132
                             (Judge Keeley)

VERIZON WEST VIRGINIA, INC., FRONTIER
WEST VIRGINIA, INC., VERISON SERVICES
CORP., VERIZON COMMUNICATIONS, INC.,
JODI DENNIS, MARY FREDERICK, CODY
STEWART, BARBARA TERWILLINGER,
BOB ANDERSON, TAMMY MASON, DAWN
WATSON, MICHAEL HATHAWAY, and
CORBY MILLER,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are the defendants' motions to dismiss and the plaintiffs' motion to remand this case to the Circuit Court of Harrison County, West Virginia. For the reasons discussed below, the Court **DENIES** the plaintiffs' motion to remand (dkt. no. 26), **GRANTS** the defendant Verizon Communications, Inc.'s ("VCI") motion to dismiss for lack of personal jurisdiction (dkt. no. 9), and **GRANTS** the remaining defendants' motions to dismiss for failure to state a claim (dkt. nos. 11, 12, 13, 17).

### I.

On July 22, 2011, the named plaintiffs, Charles R. Byard, David M. Brosius, Kimberly A. Ray, Stephanie Snow-McKisic, Lisa M. Tharp, and Lynet White (collectively "the plaintiffs"), filed this

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

putative class action in the Circuit Court of Harrison County, West Virginia.  The complaint alleges that the defendants, Verizon West Virginia, Inc., Frontier West Virginia, Inc., Verizon Services Corp., Verizon Communications, Inc., Jodi Dennis, Mary Frederick, Cody Stewart, Corby Miller, Barbra Terwilliger, Bob Anderson, Tammy Mason, Dawn Watson, and Michael Hathaway (collectively "defendants"), failed to fully compensate the named plaintiffs and a class of current and former employees for their "time worked" at the Verizon call centers located in Charleston and Clarksburg, West Virginia. Specifically, the plaintiffs allege that the defendants, as their employers and supervisors, required them to engage in certain "preliminary and post-liminary" work activities without compensation.

The complaint contains two causes of action. Count One alleges that the defendants violated W. Va. Code § 21-5-4 by failing to pay the plaintiffs "for <u>all</u> hours worked" (dkt. no. 1-1 at 50 (emphasis in original)). Count Two alleges that the defendants violated W. Va. Code § 21-5-9 by "fail[ing] to keep accurate records of all hours worked by Call Center employees" (dkt. no. 1-1 at 52).

On August 15, 2011, the defendants timely removed this case under 28 U.S.C. §§ 1441 and 1446, invoking this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. The defendants

2

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

argue that the Court has federal subject matter jurisdiction over this case because the plaintiffs' claims are completely preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). The plaintiffs moved to remand (dkt. no. 26), VCI moved to dismiss for lack of personal jurisdiction (dkt. no. 9), and the remaining defendants moved to dismiss for failure to state a claim (dkt. no. 11, 12, 13, and 17). The Court will address each of these motions in turn.

## II.

The threshold question is whether the Court has federal subject matter jurisdiction in this case.

### A.

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Any state civil action which satisfies this requirement "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party seeking removal bears the burden of establishing federal jurisdiction, Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994), and all doubts about the propriety of removal should be resolved in

3

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

favor of retaining state jurisdiction. <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 425 (4th Cir. 1999).

Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987). Accordingly, federal question jurisdiction may not rest on the assertion of a federal defense, including the defense of preemption. <u>Id.</u> at 393. Rather, federal district courts have jurisdiction over "'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" <u>Interstate Petroleum Corp. v. Morgan</u>, 249 F.3d 215, 219 (4th Cir. 2001) (quoting <u>Franchise Tax Bd. v. Const. Laborers Vacation Trust</u>, 463 U.S. 1, 27 (1983)).

A corollary to the well-pleaded complaint rule is the "complete preemption doctrine." Under this doctrine, a complaint "can be recharacterized as one 'arising under' federal law if the law governing the complaint is exclusively federal." <u>Vaden v. Discover Bank</u>, 556 U.S. 49, 50 (2009) (citing <u>Beneficial Nat. Bank v. Anderson</u>, 539 U.S. 1, 8 (2003)). This doctrine will apply to a claim when "the pre-emptive force of a statute is so

4

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

'extraordinary' that it 'converts an ordinary state commonlaw complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Caterpillar, 482 U.S. at 393 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)). The completely preempted state claim will thus be considered, "from its inception, a federal claim," and consequently "arises under" federal law. Caterpillar, 482 U.S. at 393 (citing Franchise Tax Bd., 463 U.S. at 24).

In order to remove an action on complete preemption grounds, a defendant must show that "the plaintiff has a 'discernible federal [claim]' and that 'Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong.'" Pinney v. Nokia, Inc., 402 F.3d 430, 449 (4th Cir. 2005) (alteration in original) (quoting King v. Marriott Int'l, 337 F.3d 421, 425 (4th Cir. 2003)). Here, the defendants argue that the plaintiffs' claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, a statute in which the Supreme Court has found a congressional intent to create an exclusively federal remedy. See Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 560 (1968).

Section 301 of the LMRA provides in pertinent part:

Suits for violation of contracts between an employer and a labor organization representing employees in an

5

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

> industry affecting commerce as defined in this chapter,
> or between any such labor organizations, may be brought
> in any district court of the United States having
> jurisdiction of the parties, without respect to the
> amount in controversy or without regard to the
> citizenship of the parties.

29 U.S.C. § 185(a). This statute creates "a body of federal common law" in order to secure uniform interpretation of labor contracts and "'promot[e] the peaceable, consistent resolution of labor-management disputes.'" McCormick v. AT&T Tech., Inc., 934 F.2d 531, 534, 537 (4th Cir. 1991) (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988)).

Even though the preemptive effect of § 301 "is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization," Franchise Tax Bd., 463 U.S. at 23, "the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require [preemption]." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). Instead, a state law claim will be completely preempted by § 301 only if resolution of the claim "requires the interpretation of a collective-bargaining agreement," Lingle, 486 U.S. at 413, or if the claim is "inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985).

6

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

<u>MEMORANDUM OPINION AND ORDER</u>

As discussed here, the "collective bargaining agreement"
consists of both the express provisions of the agreement itself and
the "'industrial common law,'" the industry and shop practices that
provide the context for the written agreement. <u>McCormick</u>, 934 F.2d
at 536 (quoting <u>United Steelworkers of America v. Warrior & Gulf
Nav. Co.</u>, 363 U.S. 574, 581-82 (1960)); <u>see also</u> <u>Shiflet v. I.T.O.
Corp. Of Baltimore</u>, No. 99-1379, 2000 WL 14214, at *3 (4th Cir.
Jan. 10, 2000). District courts must examine the <u>prima facie</u>
elements of a state law cause of action in order to determine
whether interpretation of a collective-bargaining agreement is
required in order to resolve the claim. <u>Foy v. Pratt & Whitney Gr.</u>,
127 F.3d 229, 233 (2d Cir. 1997) (citing <u>Lingle</u>, 486 U.S. at 407);
<u>see also</u> <u>Arnold v. Cabot Corp.</u>, No. 1:99-75, 2000 WL 1283078, at *7
(N.D. W. Va. May 8 2000).

**B.**

In Count One, the plaintiffs allege that the defendants
violated the West Virginia Wage Payment and Collection Act, W. Va.
Code § 21-5-4,[1] when they did not pay the plaintiffs "for <u>all</u> hours
worked." (Dkt. No. 1-1 at 50 (emphasis in original)).

───────────────────

[1] Although Count One only references W. Va. Code § 21-5-4, the plaintiffs
allege in their motion to remand that this Count includes a claim arising
under W. Va. Code 21-5-3. <u>See</u> (Dkt. No. 27 at 13 ("Count I contains a
straightforward claim for wages that have no been paid for all hours
worked in accordance with West Virginia Code Sections 21-5-3 and 21-5-
4.")).

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

<u>MEMORANDUM OPINION AND ORDER</u>

## 1.

The West Virginia Wage Payment and Collection Act ("WPCA"), W. Va. Code § 21-5-1 <u>et. seq.</u>, "controls the manner in which employees in West Virginia are paid wages." <u>Gress v. Petersburg Foods, LLC</u>, 592 S.E.2d 811, 814 (W. Va. 2003). The statute is "remedial in nature" and is designed to "protect working people and assist them in the collection of compensation wrongly withheld." <u>Meadows v. Wal-Mart Stores</u>, 530 S.E.2d 676, 686 (W. Va. 1999) (citing <u>Mullins v. Venable</u>, 297 S.E.2d 866, 869 (1982)). Accordingly, although "an employer is free to set the terms and conditions of employment and compensation," <u>Meadows</u>, 530 S.E.2d at 689, the WPCA mandates that it "must pay earned wages to its employees." <u>Szturm v. Huntington Blizzard Hockey Assocs. Ltd. P'ship</u>, 516 S.E.2d 267, 273 (W. Va. 1999); <u>see also</u> W. Va. Code § 21-5-10.

To achieve this objective, the WPCA prescribes certain time limits in which employers are required pay their employees' wages. For current employees, the WPCA requires employers to settle "at least once in every two weeks . . . and pay them the wages due . . . for their work or services." W. Va. Code § 21-5-3(a). If an employee quits or resigns, the WPCA requires employers to "pay the employee's wages no later than the next regular payday." <u>Id.</u> § 21-

8

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

5-4(c). "Wages" are defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Id. § 21-5-1(c). The WPCA permits an aggrieved employee to file suit in order to "collect a claim" for his unpaid wages. Id. § 21-5-12.

Importantly, as a remedial statute, the WPCA "regulates the timing and payment of wages" but does not "establish how or when wages are earned." Gregory v. Forest River, Inc., 369 F. App'x 464, 469 (4th Cir. 2010)(citing Saunders v. Tri-State Block Corp., 535 S.E.2d 215, 219 (W. Va. 2000)). Indeed, the WPCA "does not establish a particular rate of pay," Robertson v. Opequon Motors, Inc., 519 S.E.2d 843, 849 (W. Va. 1999), nor any substantive "entitlement[] to pay or wages." Barton v. Creasy Co. of Clarksburg, No. 89-2170, 1990 WL 36773, at * 2 (4th Cir. 1990) (per curiam); see also Meadows, 530 S.E.2d 688-690. Instead, it serves as an enforcement mechanism for employees to recover "wages due" pursuant to their employment contracts. W. Va. Code § 21-5-3(a). Consequently, in order to establish a prima facie claim for wages pursuant to the WPCA, a plaintiff must first "prove entitlement to such pay." Lowe v. Imperial Colliery Co., 377 S.E.2d 652, 657 (W. Va. 1988) (emphasis added). Whether an employee is actually entitled to certain wages is a "matter[] for the employment

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

agreement." <u>Gregory</u>, 369 F. App'x at 469 (citing <u>Saunders</u>, 535 S.E.2d at 219); <u>see also</u> <u>Spano v. Metro. Life Ins. Co.</u>, No. 2:09-cv-01243, 2011 WL 2180657, at *3 (S.D. W. Va. June 2, 2011) ("In WPCA cases, courts must consider the specific employment agreement."); <u>Meadows</u>, 530 S.E.2d at 688-690.

## 2.

State wage payment and collection claims generally fall into one of two strands of § 301 preemption analysis. In the interest of providing context for such claims, a brief discussion detailing these categories follows.

### i.

It is well established that § 301 will not completely preempt a state law claim based on "the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation." <u>Livadas</u>, 512 U.S. at 124. Accordingly, in the state wage payment and collection context, § 301 will not preempt a claim where "the meaning of contract terms is not the subject of dispute" and the court merely needs to "'look to' the collective-bargaining agreement for damages computation." <u>Livadas</u>, 512 U.S. at 124, 125; <u>see</u> <u>generally</u> <u>Balcorta v. Twentieth Century Fox Film Corp.</u>, 208 F.3d 1102, 1111 (9th Cir. 2000) (finding no preemption where all

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

that was required to determine that an employer had violated state law was "a clock or a calculator").

In Stump v. Cyprus Kanawha Corp., for example, a WPCA claim was not preempted where the plaintiffs sought to recover their "final wages . . . following [their employer's] cessation of operations" and "a very simple appendix" in the CBA set out clearly the amount of wages the plaintiffs were owed. 919 F. Supp. 221, 223, 224 (S.D. W. Va. 1995). The court determined that, as no part of the CBA "needs to be interpreted in order to make a decision as to the amount of damages to which the employees will be entitled," the WPCA claims were not completely preempted by § 301. Id. at 226; cf. Ash v. Raven Metal Prod., Inc., 437 S.E.2d 254, 260 (W. Va. 1993) (no preemption where "no interpretation [of the CBA was] required, only a calculation" of the employees' withheld pay). But see Lueck, 471 U.S. at 218 (section 301 preemption occurs where "the right asserted" is "derive[d] from the contract").

### ii.

Section 301 does, however, completely preempt a state wage payment and collection claim where the resolution of that claim requires the Court to go beyond merely "refer[ing] to bargained-for wage rates in computing the penalty," Livadas, 512 U.S. at 125, and instead necessitates "the interpretation of a collective-bargaining

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

<u>MEMORANDUM OPINION AND ORDER</u>

agreement." <u>Lingle</u>, 486 U.S. at 405; <u>see</u> <u>Elswick v. Daniels</u> <u>Electric Inc.</u>, No. 2:10-01336, 2011 WL 1464875, at *3-4 (S.D. W. Va. Apr. 15, 2011) (WPCA claim preempted where "more than mere reference to the CBA" was required to resolve the plaintiff's claims); <u>Arnold</u>, 2000 WL 1283078, at *6 (WPCA claim preempted were resolution of the claim required "interpretation . . . of the industrial common law.").

A common thread in this second strand of cases is the existence of a genuine dispute between the parties as to whether the CBA <u>actually entitles</u> the plaintiffs to the wages that they seek.[2] Such disagreements are, at their core, contract disputes, almost invariably requiring the interpretation of the relevant

---

[2] <u>See</u> <u>Puccino v. SNET Info. Serv., Inc.</u>, No. 3:09-cv-1551, 2011 WL 4575937, at *6 (D. Conn. Sept. 30, 2011) ("the Court would be required to interpret the language of those agreements to determine whether the plaintiffs were <u>entitled</u> to the commissions in question and whether SNET's deductions from commissions for advancements were therefore unlawful" (emphasis added)); <u>Elswick</u>, 2011 WL 1464875, at *4 ("whether Elswick was <u>entitled</u> to the relief he seeks can be determined only by interpreting the CBA" (emphasis added)); <u>Buckner v. United Parcel Serv., Inc.</u>, No. 5:09-411, 2010 WL 2889586, at *3 (E.D.N.C. July 21, 2010) ("determining whether Defendant violated the statute in this case would require the court to interpret the CBA regarding <u>entitlement</u> to pay in the first instance" (emphasis added)); <u>Levy v. Verizon Info. Servs. Inc.</u>, 498 F. Supp. 2d 586, 598 (E.D.N.Y. 2007) ("the court would have to analyze the language of the agreements to decide whether incentive compensation was <u>actually earned</u> before deciding if wages were subsequently deducted in violation of state law" (emphasis added)); <u>Arnold</u>, 2000 WL 1283078, at *6 ("evaluat[ing] whether Arnold was <u>entitled</u> to receive a full day's pay . . . would require interpretation of the custom and practice in the shop - the industrial common law" (emphasis added)).

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

collective bargaining agreement. See, e.g., Baker v. Kingsley, 387
F.3d 649, 658-59 (7th Cir. 2004) (state wage claims "require[]
interpreting the contract, unless, perhaps, the particular
contractual provision is so clear as to preclude all possible
dispute over its meaning" (quoting Metalcrafters v. McNeil, 784
F.2d 817, 824 (7th Cir. 1986)); see also Ansol v. Espoto, 100 F.3d
1111, 117-18 (3d Cir. 1996) (state wage claim preempted where
"plaintiffs' alleged entitlement to compensation . . . is disputed
and cannot be discerned without analyzing the terms of the CBA."
(emphasis added)).

### 3.

Here, the plaintiffs claim they are entitled to remuneration
under the WPCA because

> Defendants have required Plaintiffs to engage in
> preliminary and post-liminary work activities such as
> booting of computers and other work activities before or
> after their scheduled start and end times and because
> Defendants have required Plaintiffs to clock in to work
> at any interval of time before or after their scheduled
> start times and impermissibly rounded that time down.

(Dkt. No. 27 at 15). The plaintiffs contend that no interpretation
of the CBA is necessary to resolve this claim because "Defendants
have already determined Plaintiffs' categorization and rates of pay
under the CBA, and Plaintiffs do not dispute these determinations."

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

<u>MEMORANDUM OPINION AND ORDER</u>

(<u>Id.</u> at 18). The actual analysis of this cause of action, however, is not so simple.

At the outset, as a part of their <u>prima facie</u> case, the plaintiffs must establish that their employment agreements entitle them to the wages they seek to recover through the WPCA. <u>See</u> <u>Gregory</u>, 369 F. App'x at 469; <u>Lowe</u>, 377 S.E.2d at 657. Accordingly, to determine "how or when wages [were] earned" by the plaintiffs, and consequently whether the defendants are in violation of the WPCA for withholding those wages, it is necessary to examine the relevant CBAs. <u>Gregory</u>, 369 F. App'x at 469 (citing <u>Saunders</u>, 535 S.E.2d at 219). The plaintiffs, however, have not identified any provisions within the CBAs that would unambiguously entitle them to be paid for their "preliminary and post-liminary work activities," and the defendants strenuously dispute whether the activities the plaintiffs describe even count as compensable work.

This is not a case where mere "refer[ence] to bargained-for wage rates" will resolve the plaintiffs' claim. <u>Livadas</u>, 512 U.S. at 125. Indeed, the crux of this dispute is not whether a sum certain was simply not paid in a timely fashion, <u>see</u> <u>Stump</u>, 919 F. Supp at 226, but whether the defendants in this case have, for a period of years, failed to pay the plaintiffs wages they believe they should have earned. At bottom, there is no way to resolve the

14

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

underlying dispute concerning the plaintiffs' substantive entitlement to wages other than through the interpretation of the parties' employment contracts and the general "customs and practices" of the industry. McCormick, 934 F.2d at 536. As noted, under the WPCA, the plaintiffs' right to these wages is derived from the employment contract. Gregory, 369 F. App'x at 469. Where the contours of this right are in dispute, there is simply nowhere else to look.

In sum, the gravamen of the plaintiffs' claim under the WPCA is, and must be, that the defendants violated their contractual obligations by paying the plaintiffs less than what they had actually earned. As such a claim necessitates "the interpretation of a collective-bargaining agreement," it is completely preempted by § 301 of the LMRA. See Lingle, 486 U.S. at 405. Consequently, because this claim "arises under" federal law, Caterpillar, 482 U.S. at 393, the Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331, and **DENIES** the plaintiffs' motion to remand (dkt. no. 26).

### C.

In Count Two, the plaintiffs allege that the defendants violated the West Virginia Wage Payment and Collection Act, W. Va.

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

Code § 21-5-9, when they "failed to keep accurate records of all hours worked by Call Center employees." (Dkt. No. 1-1 at 53).

Federal courts have the discretion, in "appropriate case[s]," to address a state claim on the merits before resolving the § 301 preemption inquiry. Washington v. Union Carbide Corp., 870 F.2d 957, 958 (4th Cir. 1989). Specifically, "if the state law claim is 'patently without merit,' the district court may dismiss the claim on the merits without reaching the question of whether § 301 preempts the claim." Owen v. Carpenters' Dist. Council, 161 F.3d 767, 769 (4th Cir. 1998) (quoting Childers v. Chesapeake & Potomac Tel. Co., 881 F.2d 1259, 1261 (4th Cir. 1989)). As this count fails to state a claim under West Virginia law, it is unnecessary to undertake the § 301 preemption inquiry. This claim may be addressed solely in the context of the Fed. R. Civ. P. 12(b)(6) motions to dismiss discussed below.

### III.

The Court next turns to the second jurisdictional issue raised by the pending motions, VCI's motion to dismiss for lack of personal jurisdiction (dkt. no. 9).

### A.

When a defendant files a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff generally

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

bears the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). However, where a court makes a Rule 12(b)(2) determination without a hearing and based only on the written record, as in the case here, the plaintiff need only put forth a prima facie showing of jurisdiction "by pointing to affidavits or other relevant evidence." Henderson v. Metlife Bank, N.A., No. 3:11-cv-20, 2011 WL 1897427, at *6 (N.D. W. Va. May 18, 2011); see also New Wellington Fin. Corp., 416 F.3d at 294. The Court must then "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." New Wellington Fin. Corp., 416 F.3d at 294; see also 5B Wright & Miller, Federal Practice and Procedure § 1351 (3rd. ed.).

Under Fed. R. Civ. Pro. 4(k)(1)(A), a federal district court may exercise personal jurisdiction over a defendant to the same degree that a counterpart state court could do so. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000). As a result, for a district court to have jurisdiction over a nonresident defendant, the exercise of jurisdiction (1) must be authorized under the state's long-arm

17

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

statute, and (2) must comport with the due process requirements of the Fourteenth Amendment. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)). As West Virginia's long-arm statute provides jurisdiction to the full extent allowable under the United States Constitution, see W. Va. Code § 56-3-33, the Court need only consider whether the exercise of personal jurisdiction would comport with the Due Process Clause.

In order for a court to assert jurisdiction over a nonresident defendant within the confines of due process, the defendant must have "minimum contacts" with the forum state such that it is consistent with "fair play and substantial justice" to hold it to account there. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Whether a defendant possesses such minimum contacts is analyzed by looking to whether the plaintiff seeks to establish "specific" or "general" jurisdiction. Specific jurisdiction occurs when the defendant's contacts with the forum state form the basis of the suit. Carefirst, 334 F.3d at 397. In contrast, where the defendant's contacts are unrelated to the basis of the suit, a court must look to the requirements of general jurisdiction. Id.

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

<u>MEMORANDUM OPINION AND ORDER</u>

Here, the plaintiffs allege that VCI, a Delaware corporation with a principal place of business in New York, has sufficient contacts with West Virginia so as to justify the Court's exercise of both general and specific jurisdiction. <u>See</u> (Dkt. No. 28 at 8 ("This Court has personal jurisdiction because Verizon Communications, Inc. has continuous and systematic contacts with West Virginia, and specifically because it is a joint employer of Plaintiffs for the purposes of the WPCA.")).[3]

**B.**

The standard for finding the existence of general jurisdiction is high: the defendant must have "continuous and systematic" contacts with the forum state. <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984); <u>see also</u> <u>ESAB Group, Inc. v. Centricut</u>, 126 F.3d 617, 623 (4th Cir. 1997) ("[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."). The hallmark of general jurisdiction is that the defendant's contacts with the forum state are so extensive that it should reasonably

---

[3] As an initial matter, the Court does not credit the plaintiffs' argument that VCI, by virtue of its prior appearances in this district, should be judicially estopped from denying personal jurisdiction in this case; as the defendants correctly note, "prior appearance does not necessarily waive the personal jurisdiction requirement in future actions, nor constitute related business conduct within the jurisdiction." <u>Rozenblat v. Sandia Corp.</u>, No. 05-1556, 2006 WL 678923, at *3 (Fed. Cir. Mar. 17, 2006).

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

foresee being haled into court there. World-Wide Volkswagon Corp.
v. Woodson, 444 U.S. 286, 297 (1980).

The plaintiffs' proffered evidence is aimed at establishing
two separate grounds for general jurisdiction: (1) VCI's own
"continuous and systematic" contacts with West Virginia; and
(2) VCI's exercise of "alter ego" control over the subsidiary
defendants Verizon Services, Corp., and Verizon West Virginia, Inc.
The Court will address each of these issues in turn.

## 1.

Turning to the first issue, the plaintiffs begin argue that
the Court should exercise general jurisdiction over VCI by virtue
of its direct contacts with the forum state, namely, "conduct[ing]
much business – and much business in West Virginia." (Dkt. No. 28
at 8). VCI, however, flatly denies the plaintiffs' broad
characterization of its business activities.

VCI maintains that it is a mere holding company[4] engaged
primarily in managing the stock of its subsidiaries, including the
defendants Verizon Services Corp. and Verizon West Virginia, Inc.
(Dkt. No. 10 at 1-2). As a consequence of its limited corporate

---

[4] The primary business of a holding company is generally "'the ownership
and management of investment assets such as debt or equities.'" Columbia
Gas Transmission Corp. v. Burdette Realty Imp., Inc., 102 F. Supp. 2d
673, 676 (S.D. W. Va. 2000) (quoting Peterson v. Cooley, 142 F.3d 181,
184 (4th Cir. 1998)); see also Merriam-Webster's Collegiate Dictionary
(10th ed. 1999).

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

role, VCI contends that it has no relevant contacts whatsoever with the state of West Virginia. (Dkt. No. 10 at 2-3). Specifically, through the affidavit of its corporate secretary, Jane Schapker, VCI claims that it neither conducts nor solicits business in West Virginia, is not licensed to do business in West Virginia, has no registered agent in West Virginia, has no employees or real property in West Virginia, has no facilities or bank accounts in West Virginia, and is not otherwise a party to any of the collective bargaining agreements giving rise to the claims in this case. (Id.).

In an attempt to discredit Ms. Schapker's affidavit, the plaintiffs point to several promotional websites and other unsworn documents which, they argue, discuss VCI's sizeable business activities in West Virginia and elsewhere. See generally (Dkt No. 28-1). The forum-specific evidence offered by the plaintiffs consists primarily of selected excerpts from "Verizon's" corporate website,[5] letters written by VCI's subsidiaries concerning

---

[5] To the extent that the plaintiffs point to Verizon's commercial website for the proposition that VCI claims itself to be a "global leader in delivering innovation in communications, information, and entertainment," (dkt. no. 28 at 9 (emphasis in original)), such statements are irrelevant to the plaintiffs' burden to establish VCI's contacts with West Virginia. See, e.g., Johnson v. Verizon Comm. Inc., No. 2011 WL 1343390, at *3 (N.D. Tex. April 7, 2011) ("[The plaintiff] fails to demonstrate that VCI has a business presence in Texas other than VCI's ownership of a subsidiary in Texas, and VCI's proclaimed national presence on its website. This falls short of meeting the stringent general jurisdiction standard.").

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

"Verizon's" activities in West Virginia, newspaper articles documenting "Verizon's" in-state philanthropic contributions, and a printout identifying three in-state lobbyists registered to "Verizon Communications." Id. Notably, save for the identification of the three lobbyists, the plaintiffs' evidence is wholly anecdotal and fails to directly attribute any activities within West Virginia to VCI itself, as an entity separate from its subsidiaries.

As a general rule, a subsidiary and its parent are separate entities for jurisdictional purposes, Billiter v. Kellogg, Brown, & Root Servs., Inc., No. 5:09-cv-119, 2010 WL 2901618, at *6 (N.D. W. Va. July 21, 2010), and their contacts "must be assessed individually" for the purposes of analyzing jurisdiction. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n. 13 (1984); see also United States v. Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." (citation omitted)). Although it is undisputed that numerous subsidiaries of VCI use the trademark "Verizon" as part of their names, the plaintiffs have nevertheless rested their jurisdictional arguments almost exclusively on documents using generic terminology that, put

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

bluntly, "play[s] fast and loose with the term 'Verizon.'" Negron-Torres v. Verizon Commc's, Inc., 478 F.3d 19, 26 (1st Cir. 2007).

The plaintiffs' evidence, for example, includes unsworn letters penned by a VCI subsidiary which state that "Verizon . . . employs over 2,145 people [in West Virginia]," (Dkt. No. 28 at 13 (emphasis added)), a newspaper article detailing how West Virginia received a "Verizon grant" from the "Verizon Foundation" (dkt. no. 28-1 at 74, 73 (emphasis added)), and a website excerpt discussing "Verizon['s] . . . spinoff of wireline businesses" in West Virginia (dkt. no. 28-1 at 8 (emphasis added)). These documents fail to illuminate the appropriate "Verizon" entity to which they refer, or even identify VCI's involvement with the same. Given this ambiguity, the references to the trademark "Verizon" within the plaintiffs' proffered evidence are insufficient to attribute specific conduct to VCI, particularly where, as here, the plaintiffs have presented no "affidavits or other relevant evidence" that would unequivocally contradict VCI's sworn declarations. Henderson, 2011 WL 1897427, at *6; see also Negron-Torres, 478 F.3d at 26 ("[M]ere use of a trademark or logo" by a subsidiary "does not suffice to establish the requisite minimum contacts" of the parent. (citing Gonzalez v. Walgreens Co., 878 F.2d 560, 561-62 (1st Cir. 1989)).

23

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

Indeed, the plaintiffs have identified only one direct contact between VCI and West Virginia: the existence of registered lobbyists for "Verizon Communications" within the state. See (Dkt. No. 28-1 at 128). However, even putting aside the question of whether a lobbying presence is appropriately considered when evaluating personal jurisdiction,[6] the plaintiffs have provided no evidence concerning the scope or extent, if any, of VCI's alleged lobbying activity. The sole information the plaintiffs have provided in this regard is a website printout which lists the three lobbyists' names. (Id.) Quite simply, the bare existence of lobbyists within the forum state, standing alone, does not establish the sort of "continuous and systematic" contacts that would subject VCI to general jurisdiction in West Virginia. See, e.g., Herman v. Yellowpages.com, LLC, 780 F. Supp. 2d 1028, 1034 (S.D. Cal 2011) (holding that lobbying activity alone "is insufficient evidence to support jurisdiction over the defendant.").

The plaintiffs' evidence fails to identify any "continuous and systematic" contacts between VCI, as differentiated from its

---

[6] There is a split of authority on this issue. Compare Shepherd Invs. Intern., Ltd. v. Verizon Commc'ns Inc., 373 F. Supp. 2d 853, 866 (E.D. Wis. 2005) (lobbying activity should be considered) with Hollar v. Philip Morris Inc., 43 F. Supp. 2d 794, 801-02 n.6 (N.D. Ohio 1998) (lobbying activity should not be considered).

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

subsidiaries, and West Virginia. <u>Helicopteros Nacionales</u>, 466 U.S. at 416. Accordingly, the plaintiff has failed to establish a <u>prima facie</u> case for exercising general jurisdiction over VCI based upon its own contacts with the forum state.

### 2.

As to the second issue, the plaintiffs argue that the Court should exercise general jurisdiction over VCI because, despite protestations to the contrary, it actually "vertically manages through business units or divisions aligned with product groups rather than corporate boundaries," i.e., exercises "alter ego" control over its various subsidiaries. (Dkt. No. 28 at 18). In essence, the plaintiffs seek to pierce the corporate veil between VCI, Verizon Services Corp., and Verizon West Virginia, Inc., in order to impute the subsidiaries' West Virginia contacts to their parent. <u>See</u> <u>Billiter</u>, 2010 WL 2901618, at *6; <u>see also</u> <u>S. Elec. Supply Co. v. Raleigh Cty. Nat'l Bank</u>, 320 S.E.2d 515, 521-22 (W. Va. 1984) (discussing alter ego doctrine). Accordingly, as it is relevant to the jurisdictional inquiry, it is necessary to look to the substantive requirements for piercing the corporate veil under West Virginia law. <u>Billiter</u>, 2010 WL 2901618, at *6 (analyzing West Virginia's alter ego doctrine in the context of determining personal jurisdiction over a parent corporation); <u>see</u>

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

<u>MEMORANDUM OPINION AND ORDER</u>

also <u>Geiser v. Simplicity, Inc.</u> No. 5:10-cv-21, 2011 WL 843663, at
*3-4 (N.D. W. Va. March 8, 2011) (same).

As separately incorporated businesses, VCI, Verizon Services,
Corp., and Verizon West Virginia, Inc., are presumed to be separate
entities. <u>S. Elec. Supply Co.</u>, 320 S.E.2d at 523; <u>see also</u> (Dkt.
No. 10 at 3-4 (discussing the corporate structure of the Verizon
defendants)). However, "'when the corporate form is interposed to
perpetrate an intentional wrong, fraud or illegality,'" a
plaintiff may overcome this presumption by "[p]iercing the
corporate veil through the alter ego doctrine.'" <u>Billiter</u>, 2010 WL
2901618, at *6 (quoting <u>S. Elec. Supply Co.</u>, 320 S.E.2d at 521-22).
The Court may then disregard the corporate structure in order to
"make a corporation liable for behavior of another corporation
<u>within its total control</u>." <u>S. Elec. Supply Co.</u>, 320 S.E.2d at 522
(emphasis added); <u>cf.</u> syl. pt. 2, <u>Norfolk S. Ry. Co. v. Maynard</u>,
437 S.E.2d 277 (W. Va. 1993) ("[I]f the parent and its subsidiary
operate as one entity, their formal separate corporate structures
will not prevent the assertion of jurisdiction over the
non-resident corporation.").

The plaintiffs bear the burden of establishing the
applicability of this doctrine based on the facts of their
individual case, with a focus on the following relevant factors:

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

<u>MEMORANDUM OPINION AND ORDER</u>

> inadequacy of capital structures[;] . . . <u>total</u> control
> and dominance of one corporation by another or a
> shareholder; existence of a dummy corporation with no
> business activity or purpose; violation of law or public
> policy; a unity of interest and ownership that causes one
> party or entity to be indistinguishable from another;
> common shareholders, common officers and employees and
> common facilities.

<u>S. Elec. Supply Co.</u>, 320 S.E.2d at 523 (emphasis in original) (citations omitted). These facts must be analyzed "'in conjunction with evidence that a corporation attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent third party.'" <u>Billiter</u>, 2010 WL 2901618, at *6 (quoting <u>S. Elec. Supply Co.</u>, 320 S.E.2d at 523)).

In her declaration, Ms. Schapker maintains that VCI is incorporated separately from Verizon Services, Corp., and Verizon West Virginia, Inc.; that each corporate defendant follows the corporate formalities of the respective state under which it is organized; and that each corporate defendant "is responsible for its own day-to-day activities and business decisions." (Dkt. No. 10 at 3, 4).

To overcome the presumption that the defendants are separate entities, the plaintiffs argue that VCI dominates its subsidiaries through "vertical[] manage[ment]" of certain business units, promulgation of uniform corporate policies, and inadequate capitalization. (Dkt. No. 28 at 18). According to the plaintiffs,

27

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

in derogation of its corporate boundaries, VCI controls or "vertically manages" its subsidiaries "through units and divisions aligned with product groups." Id.; see, e.g., In re Chocolate Confectionary Antitrust Litig., 674 F. Supp. 2d 580, 614 (M.D. Pa. 2009) (finding evidence of alter ego control where parent corporation "vertically manag[ed]" its subsidiaries "through business units"). In support of this proposition, the plaintiffs offer a letter written by a representative of Verizon Business, a subsidiary of VCI, in response to a bidding invitation issued by the state of West Virginia. (Dkt. No. 28 at 14). This letter describes "Verizon Business" as "a unit" of VCI and states that VCI "operates through three divisions – Telecom, Business, and Wireless." Id. (emphasis in original). Importantly, however, these quotations simply refer to the existence of business units and do not otherwise establish whether, or to what degree, VCI actually "vertically manages" those units. See In re Chocolate Confectionary Antitrust Litig., 674 F. Supp. 2d at 606 (plaintiffs are "preclud[ed] . . . from invoking [business units] as a conduit of corporate control" in the absence of evidence that the parent company managed the units); see also (Dkt. No. 10 at 3, 4) (averring that VCI "does not control the day-to-day activities of" Verizon Services Corp. or Verizon West Virginia, Inc.). The

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

plaintiffs' evidence thus fails to establish that VCI controls its subsidiaries through the management of business units.

As further evidence of VCI's purported dominance, the plaintiffs emphasize the existence of a "Code of Conduct" outlining general corporate policy, which was "approved by the Verizon Board of Directors" and issued to all "Verizon" employees. (Dkt. No. 28 at 9-10). Such policies, however, are hallmarks of an ordinary parent-subsidiary relationship and, without more, cannot justify piercing the corporate veil or establishing personal jurisdiction over a parent corporation. See Moody v. Charming Shoppes of Del., Inc., No. C01-06073, 2008 WL 2128955, at *5 (N.D. Cal. May 20, 2008) ("a subsidiary's use of policies and handbooks created by the parent is insufficient to establish personal jurisdiction"); Arce v. Aramark Corp., 239 F.Supp.2d 153, 172 (D. Puerto Rico 2003) (same); Torres v. Liberto Mfg. Co., No. 3-01-CV1888-H, 2002 WL 2014426, at *5 (N.D. Tex. Aug. 30, 2002) (same); Hvide Marine Int'l, Inc. v. Emp'rs Ins. of WAUSAU, 724 F.Supp. 180, 187 (S.D.N.Y. 1989) (same). Thus, the rather ordinary Code of Conduct utilized by the Verizon companies fails to demonstrate that the subsidiary corporations are "so organized and controlled as to be a mere adjunct[s] or instrumentalit[ies]" of VCI, as would justify

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

piercing the corporate veil. S. Elec. Supply Co., 320 S.E.2d at
522.

Finally, the plaintiffs suggest that "serious questions about
whether Verizon-WV was adequately capitalized" (dkt. no. 28 at 17)
provide justification for piercing the corporate veil. See Laya v.
Erin Homes, Inc., 352 S.E.2d 93, 101 (W. Va. 1986) (noting that
inadequate capitalization is "a very important factor, as an
element of the fairness prong, in determining whether to pierce the
corporate veil")). As evidence of undercapitalization, the
plaintiffs point to a Joint Petition initiated by the Consumer
Advocate Division and Commission Staff of the Public Service
Commission of West Virginia ("Commission") on May 12, 2008, which
requested that the Commission investigate the quality of Verizon
West Virginia, Inc.'s in-state telephone services. (Dkt. No. 28 at
15-17). The Joint Petition alleged that, in the years preceding the
filing of the petition, Verizon West Virginia, Inc. regularly
relinquished more funds to VCI than it invested in its own
infrastructure and, as a result, "largely depleted the equity
capital previously invested in [West Virginia]." Id. at 16. This
petition, the plaintiffs argue, raises grave questions about
Verizon West Virginia, Inc.'s capitalization.

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

Even taking the allegations in the Joint Petition as true, see New Wellington Fin. Corp., 416 F.3d at 294, they nevertheless fail to demonstrate that Verizon West Virginia, Inc., is "grossly undercapitalized" such that it would be "inequitable" to treat its acts "as those of the corporation alone." Laya, 352 S.E.2d at 99, 101 (citation omitted) (discussing "fairness prong" of alter ego test). A corporation is inadequately capitalized when it "carries on a business without substantial capital in such a way that the corporation is likely to have insufficient assets available to meet its debts." Id. at 101, n.7 (citation omitted). The Joint Petition, in contrast, is primarily concerned with the equity capital that Verizon West Virginia, Inc., invested in its local infrastructure; it does not otherwise indicate that the corporation is underfunded or lacking in assets. See (Dkt. No. 28-1 at 81-106). Moreover, as VCI points out, Verizon West Virginia, Inc., placed $72.4 million dollars in an escrow account to address these infrastructure issues upon the disposition of the Joint Petition, thus "meet[ing] its debts." Laya, 352 S.E.2d at 101, n.7; see (Dkt. No. 37 at 11). As such, the plaintiffs have failed to show that the Court should "disregard [the defendants'] separate corporate structure" and hold VCI to account for Verizon West Virginia, Inc.'s actions. S. Elec. Supply Co., 320 S.E.2d at 522 (citation omitted).

31

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

For the reasons discussed, the plaintiffs have failed to present a _prima_ _facie_ case of _alter_ _ego_ control justifying piercing the subsidiaries' corporate veil in order to find general jurisdiction over VCI.

### C.

To determine if VCI's contacts support the exercise of specific jurisdiction in this case, the Court must consider "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" _Carefirst_, 334 F.3d at 397. Each element must be present to support specific jurisdiction. _Id._ At bottom, this inquiry focuses on "the quality and nature of [VCI's] contacts." _Id._ (internal citations omitted).

The plaintiffs argue that the Court has specific jurisdiction over VCI because "it is a joint employer of Plaintiffs for purposes of liability under the WPCA." (Dkt. No. 28 at 8); _see_ _Saunders,_ 535 S.E.2d at 219 ("[T]he fact that an individual was an employee of one 'employer' [does] not preclude him from pursuing a claim under [the WPCA] against another individual or secondary 'employer' for whom he did work for wages." (citing _Rowe v. Grapevine Corp.,_ 456

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

S.E.2d 1, 4 (W. Va. 1995)). Through Ms. Schapker's affidavit, VCI responds that it "has only seven employees, none of whom are located in West Virginia. Verizon Communications, Inc. has never employed . . . the Plaintiffs in this case." (Dkt. No. 10 at 2).

The plaintiffs rest their "joint employer" theory on the same "Verizon"-branded evidence that they utilized in the context of their general jurisdiction arguments. Specifically, they point to various documents containing the "Verizon" trademark, including news articles, press releases, and website excerpts, and contend, based on these documents, that they "reasonably believe[d]" they were employed by VCI. (Dkt. No. 28 at 11). The plaintiffs' argument, however, fails on both commonlaw and statutory grounds.

Pursuant to the principles of limited corporate liability, a corporate parent is considered an employer of its subsidiaries' employees "only if it 'exercises a degree of control that exceeds the control normally exercised by the parent corporation.'" <u>Johnson v. Flowers Indus., Inc.</u>, 814 F.2d 978, 980, 981 (4th Cir. 1987) (quoting <u>Armbruster v. Quinn</u>, 711 F.2d 1332, 1338 (6th Cir. 1983)); <u>see also</u> <u>S. Elec. Supply Co.</u>, 320 S.E.2d at 523. Consequently, courts "have found parent companies to be employers only in <u>extraordinary circumstances</u>." <u>Johnson</u>, 814 F.2d at 981 (emphasis added); <u>see also</u> <u>Frank v. U.S. West, Inc</u>., 3 F.3d 1357, 1362 (10th

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

Cir. 1993). Here, as discussed earlier, there is no evidence that VCI exercised any control over Verizon Services, Corp., or Verizon West Virginia, Inc. beyond that which is standard in ordinary parent-subsidiary relationships. Accordingly, the plaintiffs have not established the "extraordinary circumstances" necessary to find that VCI operated as their employer. Johnson, 814 F.2d at 981.

Moreover, the WPCA itself defines an "employer" as "any person, firm or corporation employing any employee," W. Va. Code 21-5-1(m), a definition which "designate[s] those responsible for the payment of employee wages." Mullins v. Venable, 297 S.E.2d 866, 869 (W. Va. 1982) (emphasis added). As evinced by the plaintiffs' pay stubs, the entity responsible for paying their wages was Verizon West Virginia., Inc., not VCI. See (Dkt. Nos. 37-1, 37-2). There is no indication on the record that VCI had any involvement with Verizon West Virginia, Inc.'s wage practices; rather, the only relevant evidence is VCI's sworn declaration that Verizon West Virginia, Inc. controlled its own "day-to-day activities and business decisions." (Dkt. No. 10 at 4). As such, VCI cannot be subject to liability as the plaintiffs' employer under the WPCA.

As the plaintiffs have failed to offer sufficient evidence establishing that VCI is their employer, the Court lacks specific personal jurisdiction over this defendant. See Carefirst, 334 F.3d

34

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

at 397. Having neither general nor specific jurisdiction over VCI, it **GRANTS** VCI's motion to dismiss (dkt. no. 9).

### IV.

All antecedent jurisdictional issues having been resolved, it is necessary to address the Fed. R. Civ. P. 12(b)(6) motions to dismiss filed by the remaining defendants. (Dkt. Nos. 11, 12, 13, and 17).

### A.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). All well-pled factual allegations in a complaint are taken as true and construed in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 519 F.3d 250, 253 (4th Cir. 2009). Facts derived from sources beyond the four corners of the complaint also may be considered, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Fed. R. Evid. 201. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (citing Blankenship v. Manchin, 471 F.3d

35

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

523, 526 n. 1 (4th Cir. 2006)); see also Katyle v. Penn Nat.
Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011).

### B.

Because Count One of the plaintiffs' complaint is completely
preempted by § 301 of the LMRA, the question presented is whether
the plaintiffs have stated a claim under the federal statute. See
Lueck, 471 U.S. at 220 ("[The preempted] claim must either be
treated as a § 301 claim . . . or dismissed as preempted by federal
labor-contract law."); see also Caterpillar, 482 U.S. at 393 (the
preempted claim "is considered, from its inception, a federal
claim").

The defendants contend that dismissal is appropriate because,
having inexcusably failed to exhaust their administrative remedies
under the CBA, the plaintiffs' claims are barred by the statute of
limitations, and their complaint fails to allege the necessary
elements of a § 301 claim against an employer. The plaintiffs did
not respond to these arguments.

### 1.

Section 301 of the LMRA contemplates suits between labor
organizations, employers, and individual employees for "violation
of contract[]," 29 U.S.C. § 185(a), including those suits "seeking
to vindicate 'uniquely personal' rights of employees such as

36

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

wages." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976) (quoting Smith v. Evening News Ass'n, 371 U.S. 195, 198-200 (1962)). Where an individual employee seeks to file a § 301 suit against his employer, however, "a union must be given the opportunity to act on behalf of its member before he may proceed on his own." Amburgey v. Consol. Coal Co., 923 F.2d 27, 29 (4th Cir. 1991) (citing Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965)). Accordingly, the Fourth Circuit has held that "[a] cause of action will only lie against an employer if the union has breached its duty of fair representation of the employee." Amburgey, 923 F.2d at 29 (emphasis added) (citing Vaca v. Sipes, 386 U.S. 171 (1967)); see also Thompson v. Aluminum Co. of America, 276 F.3d 651, 656-57 (4th Cir. 2002). These suits are referred to as "hybrid" § 301 actions because the § 301 claim against the employer and the fair representation claim against the union are "inextricably interdependent" upon one another. United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 66 (1981); see also DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 164 (2002).

The plaintiff's burden in a hybrid § 301 action remains constant, whether he chooses to bring suit against the employer, the union, or both parties. See DelCostello, 462 U.S. at 165 ("the case [the plaintiff] must prove is the same whether he sues one,

37

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

the other, or both"). Regardless of the parties' posture, in order to prevail on the merits as against _either_ the employer or the union, "an employee must prove _both_ 1) that the union breached its duty of fair representation and 2) that his employer violated the collective bargaining agreement." _Thompson_, 276 F.3d at 656 (emphasis in original). A meritorious fair representation claim against the union is an "indispensable predicate" to suit against an employer, _Mitchell_, 451 U.S. at 62, such that "an employee must 'prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer.'" _Thompson_, 276 F.3d at 656-57 (quoting _Mitchell_, 451 U.S. at 67 (Stewart, J., concurring)); _see also_ _Martin v. Potter_, 69 F. App'x. 108, 111 (4th Cir. 2003) (per curiam) ("[F]ederal court review of allegations against employers for breach of collective bargaining agreements is called for only when an employee has first proved that the Union representing him breached its duty of fair representation.").

**2.**

In light of these principles, Count One of the plaintiffs' complaint, directed as it is against the defendants as employers, is properly characterized as a "hybrid" § 301 claim. _See Thompson_, 276 F.3d at 656-57; _Amburgey_, 923 F.2d at 29. Thus, in order to

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

proceed, the plaintiffs must establish "<u>both</u> 1) that the union breached its duty of fair representation and 2) that his employer violated the collective bargaining agreement." <u>Thompson</u>, 276 F.3d at 657 (emphasis in original); <u>see also</u> <u>Amburgey</u>, 923 F.2d at 29 ("A cause of action will only lie against an employer if the union has breached its duty of fair representation of the employee." (citation omitted)). Here, their claim necessarily fails; the complaint contains no fair representation claim against the appropriate union, which is an "indispensable predicate" for the plaintiffs' suit. <u>Mitchell</u>, 451 U.S. at 62.[7]

Because Count One of the plaintiffs' complaint cannot survive as a § 301 claim, it must instead be "dismissed as preempted by federal labor contract-law." <u>Lueck</u>, 471 U.S. at 220. The Court therefore **GRANTS** the defendants' motions to dismiss (dkt. nos. 11, 12, 13, and 17) Count One.

### C.

Count Two of the complaint asserts a cause of action arising from the defendants' "fail[ure] to keep accurate records of all hours worked by Call center employees" in violation of W. Va. Code § 21-5-9. (Dkt. No. 1-1 at 52). Although the parties devoted

---

[7] As Count One falls on this ground, the Court declines to address the defendants' alternative arguments concerning the statute of limitations and the failure to exhaust.

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

minimal briefing to this count, several of the defendants argued that the plaintiffs are not entitled to pursue a private cause of action for the violation of this statutory provision.

### 1.

The enforcement scheme created by the WPCA provides for a combination of administrative and private remedies. On the administrative side, the Commissioner of the West Virginia Division of Labor is charged with the full administrative enforcement of the WPCA. See W. Va. Code § 21-5-11; W. Va. C.S.R. § 42-5-3. The Commissioner is authorized to investigate any "matters as they may deem appropriate" in order to determine whether "any provision" of the WPCA has been violated. W. Va. Code § 21-5-11(a). The Commissioner is further empowered to issue subpoenas and compel the attendance of witnesses in proceedings under the WPCA, see id. § 21-5-11(b), proceedings which include "an investigation, an initial meeting with the parties, a hearing before a hearing examiner and the entry of an order appealable to circuit court." Beichler v. W. Va. Univ. at Parkersburg, 700 S.E.2d 532, 535 (W. Va. 2010). These proceedings are subject to the State Administrative Procedures Act and the Code of State Regulations. Id.; see W. Va. Code § 29A-1-1; W. Va. C.S.R. §§ 42-5-1, 42-20-1.

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

<u>MEMORANDUM OPINION AND ORDER</u>

Notably, "'[t]he general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act.'" <u>Beichler</u>, 700 S.E.2d at 535 (quoting Syl. Pt. 1, <u>Daurelle v. Traders Fed. Sav. & Loan Ass'n.,</u> 104 S.E.2d 320 (W. Va. 1958)). The Supreme Court of Appeals of West Virginia has, however, recognized an "exception to [this] well-settled principle" in the context of the private remedy provision of the WPCA, thus allowing certain claims to be brought directly in state court. <u>Beichler</u>, 700 S.E.2d at 535; <u>see</u> W. Va. Code § 21-5-12(a). This section provides:

> Any person <u>whose wages have not been paid</u> in accord with this article, or the commissioner or his designated representative, upon the request of such person, may bring <u>any legal action necessary </u>to <u>collect a claim </u>under this article. With the consent of the employee, the commissioner shall have the power to settle and adjust any claim to the same extent as might the employee.

W. Va. Code § 21-5-12(a)(emphasis added); <u>see also</u> <u>Beichler</u>, 700 S.E.2d at 535 (noting the "clear and unambiguous language" of the phrase "any legal action necessary."). As such, "a person whose wages have not been paid in accord with the [WPCA] may initiate a claim <u>for the unpaid wages</u> either through the administrative remedies provided under the Act or by filing a complaint for the unpaid wages directly in circuit court," without the condition

41

precedent of exhausting administrative remedies. Beichler, 700
S.E.2d at 536 (emphasis added).

The provision of the WPCA that serves as the basis for the
plaintiffs' second cause of action, however, does not directly
concern "unpaid wages." Id. Rather, this provision directs
employers to

> [m]ake such records of the persons employed by him,
> including wage and hour records, preserve such records
> for such periods of time, and make such reports therefrom
> to the commissioner, as the commissioner shall prescribe
> by regulation as necessary or appropriate for the
> enforcement of the provisions of this article.

W. Va. Code § 21-5-9(6); see also W. Va. C.S.R. § 42-5-4.2 (records
must include "[h]ours worked each workday and total hours worked
each workweek"). These records, which an employer must retain for
at least five years, "shall be open to the Division [of Labor] for
inspection, examining, copying, photographing or otherwise
reproducing, in order to ensure compliance with the Act." W. Va.
C.S.R. §§ 42-5-7, 42-5-4.1. Upon request, an employer must make
these records available to the Commissioner. Id. § 42-5-7.

### 2.

The plaintiffs argue that "the claim in Count II for failure
to maintain payroll records arises directly under Section 21-5-9,
and is enforceable through 21-5-12." (Dkt. No. 30 at 20). The
plaintiffs offer two cases in support of this argument, which, they

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

contend, show that "[t]he West Virginia Supreme Court of Appeals has recognized claims under Section 21-5-9." Id. In Isaacs v. Bonner, the plaintiffs' first case, an employee appealed a circuit court's determination that she had fraudulently filed an administrative wage claim against her employer. 694 S.E.2d 302, 303 (W. Va. 2010) (per curiam). In the course of its discussion, the court took note of the employer's "inaccurate manner of keeping records of accrued leave":

> Although the paid leave policy was unambiguous concerning appellant [employees]' right, upon leaving the practice, to be paid in units of time for her unused, accrued paid leave, [the employer] failed, throughout the period of the appellant's employment, to comply with the requirements of the Wage and Hour Act for providing accurate information concerning fringe benefits to his employees. The appellant was entitled to an accurate pay stub.

Id. at 308 (emphasis added). Although this case arguably establishes that an employer's compliance with W. Va. Code § 21-5-9 can be a relevant consideration in a WPCA action, it does not illuminate whether an employee has a right to sue directly for an employer's recordkeeping violation pursuant to W. Va. Code § 21-5-12(a).

Similarly unhelpful is the second case on which the plaintiffs rely. See Shaffer v. Ft. Henry Surg. Assocs. Inc., 599 S.E.2d 876, 880 (W. Va. 2004) (answering certified question "is a physician,

43

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

whose employment status is solely as an employee, an 'employee' within [the WPCA]"). Indeed, it appears there is no case in West Virginia that has imbued an employee with a private cause of action arising under W. Va. Code § 21-5-12(a) for his employer's recordkeeping violations.

By its terms, the WPCA limits private causes of action under the statute, and the accompanying right to file directly in state court, to employees who seek to "collect a claim" for unpaid wages. See W. Va. Code § 21-5-12(a); Beichler, 700 S.E.2d at 536. Importantly, violations of W. Va. Code §§ 21-5-3 and 21-5-4, wage provisions clearly enforceable by employees through W. Va. Code § 21-5-12, have "clearly-defined" statutory remedies, which include damages for these unpaid wages. Atchison v. Novartis Pharm. Corp., No. 3:11-cv-0039, 2012 WL 851114, at *2 (S.D. W. Va. March 13, 2012); see W. Va. Code 21-5-4(e) (remedy for violation of § 21-5-4); id. at 21-5-6 (remedy for violation of § 21-5-3). Violations of W. Va. Code § 21-5-9, in contrast, have no identified remedy or damages.

The plain language of the WPCA and accompanying regulations place administration and enforcement of W. Va. Code § 21-5-9 squarely within the purview of the Commissioner. To the extent the plaintiffs have any sort of claim arising under this provision, a

44

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

fact far from clear, it is not one that they are entitled to privately enforce or bring to court in the first instance. See W. Va. Code § 21-5-12(a).

Accordingly, because the plaintiffs have failed to state a plausible claim for relief on the basis of the defendants' purported violations of the WPCA's recordkeeping provisions, the Court **GRANTS** the defendants' motions to dismiss (dkt. nos. 11, 12, 13, and 17) Count Two.

**V.**

In conclusion, for the reasons discussed, the Court:

1.   **DENIES** the plaintiffs' motion to remand (dkt. no. 26);

2.   **GRANTS** Verizon Communications, Inc.'s motion to dismiss for lack of personal jurisdiction (dkt. no. 9);

3.   **DISMISSES** Counts One and Two of the plaintiffs' complaint (dkt. no. 1-1 at 32) **WITH PREJUDICE**, thereby **GRANTING** the motions to dismiss filed by the defendants Mary Frederick, Tammy Mason, Cody Stewart, Barbra Terwilliger, and Dawn Watson (dkt no. 11); Verizon Services Corp. (dkt. no. 12); Bob Anderson, Jodi Dennis, Frontier West Virginia, Inc., and Michael Hathaway (dkt no. 13); and Corby Miller (dkt. no. 17);

45

BYARD, ET AL. v. VERIZON WV, ET AL.                    1:11CV132

MEMORANDUM OPINION AND ORDER

    4.   **GRANTS-IN-PART** the plaintiffs' motion for leave to file an amended complaint (dkt. no. 46) to the extent that the plaintiffs seek leave to assert a claim arising under the Fair Labor Standards Act, 29 U.S.C. § 201 <u>et seq.</u>;

    5.   **DENIES AS MOOT** the defendants' consent motion for an extension of time to respond to the plaintiffs' motion for leave to file an amended complaint (dkt. no. 47); and

    6.   **DIRECTS** the plaintiffs to file an amended complaint consistent with these rulings within **30 days** from the entry of this Order.

It is so **ORDERED.**

The Court directs the Clerk of Court to transmit copies of this Memorandum Opinion and Order to counsel of record and to **DISMISS** the defendant Verizon Communications, Inc. **WITHOUT PREJUDICE.**

DATED: March 30, 2012.

                           /s/ Irene M. Keeley
                           IRENE M. KEELEY
                           UNITED STATES DISTRICT JUDGE