IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES R. BYARD, DAVID M. BROSIUS,
KIMBERLY A. RAY, STEPHANIE NOW-MCKISIC,
LISA M. THARP, and LYNET WHITE,
Individually and on behalf of others
similarly situated,
    Plaintiffs,

v.                              Civil Action No.: 1:11CV132

VERIZON WEST VIRGINIA, INC.,
FRONTIER WEST VIRGINIA, INC.,
VERIZON SERVICES CORP.,
    Defendants.

**MEMORANDUM OPINION AND ORDER DECIDING DOCKET ENTRY 380**

**I**
**Historical Background**

This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. The plaintiffs, and the conditionally certified class they represent, are current and former employees of Verizon West Virginia, Inc., Frontier West Virginia, Inc., and Verizon Services Corp. (collectively "the defendants") working in customer service positions at the call centers located in Clarksburg and Charleston, West Virginia. The named plaintiffs currently work or previously worked as Consultants, tasked with taking incoming calls from customers, answering customer service related inquiries, and making sales. They allege that the defendants regularly failed to compensate them for time worked in excess of forty (40) hours per week in violation of the FLSA.

Under the FLSA, employees may maintain a collective action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). Putative plaintiffs who wish to join an FLSA collective action are required to "opt in" by filing a written consent form with the Court. Id.

Certification of a collective action is appropriate where the class members (1) are "similarly situated" and (2) opt-in to the pending action. Romero v. Mountaire Farms, Inc., 796 F.Supp.2d 700, 705 (E.D.N.C. 2011); see also Felix de Asencio v. Tyson Foods, Inc., 130 F.Supp.2d 660, 662 (E.D. Pa. 2001) ("The only two requirements . . . under the FLSA are that class members be similarly situated and that each member file a consent to joining the action." (citation omitted)).

District courts generally take a two-step approach to certification of FLSA collective actions. Cleary v. Tren Services Inc., No. 2:11–123, 2012 WL 1189909, at *3 (S.D. W. Va. Apr. 9, 2012); see also Nolan v. Reliant Equity Investors, LLC, No. 3:08–62, 2009 WL 2461008, at *7 (N.D. W. Va. Aug. 10, 2009) (collecting cases). The "notice" or "conditional certification" stage comes first. This stage typically occurs early in the proceedings, before discovery is completed. Cleary, 2012 WL 1189909, at *3. Accordingly, "the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'" Patton v. Thomson Corp., 364 F.Supp.2d 263, 267 (E.D.N.Y. 2005) (citations omitted). If the court finds that the plaintiffs have cleared this "low bar," Westfall v. Kendle Intern, CPU, LLC, No. 1:05-00118, 2007 WL 486606, at *9 (N.D. W. Va. Feb. 15, 2007), it will conditionally certify the class and, if appropriate, "authorize[] plaintiffs' counsel to provide the putative class members with notice of the lawsuit and their right to opt-in." Romero, 796 F.Supp.2d at 705 (citing Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)).

The second stage of the inquiry occurs if the defendant moves to "decertify" the class, which generally takes place after discovery is completed and the matter is ready for trial. Cleary, 2012 WL 1189909, at *3; see also Nolan, 2009 WL 2461008, at *7. "At that point, the court makes a factual determination as to whether the class is truly 'similarly situated.'" Purdham v. Fairfax Cty. Pub. Schools, 629 F.Supp.2d 544, 547 (E.D. Va. 2009) (citing Parker v. Rowland Express, Inc., 492 F.Supp.2d 1159, 1164 (D. Minn. 2007)). As the court typically has "much more information on

which to base its decision" at this stage, Hipp, 252 F.3d at 1218 (citation omitted), it "applies a heightened, fact specific standard to determine whether the proposed class members are similarly situated." Cleary, 2012 WL 1189909, at *3 (citations omitted).

Defendants did not dispute that conditional certification was appropriate, but requested the Court narrow the plaintiff's proposed class. Defendants argued that the plaintiffs' proposed class definition was both vague and unsupported. According to the defendants, the phrase "Customer Service Representative" is particularly confusing because it is "not a job description at either Verizon or Frontier, where hourly employees' job titles have been contractually-established [sic] throughout the class period by a collective bargaining agreement (CBA)." (Dkt. No. 127 at 4). Rather, each affiant of record was officially employed as a "Consultant," tasked solely with "handling inbound," as opposed to outbound, "customer service calls." Id. at 4 (emphasis added). As such, the defendants argued, "the only employees who could potentially be similarly situated to Plaintiffs are Consultants who handle inbound customer service calls by phone." Id. at 5. The defendants proposed a class definition of "individuals employed by Verizon West Virginia Inc., Frontier West Virginia Inc., or Verizon Services Corp. at a call center in Clarksburg or Charleston, West Virginia as a Consultant handling inbound customer service telephone calls within the last three years." (Dkt. No. 127-1 at 2).

The Court granted conditional certification of the class, without narrowing it, on October 24, 2012 (DE 185). In its Order, the Court stated that the "disparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis." White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 373 (E.D. Tenn. 2006) (collecting cases); see also Bishop v. AT & T Corp., 256 F.R.D. 503, 509 (W.D. Penn. 2009) ("Any dissimilarities in job functions which would exclude a class member will be reevaluated at stage two when discovery is complete.").

Any further arguments concerning differences within the class are "more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery." Jirak, 566 F.Supp.2d at 848 (citation omitted).

The case is now at that second stage. After discovery is completed, if Defendants move to "decertify" the class, the Court will need to reevaluate "[a]ny dissimilarities in job functions which would exclude a class member." Bishop, supra.

The parties filed their Proposed Schedule for Remainder of the Case the same day the Court entered the Order granting Conditional Certification [DE 186]. Plaintiffs note in their Response to Defendants' Motion that "Defendants did not request any additional discovery dedicated to Opt-in Plaintiffs at that time." (Response at 2); however, a review of the document shows neither party mentioned discovery. Defendants submitted that, "because of the complex nature of this case, the scope and complexity of a trial will be contingent on whether the case proceeds collectively or on an individual basis (if at all) . . . ." Further, Defendants proposed that either the Court set a date for a scheduling conference to follow resolution of any motion for decertification, or set a trial date 90 days after resolving any motion for decertification.

The Court entered its Scheduling Order on October 26, 2012, stating that the preemptive limitations on discovery set out in L.R.Civ.P. 26.01(c) apply to this case "unless otherwise stipulated or ordered." L.R.Civ. P. 26.01(c) limits a party to ten (10) depositions by each Defendant; forty (40) interrogatories per party, and forty (40) requests for admission per party.

In their motion for conditional certification, the plaintiffs submitted six affidavits from the named plaintiffs, and sixteen from the opt-in class members [DE 105]. All of the affidavits were penned by self-described "Customer Service Representative[s]," twenty-one of whom worked in the Clarksburg call center and one of whom worked in the Charleston call center. Id. At that time the

Court provided for an opt-in period of sixty (60) days.  When that period expired, on January 8, 2013, 135 plaintiffs had opted in (in addition to the six named plaintiffs).  Defendants contend that those plaintiffs included "current and former employees from Verizon's call center in Clarksburg and Frontier's call center in Charleston, who worked at various periods of time in at least six different job titles.  At the time Defendants renewed their Motion, on May 28, 2013,  they stated the number of plaintiffs had grown to 149.  The undersigned notes that plaintiffs were still opting in as late as August 6, 2013 [DE 421].

## II
## Defendants' Renewed Joint Motion For Leave To Conduct Additional Depositions

May 28, 2013 Defendants filed their Renewed Joint Motion For Leave To Conduct Additional Depositions.  In the motion Defendants seek to "depose a reasonable sampling of opt-in Plaintiffs." [DE 380[1], p 6].  At the time the motions was filed there were 149 opt-in Plaintiffs "who worked at call centers in different cities, at different times, who held at least six different job positions[2], and who were subject to different policies, procedures, and directives from different supervisors." [DE 380, p6-7].  Defendants seek a court order permitting them to take  depositions "in excess of the 10 deposition limit set forth in Federal Rule of Civil Procedure 30(a) and Local Rule 26.01(c)(1) and specifically, that [they] be permitted to depose up to one-third of the opt-in Plaintiffs (in addition to the named Plaintiffs). [DE 380, p. 11].

Plaintiffs filed their response to the original DE 350 motion on February 11, 2013. [DE 355].

---

[1] DE 380 is identical to DE 350.  Basically, the parties believed they were entitled to refile the 350 motion after unsuccessful mediation and did so as 380.  A decision in 380 also decides 350.

[2] "Consultant, maintenance administrator, service order administrator, general clerk, service rep, and manager's clerk. [DE 380, p. 2].

Plaintiffs seek denial of the relief Defendants want because: 1) Plaintiffs see the motion as an attempt to modify the scheduling order rather than as a discovery dispute; 2) Defendants had not taken depositions by the time they filed for relief and therefore should not be granted more depositions until they take the ones permitted under the scheduling order; 3) Defendants' motion for additional depositions is seen as part of a discovery plan which is overly broad and harassing; 4) Defendants' discovery plan eviscerates the purpose behind a collective action and is therefor inappropriate; 5) Defendants' discovery plan unnecessarily increases costs and is an instrument of delay or suppression.

## III
## Discussion

Plaintiffs concede: "[T]wo schools of thought have developed on whether discovery of opt-in plaintiffs is appropriate in a collective action." [DE 355, p. 9]. One school supported by a line of cases holds that individualized discovery of opt-in plaintiffs in collective actions is not appropriate. The other school also supported by a line of cases holds that some discovery is appropriate. Plaintiffs concede that the extent of discovery permitted under the second line of cases varies. [DE 355, p. 9].

At the second stage of a FLSA Collective Action the emphasis is on whether the opt-in plaintiffs are similarly situated for decertification purposes. The District Judge noted this and implied discovery would served to flesh out factual issues in her October 24, 2012 Order (DE 185): "[D]isparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis." White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 373 (E.D. Tenn. 2006) (collecting cases); see also Bishop v. AT & T Corp., 256 F.R.D. 503, 509 (W.D. Penn. 2009) ("Any dissimilarities in job functions which would exclude a class member will be reevaluated at stage two

when discovery is complete."). Any further arguments concerning differences within the class are "more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery." Jirak, 566 F.Supp.2d at 848 (citation omitted). Defendants have clearly indicated they believe there are disparate factual employment settings relative to the opt-in plaintiffs and that they intend to pursue decertification at the conclusion of discovery.

In the instant case, there is a clear basis for decision outside of the all or nothing positions taken by Defendants and Plaintiffs.

The undersigned finds, under the circumstances of this case, that additional depositions, above and beyond the ten (10) presumptively allowed under L. R.Civ. P. 26.01(c), are appropriate and necessary to the Court's possible need to evaluate the "[a]ny dissimilarities in job functions which would exclude a class member." Bishop, supra.

From the materials filed relative to the pending motion and the arguments made at the motions hearing, the Court finds:

1) Defendants created six categories or classifications (job titles) of employees at the call centers.

2) It is Defendants' responsibility to have formal job descriptions and/or defined duties for each of the six identified categories or classifications (job titles) of employees.

3) Defendants know what employees worked at each call center and what employees worked under each of the categories or classifications (job titles) during the relevant time periods.

4) The issues relative to decertification are limited.

The Court concludes the discovery hereinafter provided fully and fairly satisfies Defendants'

expressed concerns or issues relating to "similarity of situation" and the anticipated motions for decertification. Smith v. Lowe's Home Ctrs., Inc., 236 F.R.D. 354, 357-58 (S.D. Ohio 2006), Gentrup v. Renovo Servs., LLC, 2010 WL 6766418, at 7-8 (S.D. Ohio 2012).

The Court finds that Defendants have shown sufficient good cause to modify the original discovery order and justify the within grant of additional opt-in party discovery. Defendants have convinced the Court of their need to conduct at least limited discovery of selected classes (job titles) of opt-in plaintiffs in order to address the issues of disparateness and decertification. The court finds no evidence to support a claim that Defendants seek the additional discovery for delay or suppression. Whittingham v. Amherst College, 163 F.R.D. 170, 171-72 (D. Mass. 1995).

The Court recognizes Defendants have not exhausted the presumptive 10 deposition limit they have under the rules. The Court has taken that in to account by providing that the total number of depositions, including the herein provided depositions of selected opt-in plaintiffs shall not exceed 30.

This approach permits Plaintiffs to rely on representative testimony and limits the burden on similarly-situated employees. Hoffmman-LaRoche, Inc. V. Sperling, 493 U.S. 165, 170 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

### III
### Ruling/Decision

Accordingly, the Court finds it reasonable to grant Verizon and Frontier the following limited discovery depositions of selected classes of opt-in plaintiffs, provided that the total number of discovery depositions (10 provided by the rules plus the number hereinafter provided for various selected categories of opt in plaintiffs shall not exceed 30:

1) Verizon may take a deposition, not to exceed three hours in length, excluding breaks,

        of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "consultant."

2) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "consultant."

3) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "maintenance administrator."

4) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "maintenance administrator."

5) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "service order administrator."

6) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "service order administrator."

7) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "general clerk."

8) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "general clerk."

9) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "service rep."

10) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "service rep."

11) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "manager clerk."

12) Verizon may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "manager clerk." The same would be true for "maintenance administrator", "service order administrator", "general clerk", "service rep" or "manager clerk."

13) Frontier may take a deposition, not to exceed three hours in length, excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "consultant."

14) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "consultant."

15) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "maintenance administrator."

16) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "maintenance administrator."

17) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "service order administrator."

18) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "service order administrator."

19) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "general clerk."

20) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "general clerk."

21) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call center as a "service rep."

22) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "service rep."

23) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Clarksburg call

center as a "manager clerk."

24) Frontier may take a deposition, not to exceed three hours in length excluding breaks, of one opt-in plaintiff it identifies as having worked for it at the Charleston call center as a "manager clerk."

25) If either defendant does not have an opt-in employee in one of the six categories in a one of the two identified call centers, that Defendant is not entitled to a deposition of another opt-in plaintiff in lieu thereof.

26) If a selected opt-in plaintiff declines to be deposed, the affected Defendant may select another opt-in plaintiff in the same category to be deposed.

27) If there are opt-in plaintiffs employed by Verizon at either call center who fall outside of the six categories (job titles provided by Defendants), Verizon may take one deposition, not to exceed three hours in length excluding breaks, from that group of opt-in employees.

28) If there are opt-in plaintiffs employed by Frontier at either call center who fall outside of the six categories (job titles provided by Defendants), Verizon may take one deposition, not to exceed three hours in length excluding breaks, from that group of opt-in employees.

29) If a named plaintiff falls under one of the six identified job classifications, a deposition of that named plaintiff shall suffice as a representative deposition and accordingly, the Defendant employer of that named employee shall not have the option of taking the deposition of an opt-in plaintiff within that same job classification.

30) If one Defendant is unable to use the all of the depositions allotted to it under the

provisions of this Order, that Defendant may not provide any of its unused depositions to the other Defendant.

The clerk is directed to provide electronic notice of the entry of this order to all counsel of record. The clerk is further directed to remove DE 380 and DE 350 from the docket of motions actively pending before this court.

It is so **ORDERED**.

Dated: 7 October 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE