IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES R. BYARD, DAVID M. BROSIUS,
KIMBERLY A. RAY, STEPHANIE NOW-MCKISIC,
LISA M. THARP, and LYNET WHITE,
Individually and on behalf of others
similarly situated,
    Plaintiffs,

v.                                  Civil Action No.: 1:11CV132

VERIZON WEST VIRGINIA, INC.,
FRONTIER WEST VIRGINIA, INC.,
VERIZON SERVICES CORP.,
    Defendants.

**MEMORANDUM OPINION AND ORDER DECIDING DOCKET ENTRY 356**

**I**
**Historical Background**

This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. The plaintiffs, and the conditionally certified class they represent, are current and former employees of Verizon West Virginia, Inc., Frontier West Virginia, Inc., and Verizon Services Corp. (collectively "the defendants") working in customer service positions at the call centers located in Clarksburg and Charleston, West Virginia. The named plaintiffs currently work or previously worked as Consultants, tasked with taking incoming calls from customers, answering customer service related inquiries, and making sales. They allege that the defendants regularly failed to compensate them for time worked in excess of forty (40) hours per week in violation of the FLSA.

Under the FLSA, employees may maintain a collective action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). Putative plaintiffs who wish to join an FLSA collective action are required to "opt in" by filing a written consent form with the Court. Id.

Certification of a collective action is appropriate where the class members (1) are "similarly situated" and (2) opt-in to the pending action. Romero v. Mountaire Farms, Inc., 796 F.Supp.2d 700, 705 (E.D.N.C. 2011); see also Felix de Asencio v. Tyson Foods, Inc., 130 F.Supp.2d 660, 662 (E.D. Pa. 2001) ("The only two requirements . . . under the FLSA are that class members be similarly situated and that each member file a consent to joining the action." (citation omitted)).

District courts generally take a two-step approach to certification of FLSA collective actions. Cleary v. Tren Services Inc., No. 2:11–123, 2012 WL 1189909, at *3 (S.D. W. Va. Apr. 9, 2012); see also Nolan v. Reliant Equity Investors, LLC, No. 3:08–62, 2009 WL 2461008, at *7 (N.D. W. Va. Aug. 10, 2009) (collecting cases). The "notice" or "conditional certification" stage comes first. This stage typically occurs early in the proceedings, before discovery is completed. Cleary, 2012 WL 1189909, at *3. Accordingly, "the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'" Patton v. Thomson Corp., 364 F.Supp.2d 263, 267 (E.D.N.Y. 2005) (citations omitted). If the court finds that the plaintiffs have cleared this "low bar," Westfall v. Kendle Intern, CPU, LLC, No. 1:05-00118, 2007 WL 486606, at *9 (N.D. W. Va. Feb. 15, 2007), it will conditionally certify the class and, if appropriate, "authorize[] plaintiffs' counsel to provide the putative class members with notice of the lawsuit and their right to opt-in." Romero, 796 F.Supp.2d at 705 (citing Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)).

The second stage of the inquiry occurs if the defendant moves to "decertify" the class, which generally takes place after discovery is completed and the matter is ready for trial. Cleary, 2012 WL 1189909, at *3; see also Nolan, 2009 WL 2461008, at *7. "At that point, the court makes a factual determination as to whether the class is truly 'similarly situated.'" Purdham v. Fairfax Cty. Pub. Schools, 629 F.Supp.2d 544, 547 (E.D. Va. 2009) (citing Parker v. Rowland Express, Inc., 492 F.Supp.2d 1159, 1164 (D. Minn. 2007)). As the court typically has "much more information on

which to base its decision" at this stage, Hipp, 252 F.3d at 1218 (citation omitted), it "applies a heightened, fact specific standard to determine whether the proposed class members are similarly situated." Cleary, 2012 WL 1189909, at *3 (citations omitted).

Defendants did not dispute that conditional certification was appropriate, but requested the Court narrow the plaintiff's proposed class. Defendants argued that the plaintiffs' proposed class definition was both vague and unsupported. According to the defendants, the phrase "Customer Service Representative" is particularly confusing because it is "not a job description at either Verizon or Frontier, where hourly employees' job titles have been contractually-established [sic] throughout the class period by a collective bargaining agreement (CBA)." (Dkt. No. 127 at 4). Rather, each affiant of record was officially employed as a "Consultant," tasked solely with "handling inbound," as opposed to outbound, "customer service calls." Id. at 4 (emphasis added). As such, the defendants argued, "the only employees who could potentially be similarly situated to Plaintiffs are Consultants who handle inbound customer service calls by phone." Id. at 5. The defendants proposed a class definition of "individuals employed by Verizon West Virginia Inc., Frontier West Virginia Inc., or Verizon Services Corp. at a call center in Clarksburg or Charleston, West Virginia as a Consultant handling inbound customer service telephone calls within the last three years." (Dkt. No. 127-1 at 2).

The Court granted conditional certification of the class, without narrowing it, on October 24, 2012 (DE 185). In its Order, the Court stated that the "disparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis." White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 373 (E.D. Tenn. 2006) (collecting cases); see also Bishop v. AT & T Corp., 256 F.R.D. 503, 509 (W.D. Penn. 2009) ("Any dissimilarities in job functions which would exclude a class member will be reevaluated at stage two when discovery is complete.").

Any further arguments concerning differences within the class are "more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery." Jirak, 566 F.Supp.2d at 848 (citation omitted).

The case is now at that second stage. After discovery is completed, if Defendants move to "decertify" the class, the Court will need to reevaluate "[a]ny dissimilarities in job functions which would exclude a class member." Bishop, supra.

The parties filed their Proposed Schedule for Remainder of the Case the same day the Court entered the Order granting Conditional Certification [DE 186]. Plaintiffs note in their Response to Defendants' Motion that "Defendants did not request any additional discovery dedicated to Opt-in Plaintiffs at that time." (Response at 2); however, a review of the document shows neither party mentioned discovery. Defendants submitted that, "because of the complex nature of this case, the scope and complexity of a trial will be contingent on whether the case proceeds collectively or on an individual basis (if at all) . . . ." Further, defendants proposed that either the Court set a date for a scheduling conference to follow resolution of any motion for decertification, or set a trial date 90 days after resolving any motion for decertification.

The Court entered its Scheduling Order on October 26, 2012 [DE 190], stating that the preemptive limitations on discovery set out in L.R.Civ.P. 26.01(c) apply to this case "unless otherwise stipulated or ordered." L.R.Civ. P. 26.01(c) limits a party to ten (10) depositions by each defendant; forty (40) interrogatories per party, and forty (40) requests for admission per party.

In their motion for conditional certification, the plaintiffs submitted six affidavits from the named plaintiffs, and sixteen from the opt-in class members [DE 105]. All of the affidavits were penned by self-described "Customer Service Representative[s]," twenty-one of whom worked in the Clarksburg call center and one of whom worked in the Charleston call center. Id. At that time the

Court provided for an opt-in period of sixty (60) days. When that period expired, on January 8, 2013, 135 plaintiffs had opted in (in addition to the six named plaintiffs). Defendants contend that those plaintiffs included "current and former employees from Verizon's call center in Clarksburg and Frontier's call center in Charleston, who worked at various periods of time in at least six different job titles. The undersigned notes that plaintiffs were still opting in as late as August 6, 2013 [DE 421].

## II
## Plaintiffs' Motion For Protective Order

January 14, 2013 Defendants Verizon and Frontier served discovery on opt-in plaintiffs [plaintiffs assert Verizon served discovery on 135 opt-in plaintiffs and Frontier served discovery on 61 of the opt-in plaintiffs]. The parties met and conferred on January 25, 2013. Another meet and confer was held on February 12, 2013[1]. No resolution was reached.

---

[1] On reading the contrasting descriptions of the meet and confers, it appears the attorneys must have taken early instruction on how to conduct themselves so as to insure failure. Neither party met and conferred in good faith. Exchanges of emails and letters is not an effective method of reaching a resolution. Seldom are parties able to resolve issues without meeting face to face. Reading their correspondence prepared in real time during the dispute and prior to the motion being filed reflects that they knew their proposals would not be acceptable. The suggestion propounded by Stanley Weiner that Plaintiffs agree to a discovery plan that provided for dismissal of a party on request of Defendant for not complying with discovery should have been known by Weiner as a "non-starter." The Smith position that discovery had already been provided for in the initial scheduling order and did not need any additions in spite of conditional certification and additions of opt-in's should have been known by Smith to be a "non-starter." Instead of talking about what was reasonable discovery, they talked past each other by simply restating over and over that: 1) they wanted to resolve the issue and 2) this is my position-take it or leave it. Discovery of opt-in plaintiffs was and is a gray area. Some limited discovery is permitted. How much is largely determined by the complexity of the issues. There is a balance between a defendant's need to know and the use of the tools of discovery as weapons in a war of attrition. This is a case about whether employees of one or both defendants were properly compensated for the time spent in starting up and closing out their computers at the start and end of each work session and whether the opt-in plaintiffs are similarly situated to the original plaintiffs within the meaning of a collective action.

February 13, 2013 plaintiffs filed their Motion For Protective Order [DE356].

February 27, 2013 defendants filed their Joint Response To Plaintiffs' Motion For Protective Order [DE 361].

March 6, 2013 plaintiffs filed their Reply In Support Of Plaintiffs' Motion For Protective Order [DE 367].

### III.
### Contentions of the Parties

| Plaintiffs | Defendants |
| --- | --- |
| 1. Defendants' discovery exceeded the scope of the Court's Scheduling Orders without first obtaining leave of the Court for good cause. | 1. Defendants' written discovery is within the rules and the Court's Scheduling Order [DE 90]. |
| 2. Defendant's discovery was not signed by local counsel in accord with the rules. | 2. Local Counsel is not required to sign discovery requests because they are not "pleadings or filings within the meaning of the rules. |
| 3. Discovery to all opt-in plaintiffs is inappropriate in a collective action. | 3. Op-in plaintiffs are active parties plaintiff within a collective action and as such are subject to discovery. |
| 4. Defendants' discovery requests are overbroad, burdensome, irrelevant and constitutes a "war of attrition" against op-in plaintiffs. | 4. This is a complex case wherein the defendants have made known their intent to file for decertification requiring discovery. |

    5.   Plaintiffs did not meet and confer in good faith.

    6.   Plaintiffs have failed to show FRCivP 26(c) good cause for the relief they seek.

## IV
## Discussion

1)    <u>Scheduling Order</u>

The following orders pertinent to the issue of scheduling have been entered in this action:

DE 190 dated October 26, 2012 setting close of discovery for June 3, 2013 and motions for decertification for June 24, 2013. The order states: "The preemptive limitations on discovery [numbers of interrogatories, requests for admission, and depositions] set out in L.R.Civ.P. 26.01(c) apply to this case unless otherwise stipulated or ordered."

By Order dated November 2, 2012 [DE 197] the Court approved the Amended Class Notice [DE 191]. Thereafter on November 13, 2012 opt-in plaintiffs began filing their consent forms [DE 212].

By Order dated June 5, 2013 the Court entered a revised scheduling order setting completion of discovery for December 31, 2013 [DE 385]. The order repeated the preemptive limitations language contained in October 26, 2012 court order: "The preemptive limitations on discovery [numbers of interrogatories, requests for admission, and depositions] set out in L.R.Civ.P. 26.01(c) apply to this case unless otherwise stipulated or ordered." It also provided that dispositive motions

and /or motions for decertification were to be filed by January 17, 2014.

It is clear that defendants' January 14, 2013 discovery[2] was filed after the scheduling order of October 26, 2012; after op-in plaintiffs began filing their consents; and prior to the Court's June 5, 2013 revised scheduling order. Between November 13, 2012 and January 14, 2013 approximately 101 op-in plaintiffs filed consents to join the consolidated action.

That defendants' original proposed discovery plan (June 2012) did not propose discovery for opt-in plaintiffs coupled with the fact that the Court did not approve solicitations of consents from opt-in plaintiffs until November 2, 2012 and the fact that defendants in December 2012 proposed a discovery plan[3] for opt-in plaintiffs leads the undersigned to the conclusion that the language of the Court's scheduling orders with respect discovery (paragraph 4) was limited to the original parties plaintiff and defendants to the action. It did not extend to opt-in plaintiffs.

Moreover, no motion was filed by defendants to obtain leave of Court to modify the existing scheduling order prior to filing discovery on the opt-in plaintiffs under F.R.Civ.P. 16(b)(4) and L.R.Civ.P. 26.01(c). F.R.Civ.P. 16(b)(4) provides: "A schedule may be modified only for good cause and with the Judge's consent." L.R.Civ.P. 26.01(c) provides: Unless otherwise ordered or stipulated, and except as to complex cases governed by L.R.Civ.P. 16.02, discovery under F.R.Civ.P. 26(b)(2)(A) shall be limited as follows:

---

[2]In "Plaintiffs' Motion For Protective Order [DE 356, p. 1] counsel states: "In addition, Plaintiffs are entitled to a protective order because Defendants' discovery requests to all Opt-In Plaintiffs are inappropriate." This is a gross misstatement of fact. A review of the record reveals Defendants filed interrogatories and requests for production on approximately 76 opt-in plaintiffs. See De 339, DE 340 and DE 341]. This is far less than the 101 opt-ins filed at the time the discovery was filed and the 135 opt-ins mentioned by Plaintiffs in their briefings on the motions.

[3]If Defendants thought the language of the October 2012 scheduling order permitted discovery of opt-in plaintiffs they would not have proposed their December 2012 discovery plan for opt-ins.

  (1)  Ten depositions ... by each plaintiff;

  (2)  Ten depositions ... by each defendant;

  (4)  Forty written interrogatories ... per party;

  (5)  Forty requests for admission per party.

If the Court accepts defendants' argument that opt-in plaintiffs are active plaintiffs for purposes of discovery and subject to discovery under the rules herein stated, the result would be: With 135 opt in plaintiffs, 6 original plaintiffs and 2 defendants 1,410 depositions could be taken by the plaintiffs; 20 depositions could be taken by the defendants; 5,720 written interrogatories could be posited by the parties; and 5,720 written requests for admission could be posited by the parties. In the absence of control by the Court, such a result is unnecessary and unacceptable.

Defendants also argue that this is a complex case and therefor the above limits on discovery do not apply. Assuming the parties' have agreed that this is a complex case and such an agreement makes it so without a court's order, [DE 69], Defendants' argument that the presumptive limits of the local rules and F.R.Civ.P. 26 are inapplicable. However, the argument ignores that L.R.Civ.P. 16.02 provides: "(a) Conduct of Case-Management Conferences: Case-management conferences shall be presided over by a judicial officer who, in the furtherance of the scheduling order required by L.R.Civ.P. 16.01(e), may: (1) explore the possibility of settlement; (2) identify the principal issues in contention; (3) prepare a specific discovery schedule and plan that may: (I) identify and limit the discovery available to avoid unnecessary, unduly burdensome or expensive discovery; (ii) sequence discovery into two (2) or more stages; and (iii) include time limits for the completion of discovery. (4) establish deadlines for filing motions and a schedule for their disposition; (5) consider the bifurcation of issues for trial as set forth in F.R.Civ.P. 42(b); and (6) explore any other matter appropriate for the management of the case."

No stipulation or agreement was reached between plaintiffs and defendants to permit discovery on the opt-in plaintiffs.

In the absence of an agreement or stipulation, an order entered prior to the service of defendants' discovery on opt-in plaintiffs, a discovery plan in a complex case approved by the Court, the undersigned concludes defendants filing of their interrogatories, requests for admission and requests for production on selected opt-in plaintiffs was outside of the Court's scheduling order; and in violation of the rules.

2) <u>Signing</u>

L.R.Gen.P. 83.02(b)(2013) provides in pertinent part: "The local attorney shall be required to sign all pleadings and filings and affix his or her West Virginia State Bar identification number thereto and attend all hearings, trials or proceedings actually conducted before the judge, tribunal or other body of the State of West Virginia for which the applicant has sought admission *pro hac vice*."

Local counsel for efendants did not sign the discovery served on opt-in plaintiffs' counsel.

Local counsel did sign the certificates of service for the discovery served on opt-in plaintiffs' counsel and which was filed with the clerk of this court.

L.R.Civ.P. 5.01(a) provides: "Parties shall not file disclosures pursuant to Fed.R.Civ.P. 26(a)(1), (2) and (3), depositions upon oral examination or written questions and any notice thereof, notices of receipt of depositions, interrogatories, requests pursuant to Fed.R.Civ.P. 34, requests for admissions, or answers and responses thereto, or any other discovery materials, unless expressly order or required under these Local Rules of Civil Procedure.  Parties shall file only certificates of service of discovery materials."

In the instant action, no order of the Court requires defendants to file discovery.

Defendants' actions in not having local counsel sign the discovery served on opt-in plaintiffs'

counsel is appropriate and in compliance with the rules.

3) <u>Appropriateness</u>

Plaintiffs and opt-in plaintiffs challenge defendants' discovery on opt - in plaintiffs on two grounds:

    A) Service of such discovery on all opt - in plaintiffs is inappropriate under a collective action; and

    B) The discovery served is overly broad on its face.

Defendant Verizon served 10 written interrogatories on each of 74 opt-in plaintiffs [DE 340]. Defendant Verizon served 16 requests for production on each of 74 opt-in plaintiffs [DE 341]. Defendant Frontier served 8 written interrogatories on opt-in plaintiff Jessica Conklin. Defendant Frontier served 15 requests for production on opt-in plaintiff Stephen McGrath [DE 339].

The undersigned does not have to address the scope or number of discovery requests made by either defendant in order to decide the motion for protective order.

Those matters are more properly resolved during the conference the undersigned is ordering as part of this decision.

4) <u>Good Cause</u>

The undersigned does not need to address the good cause argument made by Defendants under F.R.Civ.P. 26(c) in order to decide this motion because the undersigned has already found that Defendants did not have leave of court to file discovery on opt-in plaintiffs.

### V.
### Decision and Order

For the reasons stated herein Plaintiffs' Motion For Protective Order [DE 356] is **GRANTED.** Defendants' discovery [DE 339, DE 340, DE 341] are stricken. One lead counsel for

each defendant together with one member of local counsel for each defendant and one lead counsel for plaintiffs and opt-in plaintiffs shall appear in person before the court at Clarksburg, WV on Monday, 21 October 2013 at 12:00 pm [noon] for a L.R.Civ.P. 16.02 Case-Management Conference in the furtherance of the scheduling order required by L.R.Civ.P. 16.01(e) to identify the principal issues in contention; prepare a specific discovery schedule and plan that may: (i) identify and limit the discovery available to avoid unnecessary, unduly burdensome or expensive discovery; (ii) sequence discovery into two (2) or more stages; and (iii) include time limits for the completion of discovery.

The clerk is directed to remove DE 356 from the docket of motions actively pending before the court.

It is so **ORDERED**.

Dated: 11 October 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE